# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | |
|---|---|
| SHARON LEE on behalf of herself individually, and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>ARGENT TRUST COMPANY, CHOATE CONSTRUCTION COMPANY ESOP COMMITTEE, CHOATE CONSTRUCTION COMPANY BOARD OF DIRECTORS, WILLIAM MILLARD CHOATE, DAVE PRIESTER, MEMBERS OF THE CHOATE CONSTRUCTION COMPANY ESOP COMMITTEE (John and Jane Does 1-10), MEMBERS OF THE CHOATE CONSTRUCTION COMPANY BOARD OF DIRECTORS (John and Jane Does 11-20), and SELLING SHAREHOLDERS (John and Jane Does 21-35),<br><br>       Defendants. | Case No.: 5:19-cv-00156<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Sharon Lee by and through her counsel, alleges as follows:

## INTRODUCTION

1.     This is a civil enforcement action brought pursuant to Sections 502(a)(2) and 502 (a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(2) and (a)(3), by Plaintiff, on behalf of herself and other participants and beneficiaries in the Choate Construction Company Employee Stock Ownership Plan ("Choate ESOP," "the ESOP" or "the Plan").

2.     The Choate ESOP is an ERISA protected retirement plan whereby the individual retirement accounts of current and former employees are invested entirely in the stock of Choate

Construction Company ("Choate" or the "Company"). There is no recognized market for Choate stock; thus, the value of the stock must be determined based on a private valuation of the Company.

3.     Plaintiff's claims stem from the creation of the Choate ESOP in December 2016 and, shortly thereafter, the sale of 80% of the Company's stock to the Choate ESOP at an inflated value (the "2016 Sale"). This transaction was not conducted in the best interests of the employees, who are the ESOP participants, and resulted in tens of millions of dollars of losses to the employees' retirement savings held in the ESOP.

4.     On December 6, 2016, the ESOP purchased 8 million shares of the Company's voting common stock, representing 80% of the Company, for $198 million. According to public filings available on the Department of Labor website, Choate stock was valued at just $64.8 million less than a month after its sale to the ESOP, meaning the stock had lost 2/3 of its value as of December 31, 2016, after its purchase from the Selling Shareholders.

5.     In December 2016, the Company also redeemed 2,000,000 shares of voting common stock then held by the selling shareholders, which represent 20% of the Company's fully diluted equity, in exchange for: (a) 26,667 shares of non-voting common stock, which would represent 0.20% of the Company's fully diluted equity; and (b) warrants to acquire 5,306,667 shares of voting common stock which would represent 39.80% of the Company's fully diluted equity. The issuance of the warrants to the Selling Shareholders would dilute the value of the 8 million shares the ESOP purchased for $198 million from an 80% to 60% ownership interest, and on information and belief allowed the Selling Shareholders to retain control of the Company.

6.     The valuation relied upon by Argent Trust Company ("Argent") to complete the transaction did not fully account for the negative effects of the warrants on the value of the 8 million shares the ESOP purchased, including the dilution of the ESOP's interest to just 60% via exercise of the warrants and that the warrants allowed the Selling Shareholders to retain elements of control over the Company.

7.     Argent, the Trustee who represented the ESOP participants in the 2016 Sale, was chosen by the people who sold their interest in the Company to the ESOP (the "Sellers" or "Selling Shareholders").  The fact that Argent who represented the ESOP in the transaction was selected and retained by the Sellers, who ultimately benefited from ESOP overpaying the Selling Shareholders for the stock, meant that Argent and the Sellers were operating under significant conflicts of interest at the expense of the ESOP participants.

8.     The Selling Shareholders, named as Defendants below, illegally profited from the 2016 Sale by receiving an inflated price for the Company stock they sold to the ESOP.  The Selling Shareholders were enriched by tens of millions of dollars at the expense of the ESOP participants.

9.     As described below, the Selling Shareholders and the Trustee violated Sections 404 and 406 of ERISA, 29 U.S.C. §§ 1104, and 1106, and those violations caused tens of millions of dollars in losses to the ESOP participants who overpaid for the 8 million shares of Company stock they purchased.

## JURISDICTION, VENUE, AND CLASS PERIOD

10.     **Subject Matter Jurisdiction**.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(a), 29 U.S.C. § 1132(a).

11.     **Personal Jurisdiction**.  This Court has personal jurisdiction over Defendants because they transact business in, and have significant contacts with, this District, and because ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), provides for nationwide service of process.

12.     **Venue.**  Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), for at least the following reasons:

(a)     Defendants may be found in this District, as they transact business in, and have significant contacts with this District, and/or reside in this District;

(b)     Plaintiff lives in this District and will receive her ESOP benefits in this District.

13.     **Class Period.**  The Class Period runs from December 9, 2016, the date the Selling Shareholders sold the Company stock to the ESOP, to present day.

## PARTIES

**Plaintiff**

14.     Plaintiff Sharon Lee is a former employee of Choate and a current participant in the Choate ESOP within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).  Plaintiff Sharon Lee began working at Choate on April 9, 2007 as an estimator in the Raleigh, North Carolina office.  She left Choate on April 19, 2017.  At the time she left Choate, Plaintiff Lee was fully vested in the ESOP.  She currently resides in Raleigh, North Carolina.

**Defendants**

15.     Argent is the Trustee of the Choate ESOP.  Argent acquired its fiduciary services business from Reliance Trust Company. Argent's predecessor, Reliance Trust Company, reached a settlement with the Department of Labor in connection with the Tobacco Rag Processors ESOP because the Department of Labor found that Reliance Trust Company, when

acting as the trustee for the Tobacco Rag Processors ESOP caused the ESOP to overpay for Tobacco Rag Processors Inc. stock.

16.     Argent, as Trustee, is responsible for the investment of the ESOP's assets.  Argent is a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), because it exercises discretionary authority or discretionary control respecting management of the ESOP and exercises control over the ESOP's assets.

17.     In its fiduciary capacity, Argent authorized the ESOP's purchase of 80% of Choate stock from the Selling Shareholders for inflated value and caused the ESOP to take on $198 million in debt to complete the purchase.

18.     **Committee Defendants**:  According to public filings the Choate Construction Company ESOP Committee ("the Committee") is the Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and is thus responsible for the administration of the ESOP. The Committee and all members of the Committee during the Class Period were/are fiduciaries with respect to the ESOP within the meaning of ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), because they had/have discretionary authority or discretionary responsibility in the administration of the ESOP.

19.     All individual members of the Committee are named as John and Jane Does 1 through 10.

20.     The Committee and the individual members of the Committee are collectively referred to as the "Committee Defendants."

21.     The Committee Defendants were and are fiduciaries with respect to the ESOP within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), during the Class Period

because they *exercised/exercise* discretionary authority or discretionary control respecting management of the ESOP.

22.     According to Section 2.8 of the Trust Agreement for the ESOP, the Committee is a "named fiduciary" within the meaning of ERISA.

23.     According to Section 2.3(b) of the Trust Agreement for the Choate ESOP, the Committee determines how much of the employer contributions made to the ESOP will be retained as cash, and how much will be used to make any scheduled amortization payment on outstanding loans of the ESOP.  As such, during the Class Period, the Committee Defendants exercised control over the ESOP's assets and are fiduciaries within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

24.     According to Section 2.3(c) of the Trust Agreement for the Choate ESOP, the Committee determines what distributions to make for the ESOP, in what form the distribution will be made and when the distributions will be made.  Additionally, Section 2.3(c) provides that it is the Committee's responsibility to determine how to dispose of any ESOP assets arising from unclaimed ESOP benefits.   As such, during the Class Period, the Committee Defendants exercised control over the ESOP's assets and are fiduciaries within the meaning of ERISA § 3(21) (A)(i), 29 U.S.C. § 1002(21)(A)(i).

25.     According to Section 2.3(o) of the Trust Agreement for the Choate ESOP, the Committee directed Argent (the Trustee) as to how to invest or reinvest the assets of the ESOP which are not otherwise invested in Company Stock. As such, during the Class Period, the Committee Defendants exercised control over the ESOP's assets and are fiduciaries within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

26. **Board Defendants**: According to Section 2.8 of the Trust Agreement for the ESOP, the Choate Construction Company Board of Directors ("Board of Directors") is a "named fiduciary" within the meaning of ERISA.

27. Additionally, acting for the Company, the Board of Directors appointed Argent to be the Trustee of the ESOP and retains the power to remove or replace the Trustee, at any time. See Section 6.2 of the Trust Agreement. Based on its appointment of the Trustee and its power to remove or replace the Trustee, the Board of Directors is and was a fiduciary to the ESOP at all relevant times.

28. The Board of Directors also appointed the members of the Committee and retains the power to remove or replace the Committee members, at any time. Based on its appointment of the Committee members and its power to remove or replace the Committee members, the Board of Directors is and was a fiduciary to the ESOP at all relevant times.

29. All individual members of the Board of Directors of Choate Construction Company are named as John and Jane Does 11 through 20. The Board of Directors and the individual members of the Board of Directors are collectively referred to as the "Board Defendants."

30. **Defendant William Millard Choate** at the time of the sale was President of Choate, and shortly after the sale, he transitioned to Chairman and Chief Executive Officer (CEO) of Choate. On information and belief, he was and continues to be a member of the Board of Directors of Choate and is one of the Selling Shareholders who sold stock to the Choate ESOP.

31. **Defendant Dave Priester** transitioned, shortly after the sale, to President and Chief Operating Officer of Choate. On information and belief, he was and continues to be a

member of the Choate Board of Directors and is one of the Selling Shareholders. Defendant Priester works and resides in North Carolina.

32.  **Selling Shareholders**: John and Jane Does 21-35 are the other selling shareholders who have sold Company Stock to the ESOP since December 2016. William Millard Choate, Dave Priester and the other selling shareholders are collectively referred to as the "Selling Shareholders."

## FACTUAL ALLEGATIONS

33.  Choate is a company that provides general contracting and construction management services. Founded in 1989, today it employs over 400 full-time professionals.

34.  Before the Sale of the Company to the ESOP in December 2016, Choate was 100% privately owned by the Selling Shareholders.

35.  Prior to the 2016 Sale, CSG Partners was retained by the Company, then owned by William Millard Choate and the other Selling Shareholders, to advise them on the sale of the Company to the ESOP.

36.  On information and belief, CSG Partners suggested a deal structure whereby: (1) the ESOP would purchase 80% of the outstanding Company stock, and (2) the Company would redeem the remaining 2,000,000 shares of voting common stock of the Company (20%) for 26,667 shares of non-voting common stock, which would represent 0.20% of the Company's fully diluted equity; and warrants to acquire 5,306,667 shares of voting common stock which would represent 39.80% of the Company's fully diluted equity and be retained by the Selling Shareholders.

37.  This deal structure was different than the traditional structure where the Selling Shareholders sell 100% of their interest in the Company to the ESOP. This novel structure was

designed to allow the Selling Shareholders to participate in future growth and/or merger opportunities and, on information and belief, to retain certain elements of control over the Company post-Sale.

38. On or about August 30, 2106, Argent was engaged and appointed by the Board of Directors of Choate Construction Company to be the Trustee of the ESOP and to represent the ESOP's interest in the Sale of Company to the ESOP.

39. Argent engaged Stout Risius & Ross to be Argent's independent appraiser and financial advisor. Stout Risius and Ross completed one or more valuations upon which Argent based its decision to complete the Sale on the ESOP's behalf.

40. Greenberg Taurig acted as Argent's legal advisor in the transaction.

41. The Company established the Choate ESOP and executed the Master Trust Agreement for the ESOP on December 9, 2016.

42. On that same day, December 9, 2016, the ESOP purchased 8,000,000 shares of Choate stock from the Selling Shareholders for a purchase price of $198 million, which was equal to a price of $24.75 per share. The purchase of 8 million shares represented 80% of outstanding Choate stock.

43. On December 14, 2016, the Company redeemed 2,000,000 shares of voting common stock of the Company which were then held by the Selling Shareholders and represented 20% of the Company's fully diluted equity. In exchange for the 2 million shares, the Company issued to the Selling Shareholders 26,667 shares of non-voting common stock, which would represent 0.20% of the Company's fully diluted equity; and warrants to acquire 5,306,667 shares of voting common stock which would represent 39.80% of the Company's fully diluted equity.

44.     The Sale provided the Selling Shareholders $57 million in cash at the time of Sale and the remaining $141 million in a form of debt owed to the Selling Shareholders.

45.     The ESOP obtained two loans, together for $198 million, which were used by the ESOP as consideration to complete the purchase of the 8 million shares of the Company.

- The Company loaned the ESOP $57 million of the purchase price.

- The Selling Shareholders issued "Seller Notes" to the ESOP for the remainder of the purchase price, $141 million.

46.     The Company Loan has a 25-year term and requires annual payments of principal and interest. Interest is payable at a rate equal to the long term applicable federal rate. The Company Loan is secured by a pledge of the ESOP shares acquired with the proceeds of the internal loan.

47.     The Seller Notes had a 25-year term and required interest only payments for the first 7 years, and equal principal payments of $7,833,333 over the remaining term. Interest was payable at a rate equal to 4.00%. The Seller Notes were secured by a pledge of the ESOP shares acquired with the proceeds of the Seller Notes and the Company's guarantee. The Seller Notes were scheduled to mature on December 31, 2040.

48.     Argent approved and caused the ESOP to purchase 8 million shares of the Company for more than fair market value and failed to prudently and loyally investigate the appraisal of the stock to ensure that the ESOP paid no more than fair market value.

49.     Argent also approved and caused the ESOP to enter into the loans totaling $198 million.

50.     The Sale of the Company to the ESOP was announced on December 15, 2016 to all Choate's employees.

51.     After the transition the 2016 Sale of the Company to the ESOP, William Millard Choate moved from the position of President to Chairman & Chief Executive Officer, and Dave Priester became President and Chief Operating Officer.

52.     Less than a month after the sale of the Company Stock to the ESOP for $24.75 per share, the shares were valued at just $8.10 per share (as of December 31, 2016).

53.     In other words, less than a month after the Sale, the Company stock was worth just one-third (1/3) of what the ESOP paid for it.

54.     On December 31, 2016, the total assets of the ESOP were negative $124 million.

55.     A prudent fiduciary, who had conducted a prudent investigation, would have uncovered facts indicating that the sale of 80% of the Choate stock to the ESOP from the Selling Shareholders for the purchase price of $198 million was too high, especially taking into account the warrants that were provided to the Selling Shareholders as part of the deal.

56.     The price the ESOP paid for the 8 million shares of Company stock, which at the time represented 80% of the Company, should have taken into account: (a) that the warrants could ultimately dilute the ESOP's share of ownership to just 60% of the Company and (b) that the warrants allowed the Selling Shareholders to retain elements of control over the Company.

57.     Plaintiff sought through a Freedom of Information Act ("FOIA") request all documents that the Department of Labor ("DOL") has regarding the 2016 Sale of the Company to the ESOP.  DOL withheld all the requested documents (other than the Forms 5500s that are publicly available from the DOL's website) on the grounds that DOL has an open investigation of the Choate Construction ESOP and that release of the requested documents "could reasonably be expected to interfere with" enforcement proceedings.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings these claims as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of all participants in the Choate Construction Company ESOP from December 9, 2016 or any time thereafter who vested under the terms of the Plan and those participants' beneficiaries. Excluded from the Class are Defendants and their immediate family members; any fiduciary of the Plan; the officers and directors of Choate Construction (including any of its subsidiaries or affiliates), or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

59.     **Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable.  According to the Forms 5500 filed with the Department of Labor, at the end of 2017 there were 369 participants, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP.

60.     Upon information and belief, employees of Choate and participants in the Choate ESOP are located in multiple states and are geographically disbursed, which favors Class treatment.

61.     **Commonality.**  The issues of liability are common to all members of the Class and are capable of common answers as those issues primarily focus on Defendants' acts (or failure to act). Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

a.     Whether Defendants engaged in a prohibited transaction under ERISA by causing or knowingly participating in the ESOP's purchase of Choate stock from the Selling Shareholders for more than adequate consideration in 2016;

b.     Whether Argent engaged in a prudent investigation of the proposed purchase of 8 million shares of Choate stock by the ESOP in the 2016 Sale;

c.     Whether Argent breached a fiduciary duty to ESOP participants by causing the ESOP to purchase Choate stock in 2016 for more than fair market value;

d.     Whether Argent and the appraisers of the Company fully took into account the effect the warrants would have on the value of the 8 million shares purchased by the ESOP;

e.     Whether the Board Defendants breached their fiduciary duties by failing to adequately monitor Argent;

f.     The amount of losses suffered by the ESOP as a result of Defendants' violations of ERISA and/or other appropriate remedial and equitable relief.

62.     **Typicality.**  Plaintiff's claims are typical of those of the Class because their claims arise from the same event, the sale of the Company to the Choate ESOP. Specifically, Plaintiff challenges the legality of a plan-wide transaction, whereby stock is allocated to all participants' accounts based on the same valuation of the Company. As a result, Plaintiff, like other ESOP participants in the Class, has received less in her ESOP account based on the same purchase price of Choate stock, and continues to suffer such losses because Defendants have failed to correct the overpayment by the ESOP.

63.     Because Plaintiff seeks relief on behalf of the Choate ESOP pursuant to §§ 502(a)(2) and (a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(2) and (a)(3), her claims are not only typical of, but the same as, a claim under § 502(a)(2) brought by any other Class member.

64.     **Adequacy.**  Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff does not have any interests antagonistic to or in conflict with those of the Class. She understands that this matter cannot be settled without the Court's approval.

65.     Defendants do not have any unique defenses that would interfere with Plaintiff's representation of the Class.

66.     Plaintiff has retained counsel competent and experienced in complex class

actions, ERISA and employee benefits litigation, and with particular experience and expertise in

ESOP litigation.

67.     **Rule 23(b)(1)(A).** Class certification is appropriate pursuant to Fed. R. Civ. P.

23(b)(1)(A). Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with

respect to all similarly situated participants and to act in the best interests of the ESOP and their

participants. This action challenges whether Defendants acted consistently with their fiduciary

duties or otherwise violated ERISA as to the ESOP as a whole. As a result, prosecution of

separate actions by individual members would create the risk of inconsistent or varying

adjudications that would establish incompatible standards of conduct relating to the ESOP.

68.     **Rule 23(b)(1)(B).** Class certification is also appropriate pursuant to Fed. R. Civ.

P. 23(b)(1)(B).  Administration of an ERISA-covered plan requires that all similarly situated

participants be treated the same. Resolving whether Defendants fulfilled their fiduciary

obligations to the ESOP and engaged in prohibited transactions with respect to the Plan would,

as a practical matter, be dispositive of the interests of the other participants in the ESOP even if

they are not parties to this litigation and would substantially impair or impede their ability to

protect their interests if they are not made parties to this litigation by being included in the

Class.

69.     **Rule 23(b)(2).**  Class certification is appropriate pursuant to Fed. R. Civ. P.

23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the

Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the

Class as a whole. This action challenges whether Defendants acted consistently with their

fiduciary duties or otherwise violated ERISA as to the ESOP as a whole. The members of the

Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief and is either provided directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

70. **Rule 23(b)(3).** Additionally, and alternatively, class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to all Class members predominate over any questions affecting individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this action. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class. Plaintiff and all Class members have been harmed by the ESOP paying more than fair market value for Choate stock in the 2016 Sale. As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

71. A class action is a superior method to other available methods for the fair and efficient adjudication of this action. As the claims are brought on behalf of the ESOP, resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings and each of those individual proceedings could seek recovery for the entire ESOP. The losses suffered by individual Class members are small compared to the expense and burden of individual prosecution of this action. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties with regard to the ESOP.

72.     Notice will be provided to all members of the Plaintiff Class to the extent required by Rule 23.

73.     The following factors set forth in Rule 23(b)(3) also favor certification of this case as a class action:

    a)     No other litigation concerning this controversy has been filed by any other members of the Class;

    b)     The names and addresses of the Class are available from the ESOP.

**COUNT I**
**Prohibited Transaction in Violation of ERISA § 406(a), 29 U.S.C. §§ 1106(a)**
(Against Argent)

74.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

75.     ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

76.     ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B) requires that a plan fiduciary shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes the direct or indirect loan of money between the plan and a party in interest.

77.     ERISA § 3(14), 29 U.S.C. § 1002(14) defines a "party in interest" to include

- any fiduciary … of such employee benefit plan"

- "an employer any of whose employees are covered by such plan [the ESOP]"

- "an employee, officer or director or a 10 percent or more shareholder" of an employer whose employees are covered by the ESOP.

29 U.S.C. § 1002(14)(A), (C) and (H).

78.     Each of the Selling Shareholders were employees, officer or directors of the Company at the time of the Sale of their stock to the ESOP, and, as such were parties in interest to the Plan within the meaning of ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H).

79.     Argent, acting as the Trustee of the ESOP, approved and caused the ESOP to purchase 8 million shares of the Company from the Selling Shareholders.  As such it caused the ESOP to engage in a prohibited transaction in violation of ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D).

80.     As Trustee, Argent also caused the Choate ESOP to borrow $141 million from the Selling Shareholders, which constituted a prohibited transaction in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B).

81.     The Company at all relevant times was/is an employer whose employees are covered by the ESOP. As such, the Company was a party in interest to the Plan within the meaning of ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C).

82.     As Trustee, Argent also caused the Choate ESOP to borrow $57 million from the Company, which constituted a prohibited transaction in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B).

83.     Argent, as Trustee approved each payment by the ESOP of principal and/or interest to the Selling Shareholders in connection with the $141 million Seller Notes and the $57 million Company Loan.  Each of those payments constitutes a separate violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

84.     Defendant Argent is liable for appropriate equitable relief under 502(a)(2), 29

U.S.C. 1132(a)(2), for the violations of ERISA §§ 406(a)(1)(A), (B), and (D), 29 U.S.C. §

1106(a)(1)(A), (B), and (D).

## COUNT II

### Prohibited Transaction in Violation of ERISA § 406(a), 29 U.S.C. §§ 1106(a)
(Against Committee Defendants)

85.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

86.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), requires that a plan fiduciary

"shall not cause the plan to engage in a transaction, if he knows or should know that such

transaction constitutes a "direct or indirect transfer to, or use by or for the benefit of, a party in

interest, of any assets of the plan."

87.     The Committee Defendants were/are named fiduciaries and acted as the Plan

Administrator to the ESOP at all relevant times.

88.     Each of the Selling Shareholders were employees, officer or directors of the

Company at the time of the Sale of their stock to the ESOP, and, as such were parties in interest

to the Plan within the meaning of ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H).

89.     The Company at all relevant times was/is an employer whose employees are

covered by the ESOP. As such, the Company was a party in interest to the Plan within the

meaning of ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C).

90.     Pursuant to the Trust Agreement for the ESOP the Committee Defendants

determined how much of the employer contributions made to the ESOP would be sued to make

payments on the outstanding loan to the Selling Shareholders and/or the outstanding loan to the

Company.

91.     The Committee Defendants directed Argent as to the amount of payment from the ESOP to repay principal and/or interest to the Selling Shareholders in connection with the $141 million Seller Notes and/or to repay principal and/or interest to the Company in connection with the $57 million Company Loan.  Each of those payments of principal and/or interest constitutes a separate violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

92.     The Committee Defendants are liable for appropriate equitable relief under 502(a)(2), 29 U.S.C. 1132(a)(2), for the violations of ERISA §§ 406(a)(1)(A), (B), and (D), 29 U.S.C. § 1106(a)(1)(A), (B), and (D).

### COUNT III
### Knowing Participation in a Violation of ERISA § 406(a), 29 U.S.C. §§ 1106(a)
(Against Selling Shareholders)

93.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

94.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A) prohibits the direct or indirect sale or exchange, or leasing of any property between the plan and a party in interest[.]"

95.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1) prohibits the direct or indirect "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

96.     ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B) prohibits the direct or indirect loan of money between the plan and a party in interest.

97.     ERISA § 3(14), 29 U.S.C. § 1002(14)(H) defines a "party in interest" to include "an employee, officer or director or a 10 percent or more shareholder" of an employer whose employees are covered by the ESOP.

98.     Each of the Selling Shareholders were employees, officer or directors of the Company at the time of the Sale of their stock to the ESOP, and, as such were parties in interest to the Plan within the meaning of ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H).

99.    Additionally, some of the Selling Shareholders owned 10% or more of the Company's total outstanding stock at the time of the Sale to the ESOP, and as such, were parties in interest to the Plan within the meaning of ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H).

100.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to bring a civil action for "appropriate equitable relief" against a non-fiduciary "party in interest" to a transaction barred by § 406(a), 29 U.S.C. § 1106(a). *See Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 120 S. Ct. 2180, 2183 (U.S. 2000).

101.    William Millard Choate and the other Selling Shareholders knowingly participated in the 2016 Sale because they were involved in the negotiations of the terms of the Sale and signed the Sale Agreement.

102.    As such, the Selling Shareholders, all of whom are parties in interest and who knowingly participated in the 2016 Sale, are liable for appropriate equitable relief as non-fiduciary parties in interest, including the disgorgement of any ill-gotten gains they received in connection with the 2016 Sale.

103.    Upon information and belief, the proceeds that the Selling Shareholders received from the Sale are traceable to violations of ERISA, namely the Sale of the 8,000,000 shares of Company stock by the Selling Shareholders on December 9, 2016.  Thus the funds may be disgorged pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3).

104.    Upon information and belief, the ill-gotten gains received as a result of the Sale are traceable to the Selling Shareholders' possession because the Selling Shareholders have maintained accounting and/or tax records regarding the proceeds received from the Sale.

105.    The Selling Shareholders are also noteholders of the $141 million loan the ESOP used to complete the transaction.  As parties to the loan and signatories of the loan agreements,

the Selling Shareholders knowingly participated in the ESOP's loan which constituted a prohibited transaction in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B).

106.    Each payment by the ESOP of principal and/or interest to the Selling Shareholders in connection with the $141 million Seller Notes constitutes a separate violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

107.    As parties-in-interest, Defendants Selling Shareholders are liable for appropriate equitable relief under 502(a)(3), 29 U.S.C. 1132(a)(3), for the violations of ERISA §§ 406(a)(1)(A), (B), and (D), 29 U.S.C. § 1106(a)(1)(A), (B), and (D).

## COUNT IV
**Prohibited Transaction in Violation of ERISA § 406(b), 29 U.S.C. §§ 1106(b)**
(Against Board Defendants and Committee Defendants Who Sold Choate Stock to the ESOP)

108.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

109.    ERISA § 406(b), 29 U.S.C. § 1106(b), prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account[.]" 29 U.S.C. § 1106(b)(1).

110.    Because the Board of Directors was a named fiduciary to the ESOP at the time of the 2016 Sale, and appointed the Trustee in connection with the 2016 Sale, the Director Defendants were fiduciaries of the Choate Construction ESOP.

111.    Because the Committee was a named fiduciary to the ESOP at the time of the 2016 Sale, and was the Plan Administrator to the ESOP, the Committee Defendants were fiduciaries of the Choate Construction ESOP.

112.    Any Board Defendants or Committee Defendants who arranged for the ESOP to buy their stock in the Company dealt with the ESOP assets in their own interest within the meaning of ERISA § 406(b)(1).

113.    ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3) prohibits a plan fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3).

114.    Any Board Defendants or Committee Defendants who sold shares of Choate stock to the ESOP received plan assets into their own personal accounts within the meaning of ERISA § 406(b)(3).

115.    All Board Defendants and Committee Defendants who arranged for the ESOP to purchase their shares of Choate stock through the 2016 Sale violated ERISA §§ 406(b)(1) and (3), 29 U.S.C. §§ 1106(b)(1) and (3) for which they are liable to restore the losses caused by these prohibited transactions, to disgorge profits and/or to provide other appropriate remedial and equitable relief to Plaintiff and the ESOP.

**COUNT V**
**Breach of Fiduciary Duties Under ERISA §§ 404(a)(1)(A) and (B),**
**29 U.S.C. §§ 1104(a)(1)(A) and (B)**
(Against Argent)

116.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

117.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires that a plan fiduciary act "for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan."

118.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) requires that a plan fiduciary act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

119.    In the context of a sale of the sponsoring company/employer to an ESOP, the duties of loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B)

require a fiduciary to undertake an appropriate investigation to determine that the ESOP and its participants pay no more than adequate consideration in a transaction involving the ESOP's assets.

120.     Pursuant to ERISA § 3(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the asset determined in good faith by the trustee pursuant to the terms of the plan and in accordance with the Department of Labor regulations.

121.     Argent was required to undertake an appropriate and independent investigation of the fair market value of the Choate stock before approving the 2016 Sale in order to fulfill its fiduciary duties.  Among other things, Argent was required (a) to conduct a thorough and independent review of any appraisal of the Company's shares that were purchased by the ESOP and to make certain that reliance on any and all appraisals or advice from valuation experts was reasonably justified under the circumstances; (b) to investigate the credibility of the management assumptions and earnings projections underlying the valuation; and (c) to make an honest, objective effort to read and understand the valuation reports and opinions and question the methods and assumptions that did not make sense. Argent was also required to question the prudence and loyalty of the warrants issued to the Selling Shareholders which, on information and belief, allowed them to retain elements of control of the Company and which could dilute the value of the 8 million shares purchased by the ESOP from 80% ownership to 60% ownership.

122.     An appropriate investigation would have revealed that the valuation used for the 2016 Sale and the $198 million price ultimately paid by the ESOP for 80% of the Company did not reflect the fair market value of the Choate stock purchased by the ESOP.

123.    An appropriate investigation would have revealed that it was not in the best interest of the ESOP participants to purchase 80% of the Company and allow certain Selling Shareholders to exchange their shares for warrants which would allow them to retain elements of control over the Company and to dilute the ESOP's ownership in the Company to 60% (from 80%).

124.    After the 2016 Sale, Argent was obligated to remedy the ESOP's overpayment for Choate stock, including correcting the prohibited transaction by attempting to restore the amount overpaid by the ESOP to the Selling Shareholders, including, if necessary, by filing a lawsuit on behalf of the ESOP.

125.    By causing the ESOP to engage in the 2016 Sale, and failing to restore the losses caused thereby, Argent breached its fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A), (B), and caused losses to the ESOP and the individual retirement accounts of the participants in the ESOP.

**COUNT VI**
**Failure to Monitor in Violation of ERISA §§ 404(a)(1)(A) and (B)**
**29 U.S.C. §§ 1104(a)(1)(A) and (B)**
(Against Board Defendants)

126.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

127.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires that a plan fiduciary act "for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan."

128.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires that a plan fiduciary act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

24-CLASS ACTION ALLEGATION COMPLAINT

129.     ERISA § 404(a)(1)(A) and (B) requires that any fiduciary with the power to appoint and/or remove other fiduciaries has an obligation to undertake an appropriate investigation that the appointed fiduciary is qualified to serve in the position as fiduciary and to monitor the appointed fiduciary to ensure that he/she remains qualified to act as the fiduciary and is acting in compliance with the terms of the Plan and in accordance with ERISA.  If the appointed fiduciary has violated or continues to violate ERISA, the monitoring fiduciary must remove the appointed fiduciary and attempt to restore any losses to the plan caused by the ERISA violations.

130.     The ESOP Trust Agreement provides that Argent was appointed by the Board Defendants.

131.     The Board Defendants breached their duties under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) &(B), because they failed to monitor Argent to ensure that the ESOP paid no more than fair market value for Company stock in the 2016 Sale and to ensure that Argent took remedial action after the 2016 Sale.

### COUNT VII
### Violation of ERISA § 410 and ERISA § 502(a)(3)
(against Argent and Board Defendants)

132.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

133.     ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [ERISA Part IV] shall be void as against public policy."

134.     ERISA §§ 502(a)(2) and (3), 29 U.S.C. § 1102(a)(2) and (3), authorize a plan participant to bring a civil action to enjoin any act or practice which violates any provision of

ERISA or the terms of the plan, or to obtain other appropriate equitable relief to redress

violations of ERISA or the terms of the plan or to enforce any provisions of ERISA.

135.    Section 9 of the Trust Agreement states that the Company will indemnify and

hold harmless Argent and its directors, employees, and officers from all claims, damages,

expenses, fees, liabilities, and losses to which they may become subject relating to the 2016

Sale.

136.    This attempt to relieve Argent, its directors, officers and employees of their

fiduciary responsibility or liability under ERISA and/or to have Choate Construction Company

(and thereby the ESOP) be responsible for Argent's fiduciary liability is void as against public

policy.

137.     To the extent any Board Defendant agreed to this indemnification of Argent

which is void against public policy under ERISA § 410, that Defendant breached his or her

fiduciary duties under ERISA by failing to discharge his duties with respect to the Plan solely in

the interest of the participants and beneficiaries (A) for the exclusive purpose of providing

benefits to participants and beneficiaries and (B) with the care, skill, prudence and diligence

under the circumstances then prevailing that a prudent person acting in a like capacity and

familiar with such matters would use in the conduct of an enterprise of like character and aims,

in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

138.    The indemnification provision in the Trust Agreement and any similar provision

in the engagement agreement between Argent and Choate Construction Company, and any

other agreements or instruments governing the relationship between Argent and other

Defendants, should be declared void ab initio.

139. Defendants, including Argent, should be ordered to disgorge any indemnification payments made by the Company or the ESOP, plus interest.

## **PRAYER FOR RELIEF**

Plaintiff on behalf of herself and the Class, prays that judgment be entered against Defendants on each Count and that the Class be awarded the following relief:

A. Declare that Defendants have each breached their fiduciary duties under ERISA;

B. Declare that Defendants Argent and the Selling Shareholders are liable for the violations of ERISA §§ 406(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1106(a) (A), (B) and (D), through the 2016 Sale;

C. Enjoin Argent, the Committee Defendants, and the Board Defendants from further violations of their fiduciary responsibilities, obligations and duties;

D. Remove Argent as the Trustee of the Choate Construction Company ESOP and/or bar it from serving as a fiduciary of the ESOP in the future;

E. Appoint a new independent fiduciary to manage the Choate Construction Company ESOP and order the costs of such independent fiduciary be paid for by Defendants;

F. Order each fiduciary found to have violated ERISA, including breaching his/her/its fiduciary duties to the ESOP to jointly and severally pay such amount to restore all the losses resulting from their breaches and to disgorge all profits made through use of assets of the ESOP;

G. Order that Defendants provide other appropriate equitable relief to the ESOP, including but not limited to disgorging any ill-gotten gains they received, forfeiting their ESOP accounts, providing an accounting for profits, ordering surcharge against Defendants to restore

losses to the ESOP, and imposing a constructive trust and/or equitable lien on any funds

wrongfully held by any of the Defendants;

H.  Order Defendants to provide all accountings necessary to determine the amounts

Defendants must remit to the ESOP to restore losses and to disgorge any profits fiduciaries

obtained from the use of ESOP assets or other violations of ERISA § 404 and 406, 29 U.S.C.

§ 1104 and 1106;

I.  An order enjoining the Defendant from dissipating any of the proceeds they

received from the 2016 Sale held in their actual or constructive possession until the ESOP

participants' rights can be adjudicated;

J.  An order enjoining the Defendant from transferring or disposing of the any of the

proceeds they received from the 2016 Sale to any person or entity, which would prejudice,

frustrate or impair the ESOP participants' ability to recover same;

K.  To the extent necessary, issue an injunction or order creating a constructive trust

into which all ill-gotten gains, fees and/or profits paid to any of the Defendants in violation of

ERISA shall be placed for the sole benefit of the ESOP's participants and beneficiaries.  This

includes, but is not limited to, the ill-gotten gains, fees and/or profits paid to any of the

Defendants that have been wrongly obtained as a result of breaches of fiduciary duty or

prohibited transactions or other violations of ERISA;

L.  Order, pursuant to ERISA § 206(d)(4), that any amount to be paid to the ESOP

accounts of the Class can be satisfied by using or transferring any breaching fiduciary's ESOP

account in the Plan (or the proceeds of that account) to the extent of that fiduciary's liability;

M.	Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or order payment of fees and expenses to Plaintiffs' counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the Class;

N.	Issue a preliminary and permanent injunction barring Defendants and each of them from seeking to enforce any indemnification agreement between Defendants and the Company or the ESOP and declare that any such indemnification agreement violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and void;

O.	Order Defendants and each of them to reimburse the ESOP or the Company for any money advanced by the ESOP or the Company, respectively, under any indemnification agreement or other instrument purporting to indemnify and Defendant;

P.	Order that Defendants and each of them provide other appropriate equitable relief to the ESOP, including but not limited to rescission, surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

Q.	Award pre-judgment interest and post-judgment interest; and

R.	Award such other and further relief to which the Court determines that Plaintiffs and the Class are entitled pursuant to ERISA § 502(a)(2) and/or § 502(a)(3), 29 U.S.C. § 1132(a)(2) and/or 1132(a)(3), or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or that is equitable and just.

Dated: April 17, 2019                    Respectfully submitted,

  /s/ Martha Geer               
Martha Geer
N.C. Bar No. 13971
**COHEN MILSTEIN SELLERS & TOLL PLLC**
150 Fayetteville Street, Suite 980
Raleigh, NC 27601
Telephone: (919) 890-0560
Facsimile: (919) 890-0567
mgeer@cohenmilstein.com


Michelle C. Yau
Karen L. Handorf
Jamie L. Bowers
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3934
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
myau@cohenmilstein.com
khandorf@cohenmilstein.com
jbowers@cohenmilstein.com

***Attorneys for Plaintiff***