# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

SHARON LEE on behalf of herself individually, )
and on behalf of all others )
similarly situated, )
　　　　　　　　　　　　　　　　　　 )
　　　　*Plaintiff*, )
　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )
v. )
　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )
ARGENT TRUST COMPANY, CHOATE )
CONSTRUCTION COMPANY ESOP )　　Case No. 5:19-cv-00156-BO
COMMITTEE, CHOATE CONSTRUCTION )
COMPANY BOARD OF DIRECTORS, )
WILLIAM MILLARD CHOATE, DAVE )
PRIESTER, COMMITTEE DEFENDANTS )
(John and Jane Does 1-10), BOARD )
DEFENDANTS (John and Jane Does 11-20), )
and SELLING SHAREHOLDERS (John and )
Jane Does 21 through 35). )
　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )

　　　　*Defendants.*

## SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................2

STANDARD OF REVIEW UNDER RULE 12(b)(1) and (6) ................................................5

ARGUMENT ..........................................................................................................................6

    I.     THE COMPLAINT MUST BE DISMISSED FOR LACK OF
            JURISDICTION BECAUSE THE PLAINTIFF SUFFERED NO INJURY
            AND LACKS STANDING. ........................................................................................6

          A.     The Court Lacks Jurisdiction To Hear This Complaint Because The
                  Plaintiff Has Suffered No Injury In Fact. ....................................................6

          B.     The Complaint Alleges No Real Threat of Future Injury To Sustain A
                  Request For Injunctive Relief. ....................................................................9

    II.    THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A
            CLAIM. ...................................................................................................................10

          A.     The Prohibited Transaction Claim Fails As A Matter Of Law. ......................10

          B.     The Fiduciary Breach Claim Fails As A Matter Of Law. ...............................12

                1.     Prudence is judged at the time of the transaction, not in hindsight,
                      and the transaction was prudent. ...................................................13

                 2.     Allegations about the warrants do not support liability. ........................13

                 3.     Allegations of a conflict of interest also cannot support liability ..........16

          C.     The Indemnification Claim Fails As A Matter Of Law ....................................17

          D.     The Court Should Strike The Only Remaining "Factual" Allegations In
                  The Complaint. .........................................................................................18

CONCLUSION .....................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................................... 5, 6, 15

*Bailey v. Va. High Sch. League, Inc.,*
488 F. App'x 714 (4th Cir. 2012) .......................................................................................... 3

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................................... 5, 6, 10, 11, 15

*Brincefield ex rel. Morton G. Thalhimer, Inc. Emp. Stock Ownership Plan v. Studdard,*
No. 3:17-CV-718-JAG, 2018 WL 6323071 (E.D. Va. Dec. 4, 2018) ...................................... 7

*Brown v. Equifax Inc.,*
No. 5:19-CV-78-BO, 2019 WL 1810976 (E.D.N.C. Apr. 24, 2019) ...................................... 11

*Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.,*
919 F.3d 763 (4th Cir. 2019), *as amended* (Mar. 22, 2019) .......................................... 12

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ................................................................................................................... 9

*DeBruyne v. Equitable Life Assurance Soc'y of U.S.,*
920 F.2d 457 (7th Cir. 1990) ............................................................................................... 13

*DiFelice v. U.S. Airways, Inc.,*
497 F.3d 410 (4th Cir. 2007) ............................................................................................... 13

*Fender v. Biltmore Forest Country Club, Inc.,*
No. 1:18-CV-43, 2018 WL 1995532 (W.D.N.C. Apr. 27, 2018) ..................................... 19, 20

*Fifth Third Bancorp v. Dudenhoeffer,*
573 U.S. 409 (2014) ........................................................................................... 6, 11, 12, 13

*Graff v. Prime Retail, Inc.,*
172 F. Supp. 2d 721 (D. Md. 2001), *aff'd sub nom. Marsh Grp. v. Prime Retail, Inc.,*
46 F. App'x 140 (4th Cir. 2002) ........................................................................................... 19

*Grindstaff v. Green,*
946 F. Supp. 540 (E.D. Tenn. 1996), *aff'd,* 133 F.3d 416 (6th Cir. 1998) ........................... 16

*In re Mut. Funds Inv. Litig.,*
529 F.3d 207 (4th Cir. 2008) ................................................................................................. 6

*In re NC Swine Farm Nuisance Litig.,*
    No. 5:15-CV-13-BR, 2015 WL 3948309 (E.D.N.C. June 29, 2015) ....................................19

*In re RCN Litig.,*
    2006 WL 1273834 (D.N.J. Mar. 22, 2006) ......................................................................16

*In re Wilmington Tr. Corp. ERISA Litig.,*
    943 F. Supp. 2d 478 (D. Del. 2013) .................................................................................6

*Loren v. Blue Cross & Blue Shield of Mich.,*
    505 F.3d 598 (6th Cir. 2007) ...........................................................................................6

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ..........................................................................................................6

*North Carolina v. McGuirt,*
    114 F. App'x 555 (4th Cir. 2004) .....................................................................................5

*Packer Eng'g, Inc. v. Kratville,*
    965 F.2d 174 (7th Cir. 1992) ...........................................................................................18

*Payne v. TR Assocs., LLC,*
    880 F. Supp. 2d 702 (E.D.N.C. 2012) ...............................................................................9

*Perelman v. Perelman,*
    919 F. Supp. 2d 512 (E.D. Pa. 2013), *aff'd*, 793 F.3d 368 (3d Cir. 2015) ......................6

*Perez v. PBI Bank, Inc.,*
    69 F. Supp. 3d 906 (N.D. Ind. 2014) ........................................................................ 17, 18

*Pfahler v. Nat'l Latex Prods. Co.,*
    517 F.3d 816 (6th Cir. 2007) ...........................................................................................18

*Philips v. Pitt Cty. Mem'l Hosp.,*
    572 F.3d 176 (4th Cir. 2009) ...........................................................................................11

*Pudela v. Swanson,*
    No. 91 C 3559, 1995 WL 77137 (N.D. Ill. Feb. 21, 1995) ..................................................17

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States,*
    945 F.2d 765 (4th Cir. 1991) .............................................................................................3

*Roth v. Sawyer-Cleator Lumber Co.,*
    16 F.3d 915 (8th Cir. 1994) .............................................................................................13

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v.*
*OpenBand at Broadlands, LLC,*
    713 F.3d 175 (4th Cir. 2013) ...................................................................................... 5, 9

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 (2016) ........................................................................................ 5, 6

*Swift Beef Co. v. Alex Lee, Inc.,*
   No. 5:17-CV-176, 2018 WL 792070 (W.D.N.C. Feb. 8, 2018)................................. 19, 20

*Varela v. Gonzales,*
   773 F.3d 704 (5th Cir. 2014) ...................................................................................5

*White Tail Park, Inc. v. Stroube,*
   413 F.3d 451 (4th Cir. 2005) ...................................................................................3

*White v. Mid-Atl. Rest. Corp.,*
   No. 7:18-CV-89-BO, 2018 WL 5503913 (E.D.N.C. Oct. 29, 2018)..................................3

*Wilmington Shipping Co. v. New England Life Ins. Co.,*
   496 F.3d 326 (4th Cir. 2007) ...................................................................................7

*Xerox Corp. v. Imatek, Inc.,*
   220 F.R.D. 241 (D. Md. 2003) .......................................................................... 19, 20

## STATUTES

26 U.S.C. § 401(a)(28)(C) .......................................................................................2

26 U.S.C. § 1274(d)(1)(D) ......................................................................................15

26 U.S.C. § 4975(e)(7) ...........................................................................................2

29 U.S.C. § 1103(a) ..............................................................................................2

29 U.S.C. § 1104(a)(1)(B) ......................................................................................13

29 U.S.C. § 1106(a) .............................................................................................10

29 U.S.C. § 1107(d)(6)(A) .......................................................................................2

29 U.S.C. § 1108(b)(17)(B)(ii) .................................................................................11

29 U.S.C. § 1108(e)(1) ...........................................................................................3

U.S. CONST. art. III..............................................................................................1, 6

## RULES

Fed. R. Civ. P. 10(c)..............................................................................................3

Fed. R. Civ. P. 12(b)(1)......................................................................................1, 3, 6

Fed. R. Civ. P. 12(b)(6)........................................................................................................5, 10, 11

Fed. R. Civ. P. 12(f) ..................................................................................................................19

## REGULATIONS

29 C.F.R. § 2509.75-4 (Interpretive Bulletin).........................................................................17

## OTHER AUTHORITIES

5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE
    § 1216 (3d ed. 2004) ...........................................................................................................5

5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE
    § 1382 (3d ed. 2004) .........................................................................................................19

Matthew M. O'Toole, *The Disproportionate Effects of an ESOP's Proportional Voting*,
    85 Nw. U. L. Rev. 824 (1991) ..........................................................................................16

Proposed Regulation Relating to the Definition of Adequate Consideration, 53 Fed. Reg. 17632
    (May 17, 1988) (to be codified at 29 C.F.R. § 2510.3-18(b)) ..............................................2

# INTRODUCTION

The story of Choate Construction Company ("Choate") is a tale of unbridled success. Choate started in CEO Millard Choate's basement in 1989 and grew—even through periods of economic recession—to annual revenue of over $1 billion as of December 2016. *See* Jim Parsons, *Choate Construction Grows For The Future*, ENRSOUTHEAST (July 5, 2017), https://bit.ly/2ZbXnyd; *Millard Choate Named 'Most Admired CEO' by Atlanta Business Chronicle*, Choate Construction (Aug. 2, 2018), https://bit.ly/2XtoqVa). On the heels of this significant success, Choate opted to give back to the employees who worked hard to support its growth and—rather than sell to a third party—Choate implemented an employee stock ownership program ("Choate ESOP") to offer employees equity ownership in Choate. Employees holding Choate stock saw an immediate gain in equity value at the time of the transaction and have seen a significant increase through year-end 2018.

The Complaint here alleges no facts that support any theory of liability under ERISA for the creation of the Choate ESOP. The allegations in the Complaint show that the Plaintiff suffered no injury in the creation of the Choate ESOP and, to the contrary, that the Choate ESOP enjoyed a substantial gain in value. As a matter of law, the Complaint should be dismissed for two reasons:

First, the Complaint fails to allege any personal, individualized injury to the Plaintiff, and she therefore lacks constitutional standing under Article III. Because the Plaintiff lacks standing, this Court lacks jurisdiction and the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

Second, the allegations regarding a purported drop in stock price, issuance of warrants, and conflict of interest fail to state any plausible claim under ERISA. The only thing these allegations point to is that the transaction proceeded precisely as planned. The key allegation of the Complaint—comparing the $198 million debt-financed purchase price and the $64.8 million equity value of the Choate ESOP's stock—is not indicative of unfairness but rather a self-defeating

1

demonstration that the formation of the Choate ESOP immediately generated positive value for the participants because the Choate stock was purchased at a below-market price. The chief allegation in the Complaint runs headlong into basic principles of finance, as explained below, is implausible on its face, and fails as a matter of law. None of the subsidiary and related allegations can save this failure, and the Complaint should be dismissed.

## FACTUAL BACKGROUND

An ESOP (which stands for "Employee Stock Ownership Plan"), is a defined-contribution plan under 26 U.S.C. § 4975(e)(7) that allows employees participating in the ESOP to acquire a beneficial interest in the securities of their employer (that is, company stock). *See* 29 U.S.C. § 1107(d)(6)(A). A company may, and often does, hire an outside entity to perform certain functions or serve as the trustee of the ESOP. 29 U.S.C. § 1103(a) provides that a plan trustee "shall have exclusive authority and discretion to manage and control the assets of the plan[.]" With many ESOPs, like the Choate ESOP, company stock is often not publicly-traded, and in that event ERISA requires that an independent appraiser perform a valuation of the stock for purposes of the creation of the ESOP. 26 U.S.C. § 401(a)(28)(C); *see* Proposed Regulation Relating to the Definition of Adequate Consideration, 53 Fed. Reg. 17632 (May 17, 1988) (to be codified at 29 C.F.R. § 2510.3-18(b)) (proposed regulation governing "adequate consideration," the regulators' term that is effectively synonymous with fair market value). A trust company, like Argent Trust Company ("Argent"), is hired to serve as trustee, to oversee this independent valuation, and ultimately to determine that the ESOP pays no more than fair market value for company stock.

Choate created the Choate ESOP in December 2016, Compl. ¶ 3, when the Choate ESOP purchased 8 million shares of Choate's stock, representing 80% of Choate, for $198 million. Compl. ¶ 4. Choate also redeemed 2 million shares of stock held by the selling shareholders—the former owners of Choate—in exchange for non-voting stock and warrants. Compl. ¶ 5. Employees put

2

none of their own money into the deal. Instead, the transaction was financed by the selling shareholders and Choate. To supply the Choate ESOP funds to buy the stock, Choate borrowed from a bank and then loaned the Choate ESOP $57 million of the purchase price ("at a rate equal to the long term applicable federal rate"). In addition, the Choate ESOP issued notes to selling shareholders for the remaining $141 million, at a 4% annual rate. Compl. ¶ ¶ 45-47.

Argent served as Trustee of the Choate ESOP pursuant to the governing Trust Agreement. *See* Compl. ¶ ¶ 25, 38; Trust Agreement (Ex. 1, attached hereto).[1] As trustee, Argent retained the nationally-recognized independent appraisal firm Stout Risius Ross ("SRR"), to help Argent ensure that the Choate ESOP's proposal to purchase stock reflected a price and other terms that were in the best interest of the Choate ESOP and its employee participants. Ex. 1 at Ex. A ¶ 4.

More specifically, the purpose of the valuation conducted at the time of the closing—and the purpose of engaging an independent trustee like Argent—is to ensure that, as ERISA requires, the Choate ESOP pays no more than fair market value for the purchase of Choate stock. 29 U.S.C. § 1108(e)(1) (providing an exemption from ERISA's prohibited transaction rules for acquisition of employer securities by ESOPs "if such acquisition . . . is for adequate consideration," often described as fair market value).

As required by law, Argent also engaged SRR to conduct annual valuations of the stock held in the Choate ESOP after the Choate ESOP formation. *See* Ex. 1 at Ex. A ¶ 4. As reflected in the

---

[1] Because Argent argues *infra* that the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) and the Constitution for lack of Article III standing, the Court may properly consider documents outside the Complaint. *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005); *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Moreover, because the allegations in the Complaint hinge on the Trust Agreement, *see* Compl. ¶ 22-27; ¶ 41; ¶ 90; ¶ 130; ¶135; ¶ 138, it is incorporated by reference into the Complaint and may be considered on this Motion to Dismiss. *See* Fed. R. Civ. P. 10(c); *Bailey v. Va. High Sch. League, Inc.*, 488 F. App'x 714, 715 (4th Cir. 2012) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint and any documents attached or incorporated by reference."); *White v. Mid-Atl. Rest. Corp.*, No. 7:18-CV-89-BO, 2018 WL 5503913, at *2 (E.D.N.C. Oct. 29, 2018) (Boyle, C.J.).

Choate ESOP's public filings with the Department of Labor, Choate has continued to perform well since the initial transaction and the value of Choate's stock increased $42.4 million dollars between year-end 2016 and year-end 2017. Choate ESOP 2016 and 2017 Form 5500 (Ex. 2, attached hereto, at 24, and Ex. 3, attached hereto, at 25).

The Complaint alleges that the "creation of the Choate ESOP . . . was not conducted in the best interests of the employees." Compl. ¶ 3. The Complaint offers three allegations said to show misconduct: first, that the value of Choate's stock after the creation of the Choate ESOP was lower than its value before the creation of the Choate ESOP, *see, e.g.*, Compl. ¶ 4, and therefore the "purchase price of $198 million was too high," Compl. ¶ 55; second, "the valuation relied upon by Argent . . . did not fully account for the negative effects of the warrants" issued as part of the deal, such that "the warrants allowed the Selling Shareholders to retain elements of control over [Choate]," Compl. ¶ 6, ¶ 37; third, "Argent . . . was selected and retained by the Sellers" and therefore had a "significant conflict[] of interest." Compl. ¶ 7.

These assertions form the basis of three counts against Argent: Count I, which alleges that Argent allowed the Choate ESOP to engage in a prohibited transaction based on the price and the way in which the deal was financed, *see* Compl ¶ ¶ 74-84 (Count 1); Count V, which alleges that Argent breached its fiduciary duties of loyalty and prudence by failing to investigate whether the sale price was no more than fair market value, taking into account the price and the warrants, *see* Compl. ¶ ¶ 116-125 (Count 5), and Count VII, which seeks to hold invalid the indemnification provision in the trust agreement between Argent and Choate, *see* Compl. ¶ ¶ 132-139 (Count 7). The Complaint also levies allegations against the selling shareholders, the Choate ESOP Committee defendants, and the Board Defendants (Counts 2-4, 6).

## STANDARD OF REVIEW UNDER RULE 12(b)(1) and (6)

A party who invokes the jurisdiction of the federal courts "bears the burden of establishing" that she has standing to sue. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). This requires her to show, *inter alia*, the invasion of a legally protected right that is "concrete and particularized," *id.* at 560, meaning that the injury "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 at 560 n.1). When a plaintiff lacks standing, the Court lacks jurisdiction and must dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) and the Constitution. *See Varela v. Gonzales*, 773 F.3d 704, 712 (5th Cir. 2014) (affirming district court's dismissal with prejudice where plaintiffs failed to demonstrate standing); *see also S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).

Moreover, where a complaint fails to state a claim upon which relief can be granted, it must be dismissed. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In short, the allegations in the complaint must be stated "clearly enough for the defendants to know how to defend themselves." *North Carolina v. McGuirt*, 114 F. App'x 555, 558 (4th Cir. 2004).

To survive a motion to dismiss, factual allegations "must be enough to raise a right to relief above the speculative level," or "'contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (alterations omitted) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, 235-36 (3d ed. 2004)). A complaint is insufficient when "it tenders naked

assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations marks and alteration omitted) (quoting *Twombly*, 550 U.S. at 557). The purpose of a motion to dismiss is to "divide the plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

## ARGUMENT

## I. THE COMPLAINT MUST BE DISMISSED FOR LACK OF JURISDICTION BECAUSE THE PLAINTIFF SUFFERED NO INJURY AND LACKS STANDING.

### A. The Court Lacks Jurisdiction To Hear This Complaint Because The Plaintiff Has Suffered No Injury In Fact.

All plaintiffs in federal court must meet the standing requirements of Article III. The "irreducible constitutional minimum of standing" includes, *e.g.*, that "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is . . . concrete and particularized[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In order "[f]or an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1 and collecting cases).

A statutory right to sue under ERISA does not erode this constitutional minimum. Quite the contrary: "Merely because Plaintiffs claim that they are suing on behalf of their respective ERISA plans does not change the fact that they must also establish individual standing." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir. 2007); *Perelman v. Perelman*, 919 F. Supp. 2d 512, 517 (E.D. Pa. 2013) (A plan participant who brings suit under ERISA "must not only satisfy standing under [ERISA], but must also meet the standing requirements of Article III."), *aff'd*, 793 F.3d 368 (3d Cir. 2015); *In re Wilmington Tr. Corp. ERISA Litig.*, 943 F. Supp. 2d 478, 488 (D. Del. 2013) ("[P]laintiffs must allege *more than a 'price drop throughout a proposed class period* to articulate an injury to create standing.'") (emphasis added). This is also true in the Fourth Circuit. *See In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008) (Plaintiffs must have both statutory and

constitutional standing to bring claims "for it is conceivable that a person is a member of the class given authority by a statute to bring suit but nonetheless has not, for example, sustained injury that would be redressable by a favorable decision of the court."); *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 333–34 (4th Cir. 2007) (requiring the same); *Brincefield ex rel. Morton G. Thalhimer, Inc. Emp. Stock Ownership Plan v. Studdard*, No. 3:17-CV-718-JAG, 2018 WL 6323071, at *3 (E.D. Va. Dec. 4, 2018) (requiring Plaintiff to demonstrate Article III standing in case concerning an ESOP).

The lynchpin of the Complaint is the allegation that "the [Choate ESOP] purchased 8 million shares . . . for $198 million," and then "Choate stock was valued at just $64.8 million less than a month after its sale . . . meaning the stock had lost 2/3 of its value as of December 31, 2016, after its purchase from the selling shareholders." Compl. ¶ 4; *see also* Compl. ¶ 52 ("[L]ess than a month after the sale of the [Choate] Stock to the [Choate ESOP] for $24.75 per share, the shares were valued at just $8.10 per share[.]"). The Complaint does not allege that the Plaintiff suffered any additional or unique harm independent of the alleged harm suffered by all participants in the Choate ESOP. This purported harm, however, is nonexistent and Plaintiff's allegation asks this Court to ignore business reality.

What the two figures referenced by the Complaint actually show is a completely expected consequence of acquiring Choate stock for considerably less than fair market value. The value of Choate and its stock did not plummet by 2/3 in the two weeks between the transaction valuation on December 13, 2016, at the creation of the Choate ESOP, and the statutorily-required year-end valuation on December 31, 2016. Rather, the two figures cited in the Complaint conflate two entirely different concepts: $198 million reflects what the Choate ESOP paid for the stock of Choate while $64.8 million reflects the value that inured to the benefit of the Choate ESOP participants immediately upon the closing of the transaction.

7

An analogy to a mortgage-financed home purchase illustrates the point. Take a home valued at $100,000. A buyer that borrows 100% of the purchase price will own a home worth $100,000 and have taken on mortgage of $100,000 and, therefore, will not immediately have any change in equity (he owns a $100,000 asset and has debt of $100,000). Now consider a buyer that takes on mortgage debt of $100,000 to purchase a home priced at $100,000 but with a value of $120,000. Following closing, that homeowner will have equity of $20,000. You would say that home-owner got a good deal, taking on substantial debt but paying less than market price for a home valued at $120,000 and immediately showing a gain to the homeowner's equity in the home.

The Complaint ignores that the same principles apply to the Choate ESOP's purchase of Choate company stock using debt financing. The difference between the $198 million purchase price and the $64.8 million post-closing equity value is not evidence that the Choate ESOP *overpaid* but quite the opposite. Just as with the homeowner that ends up with a home valued at $20,000 more than the mortgage/purchase price, the stock in the Choate ESOP immediately after the Choate ESOP transaction had a value of $64.8 million in excess of the debt-financed purchase price. If the Choate ESOP had purchased the stock for exactly what it was worth—not a dollar more— instead of the discounted price the Choate ESOP actually paid, then the value of the stock in the Choate ESOP would have been $0 at the Choate ESOP's creation (and, presumably, year-end 2016, two weeks later) because the purchase was 100% financed.

The Complaint also ignores the expected future effects of the debt-financing. A debt-financed home purchase (like a debt-financed ESOP) results in growing equity value to the home owner (or ESOP participant) as the debt is paid off over time and the asset appreciates in value. Here again, the public record bears this out: the Choate ESOP value *increased* from $64.8 million to $107.2 million between December 31, 2016, and December 31, 2017. Ex. 2 at 24; Ex. 3 at 25.

In sum, the Complaint contains no plausible allegation that Plaintiff has suffered an injury in

fact and she therefore lacks standing to bring this suit for equitable relief under ERISA. This pleading failure means that the Court lacks jurisdiction to hear this case and it must be dismissed. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).

### B. The Complaint Alleges No Real Threat of Future Injury To Sustain A Request For Injunctive Relief.

Plaintiff further lacks standing to seek prospective injunctive or declaratory relief because she cannot allege any credible threat of future harm. The Complaint's prayer for relief demands in part that the Court "enjoin Argent . . . from further violations" and "[r]emove Argent as the Trustee . . . and/or bar it from serving as a fiduciary of the [Choate ESOP] in the future." Compl. at 27 ¶¶ A, B. This request for injunctive relief to protect against alleged future harm must fail as a matter of law for the simple reason that no future harm is alleged in the Complaint, and allegations of past misconduct (which themselves fail for the reasons outlined above) cannot suffice as a matter of law.

To seek prospective injunctive relief, a plaintiff is required to demonstrate "more than simply an allegation of a defendant's prior wrongful conduct." *Payne v. TR Assocs., LLC*, 880 F. Supp. 2d 702, 704–05 (E.D.N.C. 2012) (Boyle, C.J.) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)). In other words, "there can be no Article III standing for injunctive relief unless the plaintiff alleges a substantial likelihood of future harm." *Id.* at 705. No such harm is alleged here. First, the Plaintiff does not bother to allege whether she is still a participant in the Choate ESOP (a necessary prerequisite for a claim to relief from potential future harm to the Choate ESOP). That pleading failure alone merits the dismissal of her claims for prospective relief: Without any allegation whether she is a participant in the Choate ESOP, Plaintiff cannot show "a substantial likelihood of future harm" based on participation in the Choate ESOP. Further, all of the factual allegations in

the Complaint—such as they are—relate to past actions and conduct in the December 2016 creation of the Choate ESOP (and the purported subsequent drop in stock value). But alleged past misconduct cannot as a matter of law support a claim for future relief.

## II. THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

If the Court does not dismiss for lack of jurisdiction, it should dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). None of the factual allegations in the Complaint—such as they are—plausibly supports any claim for relief under ERISA.

### A. The Prohibited Transaction Claim Fails As A Matter Of Law.

Count I alleges that Argent caused the Choate ESOP to engage in "prohibited transaction[s]," in violation of 29 U.S.C. § 1106(a), because the Choate ESOP "purchase[d] 8 million shares of [Choate stock] from the Selling Shareholders;" and "borrow[ed] $141 million from the Selling Shareholders" and "$57 million from [Choate]" to finance the deal. *See* Compl. ¶ ¶ 79, 80, 82, 83. In other words, the Complaint alleges the creation of the Choate ESOP through a leveraged finance purchase of stock was a prohibited transaction per se. Elsewhere, the Complaint also asserts that Argent "approved and caused the [Choate ESOP] to purchase 8 million shares of [Choate stock] for more than fair market value." *Id.* ¶ 48.

The Complaint must be dismissed as a matter of law because federal pleading requirements demand that a plaintiff allege more than liability by sheer *ipse dixit*. To state a claim for relief, alleged facts must allow a court *plausibly* to infer liability. *See Twombly*, 550 U.S. at 556. This plausibility standard requires a claimant to allege something more than a theory of liability that could be equally consistent with proper or improper conduct. *Twombly* itself makes this plain. There, an antitrust complaint levied allegations that could be consistent with parallel action *or* could reflect the independent judgment of market competitors. *See id.* at 566. It was not enough in *Twombly* that the factual allegations could run either way (to liability, on the one hand, or innocent conduct, on the

other):  The Supreme Court required something more, namely, "enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 556.  *Twombly* requires the Court to respect basic principles of economics when assessing whether allegations state a plausible claim.

As applied here, *Twombly* requires the Complaint to allege something more than a misleading comparison between Choate's value and equity held by the Choate ESOP following its debt-financed formation.  In deciding whether a complaint states a plausible claim for relief, a court need not "accept unwarranted inferences" or "unreasonable conclusions[.]"  *Brown v. Equifax Inc.*, No. 5:19-CV-78-BO, 2019 WL 1810976, at *1 (E.D.N.C. Apr. 24, 2019) (citing *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

The Supreme Court has specifically considered fundamentals of economics and finance when assessing the plausibility of ERISA claims.  In *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 426–27 (2014), the Court recognized that, under the efficient market hypothesis, plan fiduciaries cannot be expected to out-guess the market for public stock and predict future changes in value.  A different but equally fundamental concept of finance applies here—namely, that positive equity following a 100% debt-financed transaction reflects a good deal, not a bad one.  It is true that ESOP transactions are not the everyday stuff of trial lawyers and Article III judges.  But neither is the concept of parallel pricing or the efficient market hypothesis as considered by *Twombley* when assessing antitrust claims or *Dudenhoeffer* when assessing ERISA claims.  Plaintiffs cannot use the apparent complexity of a transaction to ignore financial reality and slide by Rule 12(b)(6).

Because the Complaint alleges no drop in value aside from the improper comparison between the value of Choate and the participants' equity, it contains no plausible allegation that the Choate ESOP paid more than adequate consideration, which is defined as "the fair market value of the asset as determined in good faith by a fiduciary[.]"  29 U.S.C. § 1108(b)(17)(B)(ii).  As discussed

above, the Choate ESOP showed a positive value of $64.8 million despite the 100% financing used to acquire the stock. If the improper comparison of values contained in this Complaint were sufficient to state a claim, then *every* debt financed ESOP transaction could be litigated and ESOPs will become the latest form of strike suit.[2] But that prospect plainly violates *Dudenhoeffer*'s admonition to "divide the plausible sheep from the meritless goats" at this early stage. *Dudenhoeffer*, 573 U.S. at 425. Much more—and much more specific—allegations of misconduct should be required. Compare the paucity of allegations in the present complaint, for example, to the conduct discussed by the Fourth Circuit in a prior ESOP case. *Cf. Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763, 774 (4th Cir. 2019), *as amended* (Mar. 22, 2019) (affirming finding of fiduciary breach where "no one from Wilmington ever asked about . . . or questioned the vast discrepancy between two valuations of the same company performed mere months apart" by two different companies).

### B. The Fiduciary Breach Claim Fails As A Matter Of Law.

The Complaint goes on to allege that Argent violated its fiduciary duties of prudence and loyalty purportedly because "Argent was required to undertake an appropriate and independent investigation of the fair market value of the Choate stock before approving the 2016 sale" and that such an investigation would have revealed that the Choate ESOP paid too much for the stock, particularly when taking the warrants into account. *See* Compl. ¶¶ 121-22. A review of the Complaint and the Trust Agreement referenced in it, however, show that Argent carried out its role as trustee and observed its fiduciary duties. There are no plausible allegations showing a breach of fiduciary duty, and this claim should be dismissed.

---

[2] The lack of any injury in this case is illustrated by counsel's struggle to find a class plaintiff, an effort that required an intense letter-writing campaign. *See, e.g.*, Ex. 4 (solicitation letter from Cohen Milstein). A healthy skepticism is warranted.

1. **Prudence is judged at the time of the transaction, not in hindsight, and the transaction was prudent.**

As a preliminary matter, a purported post-transaction decline in stock value cannot itself support a claim for fiduciary breach because the question whether Argent acted prudently is judged at the time of the transaction itself and not in hindsight. *See Dudenhoeffer*, 573 U.S. at 425 ("[T]he content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts[.]") (quoting 29 U.S.C. § 1104(a)(1)(B)). Monday morning quarterbacking is not allowed, and the question of fiduciary prudence is not a question of "prescience." *See DeBruyne v. Equitable Life Assurance Soc'y of U.S.*, 920 F.2d 457, 465 (7th Cir. 1990). "[W]hether a fiduciary's actions are prudent cannot be measured in hindsight[.]" *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 424 (4th Cir. 2007); *see also Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 918 (8th Cir. 1994) ("[T]he prudent person standard is not concerned with results; rather, it is a test of how the fiduciary acted viewed from the perspective of the time of the challenged decision rather than from the vantage point of hindsight.") (internal quotation marks and alterations omitted) (citation omitted).

The existence of the independent valuation and the efforts Argent and its independent valuation firm undertook to determine the value of Choate stock—and the purchase of that stock within the range of acceptable values—demonstrate that Argent acted prudently. *See* Compl. ¶¶ 6; 39; 121; 122. Indeed, as explained above, *see supra* 8-9, the Complaint's allegation of a positive equity value of $64.8 million following the debt-financed transaction shows that the Choate ESOP purchased stock at a fair price and defeats the Complaint's attempt to plead a fiduciary breach based on the formation of the Choate ESOP.

2. **Allegations about the warrants do not support liability.**

Warrants and a small amount of non-voting common stock (for tax reasons not relevant here) were exchanged for 20% of the stock held by the Selling Shareholders. Compl. ¶ 43. The

Complaint does not claim that the use of warrants to finance a transaction is illegal *per se* and refers to the warrants instead to suggest that the initial Choate ESOP transaction was somehow unfair. Compl. ¶¶ 5, 6, 43. But again, the Complaint wants the Court to blind itself to basic finance.

A "warrant" is an option to buy or sell stock at a named strike price, *see Warrant*, INVESTOPEDIA (Feb. 5, 2019), https://www.investopedia.com/terms/w/warrant.asp. There are several benefits afforded ESOPs from the use of warrants.

First, warrants provide the selling shareholders who accept the warrants with a continuing interest in the company because the warrant achieves value only if the stock price exceeds the warrant's strike price. Thus, the warrant holder and the ESOP participants share a common interest in seeing the company perform well and increase in value. The Complaint concedes this continuing interest. Compl. ¶ 37.

Second, the granting of warrants reduces the amount of debt that Choate must take on to finance the transaction. Because the selling shareholders were willing to accept warrants in lieu of cash, the warrants reduced the amount of debt Choate took on and thereby lowered Choate's debt payments and improved Choate's free cash flow. As the Complaint acknowledges, the Choate ESOP purchased 80% of the Choate stock with loaned money, *see* Compl. ¶¶ 4, 42, 45, 46, 47, and Choate acquired the remaining 20% using warrants and a tiny amount of non-voting common stock, *see* Compl. ¶¶ 5, 43. This 20% stock interest was retired or redeemed by Choate, leaving the Choate ESOP with a 100% ownership of Choate at the time of the transaction, *see* Compl. ¶ 43.

Third, the warrants allowed the Choate ESOP to obtain a below-market interest rate on selling shareholder notes to finance the transaction. The Complaint acknowledges that the seller notes issued to finance $141 million of the stock purchase price were issued at a rate of only 4% interest, *see* Compl. ¶ 47. That is a below-market rate. In effect, on a deeply subordinated loan to be paid by the earnings of a local construction company, the Selling Shareholders accepted an interest

rate that was less than the interest paid on senior bonds issued by the nation's most credit-worthy companies. *See, e.g., Moody's Seasoned Aaa Corporate Bond Yield: 2016-12-12*, FEDERAL RESERVE BANK OF ST. LOUIS, https://fred.stlouisfed.org/graph/?g=o71b (last visited Jun. 6, 2019, as filtered for date range 2016-12-11 to 2016-12-12) (showing Aaa corporate bond rate of 4.1% for December 12, 2016). The same is true of the $57 million loan between Choate and the Choate ESOP: Interest on that loan is payable "at a rate equal to the long term applicable federal rate." Compl. ¶ 46. The long-term applicable federal rate is the *minimum* interest rate that the IRS allows for private loans. 26 U.S.C. § 1274(d)(1)(D) (stating that a rate lower than the applicable Federal rate is only available by regulation of the Secretary of the Internal Revenue Service); *see Revenue Ruling 2016-27,* INTERNAL REVENUE SERVICE, https://www.irs.gov/pub/irs-drop/rr-16-27.pdf (last visited June 6, 2019) (showing in Table 1 that the unadjusted long term applicable federal rate for December 2016 was 2.26% annually). By definition, then, this too is incredibly inexpensive financing, essentially the same rate paid on short-term T-bills backed by the full faith and credit of the federal government. The selling shareholders were willing to accept low interest rates because the warrants provide additional consideration by giving them a right to acquire Choate stock in the future and, thus, potentially boost their overall effective rate of return if Choate performs well (rather than limiting themselves to the sale price fixed in December 2016, plus the interest paid on the notes).

Thus, warrants can clearly benefit the Choate ESOP and its participants. The Complaint alleges no facts from which this Court could infer that these benefits did not accrue or that the warrants were improperly valued and, thus, contains no allegations regarding warrants that support a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To paraphrase the Supreme Court, because the use of warrants can provide distinct advantages, the Complaint has failed to "nudge[] [its] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570.

Likewise, there are no well-pleaded allegations supporting the Complaint's insinuation that the use of warrants somehow means the Choate ESOP acquired 100% of the stock yet failed to gain control of Choate, leaving such control in the hands of the selling shareholders. Compl. ¶ 5. The Trust Agreement makes plain that the Choate ESOP Trustee, Argent, has the power to vote Choate stock and thereby elect members of the Board of Directors. *See* Ex. 1 at § 3.3(a). And even if the stock price appreciates over time and the selling shareholders exercise all of the warrants, they would own only 40% of Choate stock. *See* Compl. ¶¶ 5-6. The other 60%—the controlling interest by any measure—remains with the ESOP.

### 3. Allegations of a conflict of interest also cannot support liability.

The Complaint also alleges that Argent suffered from some sort of conflict of interest because it was selected by Choate owners. *See* Compl. ¶ 7 (Argent "represented the [Choate ESOP] in the transaction" and was "selected and retained by the Sellers" so it was "operating under a significant conflict of interest[.]"). The selection of an ESOP trustee by the Board of Directors of the company sponsoring an ESOP is routine and proper. *See Grindstaff v. Green*, 946 F. Supp. 540, 545–46 (E.D. Tenn. 1996) ("ESOP corporations' boards of directors select the ESOP trustee ninety percent (90%) of the time.") (citing Matthew M. O'Toole, *The Disproportionate Effects of an ESOP's Proportional Voting*, 85 Nw. U. L. Rev. 824, 837 n.76 (1991)), *aff'd*, 133 F.3d 416 (6th Cir. 1998). Therefore, these allegations cannot support liability because there is nothing that takes them across the plausibility threshold that federal pleading standards require.

Nor is a trustee conflicted simply because it is paid for its work. *See, e.g.*, *In re RCN Litig.*, 2006 WL 1273834, at *8–9 (D.N.J. Mar. 22, 2006) ("The only way for a professional trustee . . ., who is selected and retained by a company to administer a savings and retirement plan that invests in that company's stock, to affirmatively avoid the conflict of interest that the Plaintiffs' are implying, . . . would be to provide their services for free. ERISA clearly did not intend for such a

consequence."). The suggestion in the Complaint that the Court should order a disgorgement of Argent's fees, *see, e.g.*, Compl. ¶ 139; Compl. ¶ 27, on the basis of any alleged conflict of interest therefore should fail.

### C. The Indemnification Claim Fails As A Matter Of Law.

Count VII seeks declaratory judgment that the plain terms of a liability limitation provision in the Trust Agreement between Argent and Choate is invalid. The Complaint does not bother to include the language of the provisions it wishes the Court to deem invalid (much less attach the Trust Agreement for the Court's review). It states only that "Section 9 of the Trust Agreement states that Choate will indemnify and hold harmless Argent," Compl. ¶ 135, and that "[t]he indemnification provision in the Trust Agreement and any similar provision in the engagement agreement between Argent and Choate . . . and any other agreements or instruments governing the relationship between Argent and other Defendants, should be declared void ab initio." Compl. ¶ 138. This conclusory assertion that indemnification—or, more broadly, "any agreement"—is void, misstates the law, and cannot support a plausible cause of action.

Indemnification provisions *are* enforceable under ERISA in circumstances precisely like this: Companies may indemnify plan trustees if the indemnification provisions do not cover a final judgment that a trustee breached its fiduciary duties, and trustees may rely upon such provisions when electing whether to accept an engagement. *See, e.g.*, *Perez v. PBI Bank, Inc.*, 69 F. Supp. 3d 906, 913 (N.D. Ind. 2014) ("The fact that the language of the Engagement Letter limits indemnification to situations where those accused of misconduct are vindicated is what permits the indemnification clause to be enforceable."); *Pudela v. Swanson*, No. 91 C 3559, 1995 WL 77137, at *5 (N.D. Ill. Feb. 21, 1995) (holding that ESOP trustees may be indemnified by the company sponsoring the ESOP). The Department of Labor has likewise noted that indemnification provisions of this type are valid and enforceable. *See* 29 C.F.R. § 2509.75-4 (Interpretive Bulletin). Where an "indemnification

provision applies only if [a Party] is found *not* to have failed to perform its fiduciary duties as ERISA requires," then it is "just such a *non-exculpatory* indemnification provision that [ERISA] § 410(a) has been held to permit." *Perez*, 69 F. Supp. 3d at 913. Indeed, "[h]ow could anyone take seriously the proposition that ERISA forbids the indemnification of fiduciaries wrongly accused of misconduct, when ERISA itself allows a court to award fees to the prevailing side?" *Packer Eng'g, Inc. v. Kratville*, 965 F.2d 174, 176 (7th Cir. 1992); *see also Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 837 (6th Cir. 2007) ( "Given that ERISA explicitly permits parties to insure against possible liability, it would be illogical to interpret the statute as prohibiting indemnification agreements, which accomplish the same thing.").

The Trust Agreement contains precisely the limitations allowed by law and is therefore valid and enforceable. *See* Ex. 1 at § 9. Specifically, Section 9 of the Trust Agreement provides that "[Choate] shall indemnify and hold the Trustee . . . harmless in accordance with paragraph 6 of" Exhibit A to the Agreement. *See id.* Paragraph 6 of Exhibit A to the Trust Agreement makes clear that indemnification "shall not apply to any claim, damage, expense, liability, or loss that is attributable to [Argent's] breach of fiduciary duty under ERISA, gross negligence, or willful misconduct." Because Section 9 of the Trust Agreement, as limited in Paragraph 6 of Exhibit A, excludes liabilities or losses resulting from the Trustee's breach of its fiduciary duties, the indemnification provision is valid as a matter of law. The Complaint makes no attempt to explain why that is not so.

### D. The Court Should Strike The Only Remaining "Factual" Allegations In The Complaint.

The Complaint also includes two other allegations not otherwise addressed in this brief. They are not otherwise mentioned because they are wholly irrelevant to this dispute and plainly designed only to impugn and prejudice Argent. The Court should strike these two allegations. First,

Plaintiff alleges that another trust company, Reliance Trust Company, reached a settlement with the Department of Labor in connection with a separate corporate ESOP. Compl. ¶ 15 (the Tobacco Rag allegation). Second, Plaintiff alleges that she sought documents from the Department of Labor relating to the 2016 Choate ESOP purchase of stock, but that the Department withheld documents based on the grounds that it had an open investigation into the Choate ESOP and the release of the requested documents could interfere with enforcement proceedings. Compl. ¶ 57 (the DOL inquiry).

The Court should strike these allegations under Rule 12(f) because they are wholly immaterial to the dispute and are plainly designed to prejudice Argent by inferring improper conduct where none exists. Under Rule 12(f), any "immaterial, impertinent, [and] scandalous" charges should be stricken. Fed. R. Civ. P. 12(f). Paragraphs 15 and 57 of the Complaint "have no possible relation to the controversy and may cause prejudice to one of the parties." *See Graff v. Prime Retail, Inc.*, 172 F. Supp. 2d 721, 731 (D. Md. 2001), *aff'd sub nom. Marsh Grp. v. Prime Retail, Inc.*, 46 F. App'x 140 (4th Cir. 2002); 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1382 (3d ed. 2004). Consistent with Rule 12(f), a party may not "use entirely unrelated legal controversies . . . to 'muddy the waters' in this relatively straightforward case." *Xerox Corp. v. Imatek, Inc.*, 220 F.R.D. 241, 243 (D. Md. 2003); *see also In re NC Swine Farm Nuisance Litig.*, No. 5:15-CV-13-BR, 2015 WL 3948309 (E.D.N.C. June 29, 2015) (granting motion to strike allegations relating to the Communist Party and the People's Liberation Army due to their inflammatory and prejudicial nature); *Fender v. Biltmore Forest Country Club, Inc.*, No. 1:18-CV-43, 2018 WL 1995532, at *1–2 (W.D.N.C. Apr. 27, 2018) (striking mention of separate and unrelated EEOC charges because the mentions were immaterial to Plaintiff's claims for relief); *Swift Beef Co. v. Alex Lee, Inc.*, No. 5:17-CV-176, 2018 WL 792070, at *3 (W.D.N.C. Feb. 8, 2018) (granting motion to strike paragraphs that did "little but inflame others" and noting that "even allegations that are factual

can be scandalous if they are immaterial or irrelevant and cast a party in a derogatory light.")

The Court should strike the Paragraphs 15 and 57 because the allegations in them are immaterial and scandalous. Like the allegations in *Xerox*, the Tobacco Rag and DOL Investigation allegations have no relevance whatsoever to Plaintiffs' claim. Any settlement agreement entered into by Reliance related to the formation of a separate and distinct ESOP has no bearing on Argent's actions in the creation of this ESOP. Like the allegations in *Swift Beef*, the sole purpose of dredging up the Tobacco Rag allegation is to cast Argent in a derogatory light by association. *Swift Beef Co.*, 2018 WL 792070, at *3. Thus, this allegation has no place in Plaintiff's complaint, and should be struck. Likewise, the DOL's investigation into the Choate ESOP has no bearing on Plaintiff's claims. Just as the mention of another party's EEOC charges was struck in *Fender*, so too should the court strike the DOL Investigation Allegation. *Fender*, 2018 WL 1995532, at *1–2. Plaintiff should not be permitted to prejudice Argent by casting it in a negative light through immaterial and scandalous allegations. The Court should strike these allegations. The fact that these allegations are included at all merely demonstrates the lack of any plausible allegations to the support the claims of the Complaint.

## CONCLUSION

The Complaint should be dismissed because Plaintiff lacks standing to sue, and the Court therefore lacks jurisdiction to hear this case. Moreover, none of the allegations in the Complaint are sufficient to state any of the claims levied against Argent: The prohibited transaction and breach of fiduciary duty claims are economically implausible and the indemnification provision is facially valid and enforceable. Dismissal is warranted.

Dated: June 6, 2019

Respectfully submitted,

By: */s/* Jeffrey S. Russell

Benjamin F. Sidbury (N.C. Bar #27081)
BRYAN CAVE LEIGHTON PAISNER LLP
One Wells Fargo Center
301 S. College Street, Suite 3900
Charlotte, NC 28202
ben.sidbury@bclplaw.com
Telephone:     (704) 749-8999
Facsimile:     (704) 749-8990

Jeffrey S. Russell (Missouri Bar #35158)
Barbara A. Smith (Missouri Bar #66237)
BRYAN CAVE LEIGHTON PAISNER LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
jsrussell@bclplaw.com
barbara.smith@bclplaw.com
St. Louis, Missouri 63102
Telephone:     (314) 259-2000
Facsimile:     (314) 259-2020

*Attorneys for Defendant Argent Trust Co.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 6, 2019, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

_/s/_ Jeffrey S. Russell