# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

No. 5:19-cv-00156- BO

| | | |
|---|---|---|
| SHARON LEE ON BEHALF OF HERSELF INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) | **MEMORANDUM OF POINTS AND AUTHORITIES IN** |
| PLAINTIFF, | ) ) | **SUPPORT OF THE CHOATE** |
| | ) | **DEFENDANTS' MOTION TO DISMISS** |
| v. | ) ) | |
| ARGENT TRUST COMPANY, CHOATE CONSTRUCTION COMPANY ESOP COMMITTEE, CHOATE CONSTRUCTION COMPANY BOARD OF DIRECTORS, WILLIAM MILLARD CHOATE, DAVE PRIESTER, COMMITTEE DEFENDANTS (JOHN AND JANE DOES 1-10), BOARD DEFENDANTS (JOHN AND JANE DOES 11-20), AND SELLING SHAREHOLDERS (JOHN AND JANE DOES 21 THROUGH 35), | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| DEFENDANTS. | ) ) | |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT ........................................................................................................................... 3

    I.    PLAINTIFF LACKS STANDING TO PROCEED WITH HER FIVE COUNTS AGAINST THE CHOATE DEFENDANTS. ........................................................................................... 3

    II.    PLAINTIFF HAS FAILED TO COMPLY WITH HER PLEADING REQUIREMENTS. ................... 8

    III.    EVEN IF NOT DISMISSED FOR THE REASONS ABOVE, EACH COUNT AGAINST THE CHOATE DEFENDANTS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6). ......................................................................................................... 12

        a. Count II Fails To State A Claim Upon Which Relief Can Be Granted. .................... 13

        b. Count III Fails To State A Claim Upon Which Relief Can Be Granted Against The Selling Shareholders .................................................................................................. 15

        c. Count IV Fails To State A Claim For Relief Against The Choate Defendants ......... 19

        d. Count VI Fails To State A Claim Against The Board Defendants. ........................... 21

        e. Count VII Should Be Dismissed For Failure To State A Claim. ............................... 23

CONCLUSION ...................................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
  367 F.3d 212 (4th Cir. 2004) ............................................................................6

*Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*,
  77 F.3d 364 (11th Cir. 1996) .............................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................10

*Astrop v. Eckerd Corp.*,
  No. CIVA 3:09CV681, 2010 WL 1779992 (E.D. Va. Apr. 29, 2010), *aff'd*,
  397 F. App'x 881 (4th Cir. 2010) .....................................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................6, 7, 10, 12

*Birmingham v. SoGen–Swiss Int'l Corp. Ret. Plan*,
  718 F.2d 515 (2d Cir. 1983)........................................................................13, 15

*Blum v. Yaretsky*,
  457 U.S. 991 (1982)............................................................................................5

*Bray v. Fresenius Med. Care Aktiengesellschaft Inc.*,
  No. 06-c-50197, 2007 WL 7366260 (N.D. Ill. Aug. 30, 2007) .........................9

*Briscoe v. Fine*,
  444 F.3d 478 (6th Cir. 2006) ......................................................................14, 20

*Brown v. Medtronic, Inc.*,
  628 F.3d 451 (8th Cir. 2010) .............................................................................4

*In re Calpine Corp ERISA Litig.*,
  2005 WL 1431506 ......................................................................................21, 22

*Clausell v. Bayer Corp.*,
  No. 5:15-CV-50-BO, 2015 WL 5146704 (E.D.N.C. Sept. 1, 2015).................12

*Coleman v. Nationwide Life Ins. Co.*,
  969 F.2d 54 (4th Cir. 1992) ........................................................................14, 20

*In re Constellation Energy Grp., Inc.*,
  738 F. Supp. 2d 602 (D. Md. 2010)..................................................................22

*Crowley ex rel. Corning, Inc, Inv. Plan v. Corning, Inc.*,
  234 F. Supp. 2d 222 (W.D.N.Y. 2002) .............................................................21

*David v. Alphin*,
   704 F.3d 327 (4th Cir. 2013) .................................................................................4

*David v. Alphin*,
   817 F. Supp. 2d 764 (W.D.N.C. 2011), *aff'd*, 704 F.3d 327 (4th Cir. 2013)............................4

*Davis v. Perdue*,
   No. 5:12-CV-00593-FL, 2012 WL 12542101 (E.D.N.C. Sept. 13, 2012) ...............................9

*In re Duke Energy ERISA Litig.*,
   281 F. Supp. 2d 786 (W.D.N.C. 2003) ....................................................................22

*Elliott v. Solis*,
   117CV01214LJOSAB, 2017 WL 4811747 (E.D. Cal. Oct. 24, 2017)..................................12

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014)........................................................................................13

*In re First Union Corp. Sec. Litig.*,
   128 F. Supp. 2d 871 (W.D.N.C. 2001) .....................................................................10

*Fogner v. Am. Home Mortg. Servicing, Inc.*,
   No. 1:11-CV-1073, 2012 WL 12892725 (M.D.N.C. Feb. 24, 2012) ................................8, 10

*Foster v. Dep't of Health & Human Servs.*,
   No. 1:98CV00902, 2000 WL 33128817 (M.D.N.C. Dec. 22, 2000)......................................8

*Friends for Ferrell Parkway, LLC v. Stasko*,
   282 F.3d 315 (4th Cir. 2002) .................................................................................3

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
   528 U.S. 167 (2000)......................................................................................4, 7

*Great-W. Life & Annuity Co. v. Knudson*,
   534 U.S. 204 (2002)...............................................................................18, 19, 20

*Hall v. Virginia*,
   385 F.3d 421 (4th Cir. 2004) .................................................................................6

*Harris v. GreatBanc Trust Co.*,
   No. EDCV12 1648-R, 2013 WL 1136558 (C.D. Cal. Mar. 15, 2013) ..................................25

*Harris Trust and Savings Bank*,
   530 U.S. 238 (2000).........................................................................................16

*Leigh v. Engle*,
   858 F.2d 361 (7th Cir. 1988) ...............................................................................24

*Lemons v. Taylor,*
  No. 5:15-CT-03234-D, 2017 WL 3301216 (E.D.N.C. June 21, 2017) ....................................8

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)........................................................................................................3, 7

*Martinez v. Barasch,*
  No. 01 Civ. 2289 (MBM) (JCF), 2006 WL 435727 (S.D.N.Y. Feb. 22, 2006)......................25

*McGath v. Auto-Body N. Shore, Inc.,*
  7 F.3d 665 (7th Cir. 1993) .........................................................................................14, 20

*Mertens v. Hewitt Associates,*
  508 U.S. 248 (1993)....................................................................................................7, 17

*Packer Eng'g, Inc. v. Kratville,*
  965 F.2d 174 (7th Cir. 1992) .....................................................................................24, 26

*Pegram v. Herdrich,*
  530 U.S. 211 (2000)........................................................................................................20

*Pender v. Bank of Am. Corp.,*
  788 F.3d 354 (4th Cir. 2015) ....................................................................................18, 20

*Randall v. United States,*
  30 F.3d 518 (4th Cir. 1994) ............................................................................................12

*Rego v. Westvaco Corp.,*
  319 F.3d 140 (4th Cir. 2003) ....................................................................................18, 19

*Robinson v. Equifax,*
  No. 4:10-CV-84-BO, 2011 WL 285232 (E.D.N.C. Jan. 26, 2011) .........................................8

*Schatz v. Rosenberg,*
  943 F.2d 485 (4th Cir. 1991) ..........................................................................................12

*Tatum v. RJR Pension Inv. Comm.,*
  761 F.3d 346 (4th Cir. 2014) ....................................................................................14, 16

*Taveras v. UBS AG,*
  612 F. App'x 27 (2d Cir. 2015) .........................................................................................4

*Taylor v. KeyCorp,*
  680 F.3d 609 (6th Cir. 2012) ............................................................................................5

*Teets v. Great-W. Life & Annuity Ins. Co.,*
  921 F.3d 1200 (10th Cir. 2019) ......................................................................................19

*In re U.S. Airways, Inc.*,
    No. 04-13819-SSM, 2007 WL 2416536 (Bankr. E.D. Va. Aug. 20, 2007) ...........................19

*Veltmann v. Walpole Pharm., Inc.*,
    928 F. Supp. 1161 (M.D. Fla. 1996) ...........................................................................................9

*Warth v. Seldin*,
    422 U.S. 490 (1975) ....................................................................................................................3

*White v. Chevron Corp.*,
    16-CV-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd*, 752
    Fed. App'x 453 (9th Cir. 2018) ................................................................................................22

*White v. Chevron Corp.*,
    No. 16-CV-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .............................22, 23

*Wright v. North Carolina*,
    787 F.3d 256 (4th Cir. 2015) .....................................................................................................8

*ZF Meritor, LLC v. Eaton Corp.*,
    696 F.3d 254 (3d Cir. 2012) .......................................................................................................7

**Statutes**

29 U.S.C. § 1002 ...........................................................................................................................14

29 U.S.C. § 1102 ...........................................................................................................................14

29 U.S.C. § 1106 ...........................................................................................................................17

29 U.S.C. § 1110 ...........................................................................................................................23

**Other Authorities**

29 C.F.R. § 2509.75-4 ...................................................................................................................24

DOL Adv. Ops. 77-66/67A (Sept. 9, 1977) .................................................................................25

https://www.consumerfinance.gov/ask-cfpb/how-does-paying-down-a-mortgage-
    work-en-1943/ ..............................................................................................................................6

Pursuant to Rules 8(a)(2), 10(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Choate Construction Company Board of Directors ("Board"), Choate Construction Company ESOP Committee ("Committee"),[1] William Millard Choate, and Dave Priester (collectively, the "Choate Defendants")[2] respectfully submit this Memorandum of Points and Authorities in Support of the Choate Defendants' Motion to Dismiss Counts II, III, IV, VI, and VII—the five counts brought against the Choate Defendants collectively.

## INTRODUCTION

Despite taking thirty pages and seeking to sue forty-one named and unnamed defendants, Plaintiff filed this action without having standing to do so and without a sufficient factual basis for her claims. The Complaint is a hodge-podge of accusations based solely on the fact that the company's stock value declined due to the debt taken on by an employee stock ownership plan in order to fund a leveraged stock purchase transaction in December 2016. From that one innocuous allegation, Plaintiff—a former employee—relies on conclusory assertions to assume the transaction was impermissible under the Employee Retirement Income Security Act ("ERISA"), that the transaction resulted in "tens of millions of dollars" of overpayment for the purchased stock, and that anyone who touched the transaction is liable for these alleged losses. In doing so, Plaintiff seeks to rake in all selling shareholders, the Board and its members, the Committee and its members, and the third-party trustee—entirely distinct categories of defendants with unnamed individual actors—in an effort to assert that diverse yet muddled group violated the law. Plaintiff's "group pleading" strategy violates basic pleading requirements and

---

[1] Although responding to the Complaint for purposes of this Motion to Dismiss, Defendant Choate Construction Company ESOP Committee challenges that proper service was effectuated upon the Committee and reserves all rights to challenge such service.

[2] For purposes of this Motion and Memorandum, and without accepting Plaintiff's classifications, the Choate Defendants cite to the capitalized defendant groups as used by Plaintiff in the Complaint.

does not provide the Choate Defendants with factual assertions sufficient to allow them to defend against the accusations. Even assuming the adequacy of the allegations as pled, the assertions presented in each of the five counts brought against the Choate Defendants fail to state a claim as a matter of law, and the five counts should be dismissed.

## STATEMENT OF FACTS

Plaintiff Sharon Lee is a former employee of Choate Construction Company ("Choate" or "Company") who worked for the Company from April 9, 2007 to April 19, 2017. Dkt. 1, ¶ 14.

Just before Plaintiff left Choate's employment, in December 2016, the Company formed the Choate Construction Company Employee Stock Ownership Plan (the "ESOP" or "Plan"), establishing retirement accounts for the Choate employees and fully investing those accounts in the stock of the Company. Dkt. 1, ¶¶ 1–2. To form the ESOP, the then-shareholders of Choate stock sold their shares to the Plan. Dkt. 1, ¶¶ 4–5. The purchase price for the Choate stock was $198 million, which the Plan, having no assets of its own, funded by obtaining two loans totaling the $198 million. Dkt. 1, ¶¶ 4, 45. The third-party trustee of the ESOP—Argent Trust Company ("Argent")—secured an independent valuation to determine that the purchase price of the Choate stock did not exceed fair market value and ultimately approved all terms of the transaction. Dkt. 1, ¶¶ 6, 15, 17. Despite the Plan undertaking the two loans to fund 100% of the purchase price of the stock, less than one month after the transaction, the Company's stock was valued at $64.8 million even though the outstanding debt from the transaction remained outstanding. Dkt. 1, ¶ 4.

At the time Plaintiff left the Company's employment in April 2017, Plaintiff was fully vested in the Plan. Dkt. 1, ¶ 14. There is no allegation in the Complaint that the value that Plaintiff had vested in the ESOP was reduced as a result of the transaction or that there is any concern that Plaintiff will be harmed in the future because of the transaction. *See generally* Dkt.

1.  Plaintiff also asserts nothing in the Complaint about the present value of the stock or about the financial success of the Company today.  *Id.*

Instead, Plaintiff filed this class action lawsuit, complaining about the December 2016 transaction as a whole.  In doing so, with virtually no detail or identification of which defendant purportedly did what, Plaintiff asserts that certain Choate Defendants—specifically the Committee, the Board, and their respective members—acted outside of the scope of their fiduciary duties as set forth in the Trust Agreement (*see* Dkt. 1, ¶¶ 18–29) and that other Choate Defendants are liable simply because they sold their shares to the Plan (*see* Dkt. 1, ¶¶ 30–32).

## ARGUMENT

Plaintiff has brought five counts against the Choate Defendants: Counts II, III, IV, VI, and VII.  Plaintiff lacks standing under Rule 12(b)(1) to bring each of those counts, and, even if she had standing, each count fails to meet Plaintiff's pleading requirements under Rules 8 and 10 and fails to state a claim as a matter of law under Rule 12(b)(6).

## I.  Plaintiff Lacks Standing To Proceed With Her Five Counts Against The Choate Defendants.

Standing is a "threshold question in every federal case."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  As the party invoking federal jurisdiction, Plaintiff has the burden of proving to this Court that the Court has jurisdiction over each of her claims.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends for Ferrell Parkway, LLC v. Stasko,* 282 F.3d 315, 320 (4th Cir. 2002) ("The plaintiff bears the burden of establishing injury, traceability, and redressability because it is the party seeking to invoke federal jurisdiction.").

To meet her burden on standing, Plaintiff must show that (1) she "suffered an 'injury in fact' that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it

is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan*, 504 U.S. at 560–61).

The standard is no different in an ERISA case. It is well-established that participants suing under ERISA must establish both statutory and constitutional standing. *See David v. Alphin,* 704 F.3d 327, 333 (4th Cir. 2013) (holding that plaintiff failed to establish constitutional standing because deprivations of plaintiff's statutory rights under ERISA, arising out of alleged breaches of fiduciary duty and prohibited transactions, do not constitute an injury-in-fact by themselves).

Within the context of ERISA, to have constitutional standing, a participant must show not only a harm to the plan but also a cognizable harm to herself. *See David v. Alphin*, 817 F. Supp. 2d 764, 781 (W.D.N.C. 2011) ("[P]articipants suing under ERISA have the burden of showing that they personally suffered some actual or threatened injury as a result of the allegedly unlawful conduct complained of . . . ."), *aff'd,* 704 F.3d 327 (4th Cir. 2013); *accord Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015) ("An ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan participant.").

Specifically, for Plan participants purporting to bring claims under ERISA for an alleged loss in the value of the Plan, federal courts have held that the participants must set forth sufficient factual allegations to plausibly allege that the ESOP beneficiaries suffered a net loss in the investment value of their interest in the ESOP that is traceable to the trustee's challenged actions in order to establish standing. *See Brown v. Medtronic, Inc.*, 628 F.3d 451, 455 (8th Cir. 2010) (holding that, where an ESOP participant alleged that the trustee breached his fiduciary

duties by imprudently investing in the employer's stock, the participant "must allege a net loss in investment value that is fairly traceable to the defendants' challenged actions" to establish constitutional standing and dismissing the claims for the failure to make such a showing); *Taylor v. KeyCorp*, 680 F.3d 609, 615 (6th Cir. 2012) (dismissing ERISA beneficiary's claim for failing to allege an injury-in-fact for standing purposes because "an inflated purchase price will not itself constitute economic loss. Rather, stock must be purchased at an inflated price and sold at a loss for an economic injury to occur.") (internal citations and quotations omitted); *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.").

Here, contrary to what Plaintiff was required to claim to demonstrate standing, all of the harms Plaintiff asserts in her Complaint are purported harms to the Plan or the class as a whole; she alleges no individualized harm. *See* Dkt. 1. Nowhere in the Complaint does Plaintiff allege that she personally suffered some actual or threatened injury as a result of the allegedly unlawful conduct. *Id.* At best, Plaintiff infers that she has been injured because the value of her vested account would have been higher if there was a transaction on different terms or if the stock value of the Company did not drop immediately following the 2016 leveraged transaction. Both of those requested inferences, however, are unwarranted.

There are no allegations in the Complaint that there was a possible transaction on different terms or that the Selling Shareholders would have accepted terms different from the ones that were negotiated in the final 2016 transaction. *See generally* Dkt. 1.

There are also no factual allegations that warrant the requested inference that the transaction was improper simply because, after the Company assumed debt of $198 million to

fund the transaction, the Company's stock was valued at $64.8 million one month later. Dkt. 1,
¶ 4. Contrary to accepting the inference that Plaintiff asks this Court to draw, her claim of injury
is actually implausible because there is an "obvious alternative explanation"—specifically that
the transaction was not flawed given less than one month after the deal closing, the stock was
valued at $64.8 million (rather than at $0, as might have been expected given that 100% of the
$198 million purchase price had been borrowed by the ESOP just weeks earlier). *See Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 567 (2007).

Leveraged transactions are very similar to mortgaged houses. When one purchases a
house with a mortgage, the fact that the owner/borrower's equity in the house is low immediately
after assuming the loan or mortgage does not mean that the house has no value; it only means
that the value is encumbered by debt until that mortgage is paid off.[3]

A review of the publicly filed 2016 Form 5500, which Plaintiff cites to in her Complaint,
makes clear that Plaintiff's assertion of an injury is implausible.[4] The Form 5500 reveals that the
stock purchased by the ESOP was valued at $64.8 million as of December 31, 2016 and that the
debt taken on by the ESOP to purchase the shares was $198 million, the total amount of the
transaction. Exhibit 1, Schedule H, Line 1(d)(1), 1(d)(i).[5] In other words, the purchase was
100% leveraged. *Id.* at Schedule H, Line 4(j) (Schedule of Reportable Transactions).

---

[3] The Court may take judicial notice of a fact "that is not subject to reasonable dispute because it … can
be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."
Fed. R. Evid. 201; *see also Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004) (taking judicial notice of
voting-age population statistics from a Virginia state government website). The Court can therefore take
judicial notice of the effects of a mortgage on a home in relation to the home's equity and value, found on
government websites such as https://www.consumerfinance.gov/ask-cfpb/how-does-paying-down-a-
mortgage-work-en-1943/.
[4] The Court may consider documents attached to the Motion to Dismiss that "are integral to and explicitly
relied on in" the Complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th
Cir. 2004). Thus, the Court may consider the Form 5500 and Trust Agreement, as both are integral to and
repeatedly relied upon in the Complaint. *See* Dkt. 1, ¶¶ 22–27, 41, 57, 59, 90, 130, 135, 138.
[5] The cost of the shares purchased by the ESOP was $198 million. Exhibit 1, Schedule H, Line 4(i)
(Schedule of Assets).

Although the audited financials, which were attached to and incorporated into the Form 5500, detail an "Investment Loss" of $133.2 million, the ESOP paid $198 million for the shares only one month earlier. Dkt. 1. Using the mortgage analogy, if the stock was actually worth $198 million on the date of purchase, one would expect that this "Investment Loss" number would be $198 million, netting out to a post-transaction value for the acquired shares of zero dollars.

Here, the ESOP paid $198 million for its "house" using entirely borrowed funds, but, within a month after the sale, while still subject to the entire $198 million acquisition indebtedness, the "house" had positive equity value of $64.8 million. Thus, either the value of the shares increased by nearly 33% in less than one month, or the ESOP actually significantly *underpaid* for the stock it purchased such that it paid $198 million for shares with a value closer to $262.8 million. This "obvious alternative explanation" makes clear that Plaintiff's Complaint based on the inverse inference of a purported injury cannot be sustained to satisfy her standing obligations. *Twombly*, 550 U.S. at 567.[6]

Given that Plaintiff has not pled anything plausible from which to conclude that she has suffered an injury, she lacks standing to pursue her claims, and the Choate Defendants request that this action be dismissed under Rule 12(b)(1).

---

[6] Plaintiff also lacks standing on Count III as to the Selling Shareholders specifically because the equitable relief she claims to seek under Section 502(a)(3) is, in truth, monetary relief available at law. *See infra* Section (C)(2). Plaintiff must demonstrate standing "separately for each form of relief sought." *Laidlaw*, 528 U.S. at 185; *see ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 301 (3d Cir. 2012) ("[A] plaintiff may have standing to pursue damages, but lack standing to seek injunctive relief."). To have standing, Plaintiff must show it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Yet, Plaintiff cannot recover monetary damages under a theory of general personal liability against non-fiduciaries under Section 502(a)(3). *Mertens v. Hewitt Associates*, 508 U.S. 248, 255–58 (1993). Because her claim cannot be redressed by a favorable decision, Plaintiff lacks standing to assert a claim under Section 502(a)(3).

## II.    Plaintiff Has Failed To Comply With Her Pleading Requirements.

In addition to the fact that Plaintiff lacks standing, Plaintiff has failed to present her claims adequately, again necessitating dismissal of the action against the Choate Defendants.[7]

A complainant is required to set forth "sufficient facts to state a claim that is plausible on its face" and "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015).   "A plaintiff's complaint must discuss each defendant's actions and the resulting injury to the plaintiff," stating facts that provide each defendant sufficient notice of the harms it allegedly caused.   *Foster v. Dep't of Health & Human Servs.*, No. 1:98CV00902, 2000 WL 33128817, at *1 (M.D.N.C. Dec. 22, 2000).   In assessing the allegations, the Court must determine whether the Complaint "plausibly suggest[s] an entitlement to relief" such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.   *Lemons v. Taylor*, No. 5:15-CT-03234-D, 2017 WL 3301216, at *1 (E.D.N.C. June 21, 2017), *report and recommendation adopted*, No. 5:15-CT-3234-D, 2017 WL 3298469 (E.D.N.C. Aug. 2, 2017) (citation omitted).

Rule 10 mandates that "each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense" if "doing so would promote clarity." Fed. R. Civ. P. 10(b).   Rule 10 expressly requires separate counts be presented "with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading." *Fogner v. Am. Home Mortg. Servicing, Inc.*, No. 1:11-CV-1073, 2012 WL 12892725, at *2 (M.D.N.C. Feb. 24, 2012) (citations omitted).   And Rule 8(a)(2) requires that every pleading stating a claim for relief must contain a "short and plain statement of the claim

---

[7] Dismissal rather than leave to amend under Rule 12(e) is warranted here.  *See Robinson v. Equifax*, No. 4:10-CV-84-BO, 2011 WL 285232 (E.D.N.C. Jan. 26, 2011) (granting one defendant's Rule 12(b)(6) motion for failure to meet pleading requirements where complaint offers conclusory, vague, and nonspecific allegations against the defendant).

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rationale for those requirements is that, "unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996).

Failure to comply with these requirements, such that the issues about which a defendant is asked to litigate against are not clearly articulated, warrants dismissal of a complaint. *See, e.g.*, *Davis v. Perdue*, No. 5:12-CV-00593-FL, 2012 WL 12542101, at *1 (E.D.N.C. Sept. 13, 2012), *report and recommendation adopted*, No. 5:12-CV-00593-FL, 2013 WL 1681255 (E.D.N.C. Apr. 17, 2013), *aff'd*, 533 F. App'x 348 (4th Cir. 2013) (dismissing complaint where plaintiff's allegations were "conclusory, rambling and disjointed" and plaintiff named multiple defendants without clarity as to which allegations were made with regard to each defendant); *Bray v. Fresenius Med. Care Aktiengesellschaft Inc.*, No. 06-c-50197, 2007 WL 7366260, at *10 (N.D. Ill. Aug. 30, 2007) (dismissing complaint where plaintiffs "failed to separate different occurrences pursuant to Rule 10(b)"); *Veltmann v. Walpole Pharm., Inc.*, 928 F. Supp. 1161, 1163–64 (M.D. Fla. 1996) (dismissing complaint because it violated Rule 10(b) by making general allegations against all of the named defendants and made it "virtually impossible to ascertain . . . which defendant committed which alleged act").

Plaintiff's Complaint also fails to provide each defendant adequate notice of the specific claims against them. To satisfy Rule 8(a), a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Where "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief" and must

be dismissed.  *Ashcroft v. Iqbal*, 556 U.S. 662, 682–83 (2009) (internal quotations omitted) (holding that complaint failed to state sufficient facts against the named defendants to state a plausible claim against them); *see, e.g.*, *In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871, 896 (W.D.N.C. 2001) (dismissing complaint where plaintiff lumped all defendants into the same factual allegation that "the Defendants were privy to . . . the information concerning the company and its business, operations and business prospects," and failed to plead what each defendant knew and when in the form of factual allegations); *Fogner*, 2012 WL 12892725, at *2 (dismissing complaint where the complaint was "so vague and ambiguous as to its legal theories that the Defendant cannot reasonably prepare a response to it").

In violation of Rules 8(a)(2) and 10(b), Plaintiff fails to identify which defendant committed the purported violation and, in multiple instances, fails to identify who the defendants are or what claim is brought against them.  Specifically:

- In Count II, Plaintiff asserts unnamed Committee Defendants committed multiple separate violations of Section 406(a)(1)(D) by directing Argent as the independent trustee of the ESOP to repay principal and interest on the loans used to leverage the transaction but says nothing further about why that assertion would constitute a breach of any duty under the Trust Agreement, what direction was provided that constituted a prohibited action, or who specifically performed the prohibited action or was otherwise involved.[8]

- In Count III, Plaintiff muddles together allegations of purported violations of three different subsections of Section 406(a)(1) against William Millard Choate and fifteen unnamed "Selling Shareholders," asserting those individuals had knowledge of the

---

[8] The Committee is not a legally recognized defendant that can be sued.  *See infra* Section III(a)(i).

alleged prohibited transaction and the loans to fund the transaction but asserting nothing that purportedly caused either transaction to be unlawful or anything more about which of these sixteen defendants purportedly had knowledge of those specific circumstances.

- In Count IV, Plaintiff alleges all Board Defendants and Committee Defendants who sold stock to the ESOP violated Section 406(b)(1) and (3) by selling their stock. Despite making this broad conclusion, Plaintiff fails to allege who of the Board Defendants or Committee Defendants had a specific fiduciary duty that was breached or how that individual breached that specific duty.

- In Count VI, Plaintiff alleges that all Board Defendants failed to monitor Argent to ensure that the ESOP paid no more than fair market value for Company stock in the 2016 transaction and to ensure that Argent took remedial action after the 2016 transaction. However, Plaintiff fails to indicate which Board member had a specific fiduciary duty that was breached or how that individual breached the specific duty.

- In Count VII, Plaintiff alleges that the indemnification provision in the Trust Agreement should be void and that, to the extent any Board Defendant agreed to the indemnification of Argent, that defendant breached his or her fiduciary duties under ERISA. Yet, as with the prior counts, Plaintiff fails to indicate which Board member had a specific fiduciary duty that was breached or how that individual breached the specific duty.

Given that Plaintiff does not identify what specific individual breached an alleged duty or the specific violation for each cause of action, the Choate Defendants cannot reasonably frame an answer or appropriately raise affirmative defenses, and the Complaint should be dismissed.

*See, e.g., Elliott v. Solis*, 117CV01214LJOSAB, 2017 WL 4811747, at *8 (E.D. Cal. Oct. 24, 2017), *report and recommendation adopted*, 2017 WL 5292624 (E.D. Cal. Nov. 13, 2017).

## III. Even If Not Dismissed For The Reasons Above, Each Count Against The Choate Defendants Should Be Dismissed For Failure To State A Claim Under Rule 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a claim should be dismissed when a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the allegations contained within the complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) ("[W]e are not so bound by the plaintiff's legal conclusions, since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint.").

The purpose of a Rule 12(b)(6) motion "is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). Since a Rule 12(b)(6) motion tests the legal sufficiency of a plaintiff's claims, the court does not have to accept as true the legal conclusions a plaintiff draws from her factual allegations. *Id.* Further, the court does not need to accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Clausell v. Bayer Corp.*, No. 5:15-CV-50-BO, 2015 WL 5146704, at *2 (E.D.N.C. Sept. 1, 2015) (citations omitted) (dismissing claims under ERISA where the court had to "piec[e] together" the complaint and plaintiff's responses to defendants' motion to dismiss and where the allegations were directed at a third party not named in the lawsuit). Another purpose of a Rule 12(b)(6) motion "is to address potentially legally meritless claims efficiently, prior to expensive and time-consuming discovery." *Astrop v. Eckerd Corp.*, No. CIVA 3:09CV681, 2010 WL 1779992, at *2 (E.D. Va. Apr. 29, 2010), *aff'd*, 397 F. App'x 881 (4th Cir. 2010).

In the ERISA context, the Supreme Court has endorsed the application of stringent pleading standards to protect plan fiduciaries from meritless claims that rely on hindsight to second-guess fiduciary decisions. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (noting that on a motion to dismiss for failure to state a claim regarding a fiduciary's duty under ERISA, careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently is warranted to "weed[] out meritless claims").

Plaintiff has failed to meet her pleading hurdles here. Thus, even if the Court does not dismiss the entire Complaint for the reasons stated above, each count brought against one of the Choate Defendants fails as a matter of law and should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

### a. Count II Fails To State A Claim Upon Which Relief Can Be Granted.

In Count II, Plaintiff alleges that the Committee Defendants directed Argent as to the amount of payment from the Plan to repay principal and/or interest to the Selling Shareholders in connection with various notes and/or to repay principal and interest to the Company in connection with the loans and that each of those payments constitutes a separate violation of ERISA § 406(a)(1)(D). Dkt. 1, ¶¶ 85–92. However, Defendant Choate Construction Company ESOP Committee and its various unnamed members are not persons capable of being sued under ERISA for the actions being challenged by Plaintiff.

Under ERISA, a committee can be considered a "person" and may be a proper defendant-fiduciary under 29 U.S.C. § 1102(a)(2) when the committee is named as a fiduciary in the plan documents. *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 370–71 (4th Cir. 2014). The purpose of this requirement is to ensure that "responsibility for managing and operating the [p]lan—and liability for mismanagement—are focused with a degree of certainty." *Birmingham*

*v. SoGen–Swiss Int'l Corp. Ret. Plan*, 718 F.2d 515, 522 (2d Cir. 1983). The fact that a person or entity is named in the Trust Agreement does not end the inquiry however.

An ERISA "fiduciary" is one with discretionary responsibility or discretionary authority in the administration of an employee benefit plan or discretionary control over the management and disposition of its assets. 29 U.S.C. § 1002(21)(A)(i), (iii). A person is a fiduciary only "to the extent" that that person exercises discretionary management control over the plan and its assets. *Id.* Thus, a person may be an ERISA fiduciary for some purposes but not for others. "Fiduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions." *McGath v. Auto-Body N. Shore, Inc.*, 7 F.3d 665, 669 (7th Cir. 1993). Therefore, in assessing whether a person can be held liable for a breach of fiduciary duty, a court must ask whether a person is a fiduciary with respect to the particular activity at issue. *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992). And, even if a committee is a fiduciary for limited persons, the individual members (unnamed but included as defendants) are not automatically fiduciaries but attain fiduciary status only when they make decisions about plan assets or plan management. *Briscoe v. Fine,* 444 F.3d 478, 487 (6th Cir. 2006).

Here, Plaintiff seeks to hold the Committee Defendants liable for directing the third-party trustee to make various payments. Although the Trust Agreement does name the Committee as a fiduciary, it limits the specific purposes for which the Committee is considered a fiduciary in light of the matter in which its roles are defined. With respect to Plaintiff's allegations in Count II, the Trust Agreement is clear that the Committee Defendants *did not* have discretion or authority to direct payments and thus cannot be considered as named fiduciaries under the Plan for that purpose.

Plaintiff relies exclusively on the following provision of the Trust Agreement.

**Named Fiduciaries.**
The Committee and the Board each will be a "named fiduciary" within the meaning of ERISA Section 402(a)(2) with respect to this Trust, and each Participant and Beneficiary will be a "named fiduciary" within the meaning of this section of ERISA with respect to the exercise of investment directions relating to the acquisition or disposition of Company Stock or other assets, if applicable, under the terms of this Trust Agreement, including the exercise of voting rights of the Company Stock credited to the Participant's or Beneficiary's Account.

Exhibit 2, Section 2.8. However, that is not the critical passage.

The material portion of the Trust Agreement reads:

**Investment of Cash.**
If an Employer's contribution made pursuant to the Plan or any distribution or dividends paid to the Trust for any Plan Year are in cash, the Trustee <u>shall use</u> such cash (a) to make any scheduled amortization payment on an outstanding Loan and, if any cash remains thereafter (b) as provided under Section 2.3(o).

Exhibit 2, § 3.1 (emphasis added). As Section 3.1 makes clear, it is the Trustee—not the Committee Defendants—who is required to use Company contributions and dividends to repay the ESOP loan. *Id.* There is no direction to be provided from the Committee for the application of those funds. *Id.*

Given that the Committee is not charged with providing the Trustee with any direction as to the repayment of the transaction indebtedness incurred in connection with the stock purchase transaction, the Committee has no responsibility for managing the assets of the Plan in this manner. Accordingly, given the limitations of *Birmingham* and *Tatum*, the Committee Defendants cannot be held liable for roles they did not have under the Trust Agreement, and Plaintiff's prohibited transaction under Count II should be dismissed.

**b. Count III Fails To State A Claim Upon Which Relief Can Be Granted Against The Selling Shareholders.**

In Count III, Plaintiff cites three different purported statutory violations against the Selling Shareholders under various subsections of Section 406(a)(1) for purportedly engaging in a prohibited transaction because they had knowledge of the transaction and the loans. Despite

making these sweeping allegations of unlawful activity, nowhere does Plaintiff assert (i) that William Millard Choate and "the other Selling Shareholders" were fiduciaries who can be held liable under Section 406(a)(i), (ii) that William Millard Choate and "the other Selling Shareholders" had actual or constructive knowledge of any circumstances that made the transaction or the loans unlawful such that they could be held liable as non-fiduciaries under Section 406(a)(i), or (iii) the "appropriate equitable relief" as is required to state a claim against the "Selling Shareholders" as non-fiduciaries. As a result, Count III should be dismissed for failure to state a claim.

A plain reading of the statute makes clear that Section 406(a) exclusively applies to fiduciaries. It states in pertinent part:

> Except as provided in Section 1108 of this title: (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect — (A) sale or exchange, or leasing, of any property between the plan and a party in interest; (B) lending of money or other extension of credit between the plan and a party in interest;. . . [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan . . . .

29 U.S.C. § 1106(a)(1). Section 406(a)(1) prohibits a fiduciary only from causing a plan to engage in the conduct set forth therein, and yet Plaintiff fails to allege that any of the Selling Shareholders were fiduciaries to the Plan or "caused" the Plan to do anything, instead asserting that they are liable as "parties-in-interest." Dkt. 1, ¶¶ 99, 102, 107.

Although the plain language of Section 406 refers only to fiduciaries, the Supreme Court has recognized that a non-fiduciary may be liable under ERISA's Section 502(a)(3), which is one of ERISA's remedial provisions. Specifically, in *Harris Trust and Savings Bank*, the Supreme Court determined that the language of Section 502(a)(3) authorized a claim for "appropriate equitable relief" against a non-fiduciary party-in-interest to a transaction prohibited under

Section 406(a) of ERISA. 530 U.S. 238, 250–53 (2000). In so ruling, however, the Supreme Court made clear that such claims against non-fiduciaries under Section 502(a)(3) must assert that the non-fiduciary party-in-interest had "actual or constructive knowledge of the circumstances that rendered the transaction unlawful" and that the remedy plaintiff seeks is equitable. *Id.* at 251; *see also Mertens v. Hewitt Associates*, 508 U.S. 248, 255–58 (1993). Plaintiff fails to meet both of these requirements.

Plaintiff does not, and cannot, allege that any of the Selling Shareholders had actual or constructive knowledge of circumstances that rendered the transaction unlawful. Instead, Plaintiff simply hopes to gloss over this fatal omission by alleging that the "Selling Shareholders" knowingly participated in the sale because they were involved in some negotiations and signed the Sale Agreement. Dkt. 1, ¶ 101. Plaintiff asserts that, because they signed the loan agreements, the Selling Shareholders knowingly participated in the loan. Dkt. 1, ¶ 105. Assuming the accuracy of the allegation that the Selling Shareholders knowingly participated in the loan, this is in no way the same as having actual or constructive knowledge of circumstances that may render the transaction unlawful, such as overpayment. Plaintiff's attempt to skirt the knowledge requirement fails to satisfy her pleading obligations.

In addition to these omissions, Plaintiff's Count III also fails because Plaintiff has not articulated an equitable remedy that is typically available in equity. *Great-W. Life & Annuity Co. v. Knudson*, 534 U.S. 204, 218 (2002) (recognizing that failing to plead an appropriate equitable remedy is fatal to the claim). The nomenclature used by Plaintiff does not determine whether relief is equitable; rather, courts look to the basis of the relief being sought. *See id.* ("[W]hether [restitution] is legal or equitable in a particular case (and hence whether it is authorized by § 502(a)(3)) remains dependent on the nature of the relief sought.").

Although Plaintiff claims that she is seeking equitable relief in Count III and her Prayer for Relief, Plaintiff's verbiage fails to cure the fact that the remedies she seeks are for money damages under theories of general personal liability against the Selling Shareholders—not traditional forms of equitable relief. *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 364 (4th Cir. 2015) (holding that the term "appropriate equitable relief," as used in Section 502(a)(3), refers to "those categories of relief that, traditionally speaking (i.e., prior to the merger of law and equity) were typically available in equity.").

For example, a request to impose a constructive trust or equitable lien is a legal, rather than equitable, remedy when a plaintiff seeks to impose personal liability on a defendant and not restore to the plaintiff funds in defendant's possession. *Rego v. Westvaco Corp.*, 319 F.3d 140, 145 (4th Cir. 2003). For restitution in the form of a constructive trust or equitable lien to constitute equitable relief, the plaintiff "must argue that money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* (citing *Great-W. Life & Annuity Ins. Co.*, 534 U.S. at 213–14). If the funds Plaintiff seeks "have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." *Great-W. Life*, 534 U.S. at 213–14.

"For restitution to be an equitable remedy, the plaintiff must identify the particular funds or property within the defendant's possession." *In re U.S. Airways, Inc.*, No. 04-13819-SSM, 2007 WL 2416536, at *11 (Bankr. E.D. Va. Aug. 20, 2007). Plaintiff alleges only that "the ill-gotten gains received as a result of the Sale are traceable to the Selling Shareholders' possession because the Selling Shareholders have maintained accounting and/or tax records regarding the

proceeds received from the Sale." Dkt. 1, ¶ 104. Alleging the Selling Shareholders have records showing that they received certain funds at the time of the 2016 transaction is not the same as alleging the funds are in the Selling Shareholders' possession. In fact, most of the recovery Plaintiff seeks exists in the form of debt owed to the Selling Shareholders—not money in the Selling Shareholders' possession. *See* Dkt. 1, ¶¶ 45–47. Another portion was distributed among eighteen Selling Shareholders and includes funds that may or may not have dissipated or have been converted since. Plaintiff therefore has not sufficiently alleged that the funds are traceable to the Selling Shareholders' possession.

Plaintiff likewise cannot rightfully allege disgorgement or an accounting for profits, as those forms of relief also require a plaintiff to trace money that is "belonging in good conscience to the plaintiff . . . to particular funds or property in the defendant's possession." *Teets v. Great-W. Life & Annuity Ins. Co.*, 921 F.3d 1200, 1224 (10th Cir. 2019).

Thus, Plaintiff's only available claim is "that of a general creditor" for monetary relief, which is a remedy at law, not equity, and her claim under Count III fails on its face. *Great-W. Life*, 534 U.S. at 213–14.

### c. Count IV Fails To State A Claim For Relief Against The Choate Defendants.

In Count IV, Plaintiff asserts that any of the Board Defendants and any of the Committee Defendants who sold stock as part of the 2016 transaction are liable under ERISA Section 406(b). The logic of Plaintiff's Count IV is that the Board Defendants and the Committee Defendants are fiduciaries of the Plan under the terms of the Trust Agreement and that, as fiduciaries, by selling stock to the Plan, those defendants breached their fiduciary duties. This Count is also fatally flawed.

As noted above with respect to Count II, the law is plain that the scope of the fiduciary duties owed by the Board Defendants and Committee Defendants are not unlimited. Instead, the extent of these defendants' roles, duties, and responsibilities are set forth on the face of the Trust Agreement, and one must ask "whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000); *see also Pender*, 788 F.3d at 362.

"Fiduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions." *McGath*, 7 F.3d at 669; *see also Coleman*, 969 F.2d at 61. In addition, even if the Board and the Committee were fiduciaries for limited purposes, the individual members (unnamed but included as defendants) occupy fiduciary status only when, acting on behalf of the Plan, they make decisions about plan assets or plan management. *Briscoe*, 444 F.3d at 487.

The Board Defendants and Committee Defendants, even those at Choate on December 13, 2016,[9] exercised no control over the Plan's decision to purchase Choate stock and to agree to the transaction; as Plaintiff acknowledges, it was Argent, the ESOP's independent trustee, that made that decision. *See, e.g.*, Dkt. 1, ¶¶ 79–80. The terms of the Trust Agreement, however, provide that purchases of Company stock are at the discretion of Argent as trustee and that the trustee cannot pay more than adequate consideration. Exhibit 2, § 2.3(e). There is nothing in the Trust Agreement that provides that the Board Defendants and/or Committee Defendants were responsible for the purchase decision made by the trustee. Plaintiff does not allege a basis for a plausible claim that any Board Defendant or Committee Defendant either controlled in fact, or

---

[9] Plaintiff does not limit her claims to Board or Committee members who were in those roles at the time of the 2016 transaction.

had authority to control under the terms of the ESOP, Argent's independent purchase and investment decisions.

Instead, Plaintiff merely parrots the text of ERISA. Dkt. 1, ¶¶ 109–15. Such conclusory assertions are insufficient. Plaintiff was required to allege a *factual* basis that these defendants exercised discretionary control *on behalf of the ESOP* over the decision about which Plaintiff complains in Count IV: the consideration and approval of the ESOP Transaction on behalf of the ESOP. Courts recognize that dismissal is appropriate if the allegation that a defendant was a fiduciary for a particular activity merely "mimic[s] the language of" ERISA and fails to "provide factual allegations in support of th[e] conclusion." *In Re Calpine Corp. ERISA Litig.*, No. C-03-1685 SBA, 2005 WL 1431506, at *3 (N.D. Cal. Mar. 31, 2005); *see also Crowley ex rel. Corning, Inc, Inv. Plan v. Corning, Inc.*, 234 F. Supp. 2d 222, 230 (W.D.N.Y. 2002) (same). The Court should reach the same conclusion here and dismiss Count IV.

### d. Count VI Fails To State A Claim Against The Board Defendants.

In Count VI, Plaintiff claims that the Board Defendants violated ERISA Sections 404(a)(1)(A) and (B) by purportedly failing to undertake an appropriate investigation before appointing Argent to serve as the trustee and then for failing to remove Argent. Dkt. 1, ¶¶ 126–31. Despite making these conclusory allegations, Plaintiff fails to state any facts about how the monitoring process was lacking.

Plaintiff's allegations, without more, are insufficient to state a claim for a violation of ERISA's Sections 404(a)(l)(A) and (B). *See, e.g.*, *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *19 (N.D. Cal. Aug. 29, 2016) (dismissing monitoring claim because "plaintiffs allege[d] no facts showing how the monitoring process was deficient"). Specifically, in ERISA breach of fiduciary duty cases such as this one, a complaint is to survive a motion to

dismiss only if it contains factual allegations sufficient to create a plausible inference that defendants' monitoring was imprudent. *White v. Chevron Corp.*, 16-CV-0793-PJH, 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017), *aff'd*, 752 Fed. App'x 453 (9th Cir. 2018).

Duty to monitor claims depend on a finding that the defendants breached the underlying duties of prudence and loyalty. *See, e.g.*, *In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 795 (W.D.N.C. 2003) (concluding that claims for failure to avoid conflicts of interest and failure to monitor fiduciaries "do not provide independent grounds for relief, but rather depend upon the establishment of an underlying breach of fiduciary duty cognizable under ERISA"). As a result, a plaintiff needs to allege a threshold showing that the fiduciary failed to review the performance at various intervals, which Plaintiff has failed to allege here. *In re Calpine Corp ERISA Litig.*, 2005 WL 1431506, at *6 (dismissing duty to monitor claim and noting the claim required a threshold showing that the monitoring fiduciary failed to "review the performance of its appointees at reasonable intervals in such a manner as may be reasonably expected to ensure compliance with the terms of the plan and statutory standards").

Plaintiff's assertion that the Board Defendants failed to ensure that Argent caused the ESOP to pay no more than fair market value and took other unspecified actions after the sale is similarly insufficient to state a claim. Dkt. 1, ¶ 131. "ERISA requires a plaintiff to plead some other objective indicia of imprudence." *White*, 2016 WL 4502808, at *17; *see also In re Constellation Energy Grp., Inc.*, 738 F. Supp. 2d 602, 610–11 (D. Md. 2010) (holding plaintiff failed to state a claim for breach of fiduciary duty where there was not an adequate allegation that the defendants did not act prudently in retaining employees' investments in company stock). Before a plaintiff can file suit and initiate a lengthy discovery process, it must have sufficient information on which to base a claim; Plaintiff has failed to articulate that adequate basis here.

### e. Count VII Should Be Dismissed For Failure To State A Claim.

Plaintiff's allegations in Count VII also fail to state a claim given that the indemnification provision is not prohibited by ERISA, and, indeed, such arrangements are commonplace and have been sanctioned by the Department of Labor. Dkt. 1, ¶¶ 132–39.

In general, ERISA Section 410 prohibits "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty" under part 4 of Title I of ERISA. 29 U.S.C. § 1110(a). The Department has interpreted this statutory section to mean that arrangements indemnifying a fiduciary are permissible, so long as the fiduciary remains liable for any loss caused by a breach of that fiduciary's duty. The applicable regulation provides in relevant part:

> The Department of Labor interprets [ERISA section 410(a)] to permit indemnification agreements which do not relieve a fiduciary of responsibility or liability under part 4 of title I. Indemnification provisions which leave the fiduciary fully responsible and liable, but merely permit another party to satisfy any liability incurred by the fiduciary in the same manner as insurance purchased under section 410(b)(3), are therefore not void under section 410(a).
>
> Examples of such indemnification provisions are:
>
> (1) Indemnification of a plan fiduciary by (a) an employer, any of whose employees are covered by the plan, or an affiliate (as defined in section 407(d)(7) of the Act) of such employer, or (b) an employee organization, any of whose members are covered by the plan[.]

29 C.F.R. § 2509.75-4. Thus, the Department's regulation expressly permits indemnification of a plan fiduciary by an employer, any of whose employees are covered by a plan.

The indemnification provision at issue here is thus neither unlawful on its face, nor could it be applied in an unlawful manner, for three reasons. First, the plain terms of the indemnification provision provides:

> **9.1 Indemnification.** Subject to Section 9.3, the Company shall indemnify and hold the Trustee and the Indemnities described in the Proposed Transaction

Engagement Letter which is attached to this Trust Agreement as Exhibit A harmless in accordance with paragraph 6 of such Proposed Transaction Engagement Letter.

**9.2 Limitation.** If a court of competent jurisdiction holds that any payment or award of indemnification pursuant to the terms of this Trust Agreement is not available to any one or more of the Indemnitees described in paragraph 6 of the Proposed Transaction Engagement Letter for any reason, then the Company shall not have any indemnification obligation with respect to any such indemnitees.

**9.3 Additional Agreements.** The Company and the Trustee may enter into additional agreements further delineating the indemnification agreement in this Section 9, which agreements (whether executed prior to or subsequent to the date hereof) shall supersede the provisions this Section 9.

[…]

The COMPANY's agreement to indemnify and hold the Indemnitees harmless shall not apply to any claim, damage, expense, liability, or loss that is attributable to any Indemnitee's breach of fiduciary duty under ERISA, gross negligence, or willful misconduct.

Exhibit 2, §§ 9.1–9.3 and Exhibit A at ¶ 6. The quoted language does precisely what ERISA and the Department's regulation permit; the language provides coverage for the fiduciary in the same manner as insurance. The indemnification provisions do not purport to exculpate a fiduciary from any liability that it might have to the ESOP as a result of any breach of fiduciary duty.

Second, ERISA Section 410 nullifies only provisions indemnifying a fiduciary who has been found liable for a breach of fiduciary duty; it does not preclude indemnification of (or advancement of legal fees to) a fiduciary who is merely accused of a breach. As the Seventh Circuit aptly observed, "[m]aking a faithful fiduciary whole hardly 'relieves' the fiduciary of responsibility or liability. . . . How could anyone take seriously the proposition that ERISA forbids the indemnification of fiduciaries *wrongly* accused of misconduct, when ERISA itself allows a court to award fees to the prevailing side?" *Packer Eng'g, Inc. v. Kratville*, 965 F.2d 174, 175–76 (7th Cir. 1992) (emphasis in original); *see also Leigh v. Engle*, 858 F.2d 361, 369

(7th Cir. 1988) (finding "no statutory or common-law basis for denying fees to a *prevailing* trustee where the trust documents specifically contemplate such reimbursement") (emphasis in original); *Martinez v. Barasch*, No. 01 Civ. 2289 (MBM) (JCF), 2006 WL 435727, at *4–5 (S.D.N.Y. Feb. 22, 2006) (recognizing that "[c]ourts do enforce indemnification agreements . . . where a defendant fiduciary has been vindicated by litigation" and where the agreement "by its terms . . . does not provide any greater degree of indemnification than ERISA permits"); DOL Adv. Ops. 77-66/67A (Sept. 9, 1977) (approving an indemnification structure under which a pension plan agreed to advance a fiduciary's defense costs for the period after a fiduciary had been accused of wrongdoing but before such accusations had been resolved). Thus, the indemnification provision here could only violate ERISA if it indemnified Argent after it was found liable for an ERISA violation.

That cannot happen under the plain terms of this indemnification provision. The provision explicitly provides:

> If a court of competent jurisdiction holds that any payment or award of indemnification pursuant to the terms of this Trust Agreement is not available to any one or more of the Indemnitees described in paragraph 6 of the Proposed Transaction Engagement Letter for any reason, then the Company shall not have any indemnification obligation with respect to any such indemnitees.

Exhibit 2, § 9.3. Nothing in ERISA section 410 prohibits indemnification of fiduciaries who are merely accused of wrongdoing. *See Harris v. GreatBanc Trust Co.*, No. EDCV12 1648-R (DTBx), 2013 WL 1136558, at *3 (C.D. Cal. Mar. 15, 2013) (upholding agreement that prohibited indemnification in the event of a fiduciary breach finding).

Third, like indemnification agreements that corporate officers typically have with their employers, it is now standard practice for sponsors of ESOPs and other ERISA-governed benefit plans to indemnify plan service providers, including trustees, by advancing them attorneys' fees

and expenses to defend ERISA cases.  As one circuit court aptly reasoned, "[v]ery few people would become plan administrators if subjected to such . . . extensive potential costs." *Packer*, 965 F.2d at 176 (quoting *Leigh*, 858 F.2d at 369). Indemnification provisions such as the one at issue here that are designed to comply with ERISA's requirements should be encouraged, not invite litigation. The Court should therefore dismiss Count VII as to the Board Defendants.

## CONCLUSION

Based on the foregoing, the Choate Defendants request that the Court grant their Motion to Dismiss Counts II, III, IV, VI, and VII of the Complaint.

June 6, 2019                                        Respectfully submitted,

*/s/ Lynn E. Calkins*
Lynn E. Calkins
Jessica L. Farmer
**Holland & Knight**
800 17th Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 955-3000
Facsimile: (202) 955-5564
lynn.calkins@hklaw.com
jessica.farmer@hklaw.com

*/s/ Clay C. Wheeler*
Clay C. Wheeler
**Kilpatrick Townsend & Stockton LLP**
4208 Six Forks Road
Suite 1400
Raleigh, NC  27609
Telephone: 919-420-1717
Facsimile: 919-510-6127
Email: cwheeler@kilpatricktownsend.com
Local Civil Rule 83.1(d) Counsel

*Counsel for Choate Defendants*