**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | |
|---|---|
| SHARON LEE on behalf of herself individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>ARGENT TRUST COMPANY, CHOATE CONSTRUCTION COMPANY ESOP COMMITTEE, CHOATE CONSTRUCTION COMPANY BOARD OF DIRECTORS, WILLIAM MILLARD CHOATE, DAVE PRIESTER, MEMBERS OF THE CHOATE CONSTRUCTION COMPANY ESOP COMMITTEE (John and Jane Does 1-10), MEMBERS OF THE CHOATE CONSTRUCTION COMPANY BOARD OF DIRECTORS (John and Jane Does 11-20), and SELLING SHAREHOLDERS (John and Jane Does 21-35)<br><br>        Defendants. | Case No.: 5:19-cv-00156<br><br>**PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   LEGAL AND FACTUAL BACKGROUND ................................................... 3

    A.    Background of ERISA, ESOPs and ESOP Transactions ....................... 3
    B.    Factual Allegations in the Complaint ................................................... 5

        1.    The Choate ESOP ..................................................................... 5
        2.    The Parties ................................................................................ 5
        3.    The Choate ESOP Transaction .................................................. 6

III.  LEGAL STANDARD ...................................................................................... 8

IV.   ARGUMENT .................................................................................................. 10

    A.    Plaintiff Has Article III Standing to Bring this Action ........................ 10

        1.    Plaintiff has suffered individualized financial injury ............... 10
        2.    Plaintiff's financial injury is traceable to Defendants' actions and will be redressed by the relief Plaintiff seeks. ........................... 13
        3.    Plaintiff has Article III standing to pursue injunctive relief. ..... 14
        4.    Defendants' merits arguments are not legitimate jurisdictional challenges and thus are irrelevant to the Article III inquiry. ..... 15

    B.    The Choate Defendants' Rule 8 and Rule 10 Arguments Fail Because ERISA Cases Commonly Plead Related Claims Together ................................. 18

        1.    The Choate Defendants' Rule 10(b) challenge fails because Plaintiff's claims are clearly presented and arise out of the same transaction (Count III) .................................................................. 19
        2.    The Choate Defendants' Rule 8(a)(2) Arguments Are Meritless (Counts II, IV, VI & VII) ......................................................... 21

    C.    Defendants' Rule 12(b)(6) Arguments Fail ........................................ 24

        1.    The Complaint plausibly states prohibited transaction claims under § 1106(a), and Plaintiff is not required to plead the absence of adequate consideration ..................................................................... 24
        2.    The Committee Defendants are fiduciaries with discretion over the ESOP assets and are thus proper defendants for the § 1106(a) claims. ...................................................................................... 28
        3.    Plaintiff alleges a plausible claim against the Selling Shareholders for a prohibited transaction under § 1106(a) ............................... 30

4. Plaintiff has alleged a plausible claim for prohibited self-dealing against the Board and Committee Defendants who sold Choate stock to the ESOP. ................................................................... 34

5. Count V adequately states a claim that Argent breached its fiduciary duties under ERISA. ................................................. 36

6. Count VI adequately states a claim that Board Defendants breached their duty to monitor Argent. ...................................... 42

7. To the extent that the indemnification clause purports to relieve Defendant Argent for breach of fiduciary duty, the clause is invalid. ................................................................................ 44

D. Argent's Rule 12(f) Motion to Strike is Frivolous. ............................... 45

V. CONCLUSION ................................................................................................ 46

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acosta v. Saakvitne,*
    355 F. Supp. 3d 908 (D. Haw. 2019) ...................................................................35

*Allen v. GreatBanc Tr. Co.,*
    835 F.3d 670 (7th Cir. 2016) ......................................................... *passim*

*Anderson v. Cent. Fla. Comm. College,*
    77 F.3d 364 (11th Cir. 1996) ...................................................................18

*Ansley v. Warren,*
    861 F.3d 512 (4th Cir. 2017) ...................................................................10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................8

*Bass v. E.I. DuPont de Nemours & Co.,*
    324 F.3d 761 (4th Cir. 2003) ...................................................................21, 23, 24

*Beck v. Levering,*
    947 F.2d 639 (2d Cir. 1991) ...................................................................15

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................8

*Braden v. Wal-Mart Stores, Inc.,*
    588 F.3d 585 (8th Cir. 2009) ...................................................................4, 9, 44

*Bray v. Fresenius Med. Care Aktiengesellschaft Inc.,*
    No. 06-CV-50197, 2007 WL 7366260 (N.D. Ill. Aug. 30, 2007) ...................................20

*Brincefield on behalf of Morton G. Thalhimer, Inc., Emp. Stock Ownership Plan*
    *v. Studdard,*
    No. 3:17-cv-718-JAG, 2018 WL 6323071 (E.D. Va. Dec. 4, 2018) ...................................11

*Brown v. Medtronic, Inc.,*
    628 F.3d 451 (8th Cir. 2010) ...................................................................12, 13

*Brundle v. Wilmington Trust, N.A.,*
    919 F.3d 763 (4th Cir. 2019) ......................................................... *passim*

*In re Calpine Corp. ERISA Litigation,*
    No. C-03-1685, 2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) ...................................43, 44

*Chao v. Hall Holding Co., Inc.*,
  285 F.3d 415 (6th Cir. 2002) ..........................................................................4, 38

*Chao v. Rivendell Woods, Inc.*,
  415 F.3d 342 (4th Cir. 2005) ...................................................................................21

*Chesemore v. Alliance Holdings, Inc.*,
  770 F. Supp. 2d 950 (W.D. Wis. 2011) ..........................................................25, 33

*City of Waukesha v. EPA*,
  320 F.3d 228 (D.C. Cir. 2003) .................................................................................16

*Coleman v. Maryland Court of Appeals*,
  626 F.3d 187 (4th Cir. 2010) ....................................................................................9

*In re Constellation Energy Grp., Inc.*,
  738 F. Supp. 2d 602 (D. Md. 2010) .........................................................................42

*Cooksey v. Futrell*,
  721 F.3d 226 (4th Cir. 2013) ...............................................................................8, 15

*David v. Alphin*,
  817 F. Supp. 2d 764 (W.D.N.C. 2011), *aff'd*, 704 F.3d 327 (4th Cir. 2013).............11, 12

*Davis v. Perdue*,
  No. 5:12-CV-00593-FL, 2012 WL 12542101 (E.D.N.C. Sept. 13, 2012) .............................20

*Donovan v. Bierwirth*,
  680 F.2d 263 (2d Cir.1982)................................................................................38, 41

*Donovan v. Cunningham*,
  716 F.2d 1455 (5th Cir. 1983) ...................................................................................4

*Donovan v. Mazzola*,
  716 F.2d 1226 (9th Cir. 1984) .................................................................................38

*In re Duke Energy ERISA Litig.*,
  281 F. Supp. 2d 786 (W.D.N.C. 2003) ....................................................................43

*Elmore v. Cone Mills Corp.*,
  23 F.3d 855 (4th Cir. 1994) ................................................................................3, 25

*Erickson v. Pardus*,
  551 U.S. 89 (2007).....................................................................................................9

*Eyler v. C.I.R.*,
  88 F.3d 445 (7th Cir. 1996) .................................................................4, 17, 27, 28

v

*Feinberg v. T. Rowe Price Grp., Inc.*,
No. CV MJG-17-0427, 2018 WL 3970470 (D. Md. Aug. 20, 2018) ....................................42

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) .................................................................................................9, 36

*Frost v. Dorsch*,
No. 92 C 4025, 1992 WL 390743 (N.D. Ill. Dec. 18, 1992) ...................................20

*Gomez v. Toledo*,
446 U.S. 635 (1980) .................................................................................................24

*Graff v. Prime Retail, Inc.*,
172 F. Supp. 2d 721 (D. Md. 2001) .........................................................................45

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) .................................................................................................32

*Griggs v. E.I. duPont de Nemours & Co.*,
385 F.3d 440 (4th Cir. 2004) ...................................................................................32

*Grindstaff v. Green*,
946 F. Supp. 540 (E.D. Tenn. 1996) ........................................................................41

*Guidry v. Wilmington Trust, N.A.*,
No. 1:17-cv-00250-RGA (D. Del.), ECF Nos. 14, 15 .............................................26

*Guthrie v. United States*,
522 F. App'x 653 (11th Cir. 2013) ..........................................................................21

*Hall v. Tyco Int'l, Ltd.*,
223 F.R.D. 219 (M.D.N.C. 2004) ............................................................................29

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
530 U.S. 238 (2000) ...................................................................................3, 24, 31

*Heritage Equity Grp. 401(k) Sav. Plan v. Crosslin Supply Co.*,
638 F. Supp. 2d 869 (M.D. Tenn. 2009) .............................................................31, 32

*Howard v. Shay*,
100 F.3d 1484 (9th Cir. 1996) .............................................................4, 35, 36, 38

*Hurtado v. Rainbow Disposal Co.*,
No. 8:17-cv-01605-JLS-DFM, 2018 WL 3372752 (C.D. Cal. July 9, 2018) .........................25

*Innis v. Bankers Trust Company of South Dakota*,
No. 4:16-cv-00650-RGE-SBJ, 2017 WL 4876240 (S.D. Iowa Oct. 13, 2017) .....10, 11, 13, 14

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) ..........................................................................30, 44

*Keach v. U.S. Tr. Co.*,
    419 F.3d 626 (7th Cir. 2005) ...................................................................................4

*Kerns v. United States*,
    585 F.3d 187 (4th Cir. 2009) ....................................................................8, 16, 18

*Krueger v. Ameriprise Fin., Inc.*,
    No. 11-CV-02781, 2012 WL 5873825 (D. Minn. Nov. 20, 2012) ........................42

*Kruger v. Novant Health, Inc.*,
    131 F. Supp. 3d 470 (M.D.N.C. 2015) ...................................................................9

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008) ........................................................................................12, 13

*Lorenz v. Safeway Inc.*,
    2017 WL 952883 (N.D. Cal. Mar. 13 2017) ........................................................10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .............................................................................................10

*Marseglia v. JP Morgan Chase Bank*,
    750 F. Supp. 2d 1171 (S.D. Cal. 2010) ................................................................23

*Martin v. Feilen*,
    965 F.2d 660 (8th Cir. 1992) ..........................................................................15, 38

*McNair v. Lend Lease Trucks, Inc.*,
    95 F.3d 325 (4th Cir. 1996) ...................................................................................8

*McRae v. Rogosin Converters, Inc.*,
    301 F. Supp. 2d 471 (M.D.N.C. 2004) .................................................................29

*In re Mut. Funds Inv. Litig.*,
    529 F.3d 207 (4th Cir. 2008) ...............................................................................14

*Neil v. Zell*,
    767 F. Supp. 2d 933 (N.D. Ill. 2011) ...................................................................11

*Parker v. District of Columbia*,
    478 F.3d 370 (D.C. Cir. 2007) .............................................................................16

*People for the Ethical Treatment of Animals, Inc. v. Stein*,
    737 F. App'x 122 (4th Cir. 2018) .........................................................................16

vii

*Perez v. Bruister*,
823 F.3d 250 (5th Cir. 2016) ...............................................................18, 26, 41

*Reetz v. Lowe's Cos.*,
No. 5:18-CV-075-RJC-DCK, 2019 WL 2489758 (W.D.N.C. Feb. 14, 2019) .......................44

*Schiff v. Kennedy*,
691 F.2d 196 (4th Cir.1982) ...............................................................22

*Schoene v. McElroy Coal Co.*,
No. 5:13-CV-95, 2013 WL 12137313 (N.D.W. Va. Aug. 8, 2013) ..................................19, 20

*Shaver v. Operating Eng'rs Local 428 Pension Tr. Fund*,
332 F.3d 1198 (9th Cir. 2003) ...............................................................15

*Shaw v. Delta Air Lines, Inc.*,
463 U.S. 85 (1983)...............................................................3

*Stanton v. Couturier*,
Nos. 2:05-cv-02046-RRB-KJM, 2:07-cv-01208-RRB-JFM, 2007 WL
4570699 (E.D. Cal. Dec. 26, 2007)...............................................................33

*SunTrust Mortg., Inc. v. First Residential Mortg. Servs. Corp.*,
No. 3:12CV162, 2012 WL 7062086 (E.D. Va. Sept. 11, 2012) .......................................18, 20

*Swain v. Wilmington Trust, N.A.*,
No. 17-71-RGA-MPT, 2018 WL 934598 (D. Del. Feb. 16, 2018) ............................10, 11, 25

*Swierkiewicz v. Sorema N. A.*,
534 U.S. 506 (2002)...............................................................21, 33

*Swift Beef Co. v. Alex Lee, Inc.*,
No. 5:17-CV-176, 2018 WL 792070 (W.D.N.C. Feb. 8, 2018) .............................................45

*Tatum v. RJR Pension Investment Committee*,
761 F.3d 346 (4th Cir. 2014) ...............................................................28

*Taylor v. KeyCorp*,
680 F.3d 609 (6th Cir. 2012) ...............................................................12

*Teets v. Great-West Life & Annuity Ins. Co.*,
921 F.3d 1200 (10th Cir. 2019) ...............................................................33, 34

*Valentine v. Roanoke Cty. Police Dep't*,
No. 7:10-CV-00429, 2011 WL 3273871 (W.D. Va. July 29, 2011) ................................22, 23

*Varity Corp. v. Howe*,
516 U.S. 489 (1996)...............................................................3

*Veltmann v. Walpole Pharmacy, Inc.*,
　928 F. Supp. 1161 (M.D. Fla. 1996) ..................................................................21

*Walton v. Greensville Corr. Ctr.*,
　No. 3:14CV628 RCY, 2015 WL 2452451 (E.D. Va. May 21, 2015) ....................18

*Warth v. Seldin*,
　422 U.S. 490 (1975) ...........................................................................................16

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
　252 F.3d 316 (4th Cir. 2001) ..............................................................................45

*Weiland v. Palm Beach Cty. Sheriff's Office*,
　792 F.3d 1313 (11th Cir. 2015) ....................................................................18, 21

*White v. Chevron Corp.*,
　No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ..................44

*Wildman v. Am. Century Servs., LLC*,
　237 F. Supp. 3d 902 (W.D. Mo. 2017) ...............................................................32

*Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc.*,
　335 F. Supp. 2d 636 (M.D.N.C. 2004) .................................................................8

*Wilmington Shipping Co. v. New Eng. Life Ins. Co.*,
　496 F.3d 326 (4th Cir. 2007) ..............................................................................29

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
　780 F.3d 597 (4th Cir. 2015) ..............................................................................26

**STATUTES**

29 U.S.C. § 1002(21) ..................................................................................29, 34

29 U.S.C. § 1002(34) ....................................................................................5, 13

29 U.S.C. § 1002(35) .........................................................................................5

29 U.S.C. § 1102 .............................................................................................28

29 U.S.C. § 1104 ...........................................................................................3, 4

29 U.S.C. § 1106(a) ................................................................................... *passim*

29 U.S.C. § 1106(b) ....................................................................................34, 36

29 U.S.C. § 1108 ..................................................................................... *passim*

29 U.S.C. § 1110...............................................................................................44

ix

29 U.S.C. § 1132(a)(2) ................................................................................... 30

29 U.S.C. § 1132(a)(3) ........................................................................ 30, 31, 34

**OTHER AUTHORITIES**

120 Cong. Rec. 29957 (1974) ............................................................................ 3

5A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE (2d ed. 1990) .............................................................................................................. 45

5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE (4th ed. 2019) ........................................................................... 19

Fed. R. Civ. P. 8(a)(2) .................................................................... 8, 21, 22, 23

Fed. R. Civ. P. 10(b) ...................................................................... 18, 19, 20, 21

Fed. R. Civ. P. 12(b)(1) ....................................................................... 2, 8, 16, 18

Fed. R. Civ. P. 12(b)(6) ....................................................................... *passim*

Fed. R. Civ. P. 12(f) .................................................................................. 45, 46

# I.  INTRODUCTION

Defendants orchestrated the 2016 sale of 100% of the stock of Choate Construction Company ("Choate" or "Company") to employees who were forced to purchase it through their individual retirement accounts. The employees did not consent to the transaction and were never consulted about whether they wanted to invest all their future retirement contributions in private Company stock for which the price is not publicly known. Most importantly, the employees could not negotiate the price they ultimately paid for the Company stock through their retirement accounts in the Choate Employee Stock Ownership Plan ("ESOP").[1] The employees and the ESOP were represented by Argent Trust Company ("Argent"), a trustee hand-picked by the Choate's founder, William Millard Choate, and other members of the Choate Board of Directors ("Board"), who would be enriched by the sale of their stock to the ESOP. The deal terms required the ESOP to borrow the entire $198 million necessary to complete the purchase of the Company ("ESOP Transaction"). The deal was structured and based on a valuation by the same advisors who were found to be unreliable in *Brundle v. Wilmington Trust, N.A.*, 919 F.3d 763 (4th Cir. 2019). Ultimately, Argent rubber-stamped the ESOP Transaction and the conflicted Board members, many of whom personally profited from the ESOP overpaying for Choate stock, failed to properly monitor Argent or use their power to correct the ESOP's overpayment.

Even though Choate's current management touts the Company as "a 100% employee-owned company" where the employees are "partners," the employees are **_denied access_** to the valuation reports that Argent used to justify the $24.75 per share the ESOP paid for Choate stock. And the ink was barely dry on the sale when Choate filed an annual form with the Department of

---

[1] As explained below, an ESOP is a retirement plan where employees have individual accounts and where the primary investment chosen by the plan's fiduciaries is stock in the employer/company for whom the employees work.

1

Labor ("DOL") showing that the Choate stock had dropped in value to just $8.10 per share. In other words, the stock that was purchased for employee retirement accounts in the ESOP lost two-thirds of its value within one month of the ESOP Transaction. Accordingly, Plaintiff's claim is simple: her retirement account was unlawfully used to purchase Choate stock at an inflated price to benefit the owners of the closely held Company. Thus, contrary to Defendants' Article III standing arguments, Plaintiff suffered significant losses in her individual retirement account due to the ESOP's overpayment for Choate stock, which unquestionably qualifies as injury-in-fact. It is, therefore, not surprising that no court has dismissed on Article III standing grounds claims by ESOP participants that their retirement accounts overpaid for private employer stock.

The Complaint also easily meets the requirements of Federal Rules of Civil Procedure 8(a) and 10(b) as the allegations supporting Plaintiff's claims are more than adequate. Defendants clearly understand the claims against them. With respect to the claims against the non-fiduciary Selling Shareholders,[2] Plaintiff requests appropriate equitable relief in the form of disgorgement or restitution of the ill-gotten gains they received from the ESOP Transaction, which Plaintiff alleges are in the Selling Shareholders' possession and belong in good conscience to the ESOP and its participants. With respect to the prohibited transaction claims, Plaintiff is not required to allege facts disproving Defendants' purported affirmative defense, which requires Defendants (not Plaintiff) to prove that the ESOP paid no more than adequate consideration for Company stock. In short, when the Complaint in this case is viewed according to the correct standards under Rule 12(b)(1) and (b)(6), assigning the proper burdens, there is no basis for dismissal and Defendants' motions to dismiss ("MTD"), ECF Nos. 30 and 32, should be denied.

---

[2] Selling Shareholders is defined *infra* at Section II.B.2 p. 5.

## II.     LEGAL AND FACTUAL BACKGROUND

### A.     Background of ERISA, ESOPs and ESOP Transactions

ERISA is "a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). The strict fiduciary standards set forth in ERISA are derived from the common law of trusts and include the twin duties of loyalty and prudence. *Varity Corp. v. Howe*, 516 U.S. 489 (1996). The duty of loyalty requires that fiduciaries act "solely in the interest of the participants" and "for the exclusive purpose" of providing benefits and defraying reasonable plan expenses. 29 U.S.C. § 1104(a)(1)(A).[3] The duty of prudence requires fiduciaries to discharge their responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters" would use. 29 U.S.C. § 1104(a)(1)(B). These exacting standards were adopted because Congress recognized that pension funds "are abused by those responsible for their management who manipulate them for their own purposes or make poor investments with them." 3 Leg. Hist. 4811; 120 Cong. Rec. 29957 (1974).

ERISA provides further protection to participants in employee benefit plans by prohibiting fiduciaries from causing a plan to enter into certain "prohibited transactions," which Congress categorically barred as harmful to plans and their participants. 29 U.S.C. §§ 1106(a)-(b); *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241-42 (2000). While Congress provided certain limited exemptions to ERISA's prohibited transaction rules, the burden to establish each condition of an exemption lies with the party claiming the exemption. 29 U.S.C. §§ 1108; *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 864 (4th Cir. 1994) (holding district court

---

[3] For simplicity, this memorandum cites to the parallel citations in the U.S. Code rather than the ERISA sections.

erroneously shifted burden to plaintiffs); *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996); *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 601 (8th Cir. 2009) (statutory exemptions established by § 1108 are defenses which defendants must prove) (citing *Howard*).

An ESOP is an employee retirement plan "that invests primarily in the employer's stock." *Brundle*, 919 F.3d at 769. While Congress sought to encourage the formation of ESOPs, this policy is balanced against another Congressional concern "expressed in equally forceful terms in ERISA: that of safeguarding the interests of participants in employee benefit plans by vigorously enforcing standards of fiduciary responsibility." *Donovan v. Cunningham*, 716 F.2d 1455, 1466 (5th Cir. 1983). The provisions in ERISA that allow for the creation of ESOPs do not "giv[e] unscrupulous [fiduciaries and sellers] license to steal." *Id.* To prevent abuse, ERISA requires ESOP fiduciaries, like other fiduciaries, to comply with their duties under 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D), as well as the prohibited transactions rules at §§ 1106(a) and (b). *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 425 (6th Cir. 2002); *Keach v. U.S. Tr. Co.*, 419 F.3d 626, 635 (7th Cir. 2005).

This case concerns an ESOP's purchase of private employer stock where there is no publicly available market price. In cases like this, whether an ESOP's purchase of private employer stock meets the requirements of 29 U.S.C. §§ 1104 or 1106 involves determining whether the ESOP fiduciary "at the time [of] the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Eyler v. C.I.R.*, 88 F.3d 445, 454-55 (7th Cir. 1996). "In reviewing the acts of ESOP fiduciaries … courts examine both the process used by the fiduciaries to reach their decision as well as an evaluation of the merits." *Id.* (citing *Cunningham*, 716 F.2d at 1467).

4

B.    Factual Allegations in the Complaint

1.    The Choate ESOP

Choate provides general contracting and construction management services and employs over 400 professionals. Complaint ¶ 33 ("Compl."), ECF No. 1. The Choate ESOP is an ERISA-protected "defined contribution plan" (also referred to as an "individual account plan") that allows current and former employees of Choate to save for retirement through contributions to their individual ESOP accounts, which are then invested to grow those contributions.[4] 29 U.S.C. §§ 1002(34)-(35); P. Schneider & B. Freedman, ERISA: A Comprehensive Guide § 3.02 (2d ed. 2003). Contributions to the Choate ESOP accounts are automatically invested in Choate stock. Compl. ¶ 2.

2.    The Parties

Plaintiff Sharon Lee is a former employee of Choate and a current vested participant in the Choate ESOP. Compl. ¶ 14. Argent is the Trustee of the Choate ESOP and a fiduciary to the ESOP because it exercises discretionary authority over the ESOP's management and assets. *Id.* ¶¶ 15-17. The Choate Board and its individual members ("Board Defendants") are "named fiduciaries" under the Trust Agreement and have the power and authority to appoint, remove or replace the Trustee and did in fact appoint Argent as the Trustee of the ESOP. *Id.* ¶¶ 26-27. Defendant William Millard Choate is a Board member and the Chairman and CEO of Choate. *Id.* ¶ 30. Defendant Dave Priester is a Board member and the President and COO of Choate. *Id.* ¶ 31. William Millard Choate, Dave Priester, and the John and Jane Does 21-35 (collectively, "Selling Shareholders") sold Company stock to the ESOP in December 2016. *Id.* ¶¶ 30-32.

---

[4] A "defined benefit plan," by contrast, generally promises the participant a fixed level of retirement income, which is typically based on the employee's years of service and compensation. *Id.*

### 3.    The Choate ESOP Transaction

On August 30, 2016, the Board Defendants appointed Argent as Trustee of the ESOP to represent the employees/participants in the sale of the Company to the ESOP. Compl. ¶ 38. On December 9, 2016, the ESOP purchased 8,000,000 shares of Choate stock from the Selling Shareholders for $24.75 per share. *Id.* ¶ 42. The purchase of 8,000,000 shares represented 80% of outstanding Choate stock. *Id.* On December 14, 2016, the Selling Shareholders exchanged their remaining 2,000,000 shares of voting Choate stock, which represented 20% of the Company's then outstanding equity, for 26,667 shares of non-voting common stock and warrants[5] to acquire 5,306,667 shares of voting common stock, which would represent 39.80% of the Company's fully diluted equity.[6] *Id.* ¶ 43. This series of transactions, referred to as the ESOP Transaction, resulted in the ESOP purchasing 80% of the Choate stock for $198 million. And the ESOP borrowed the entire $198 million necessary to complete the ESOP Transaction, taking a $57 million loan from Choate ("Company Loan") and a $141 million loan from the Selling Shareholders ("Seller Notes"). Compl. ¶ 45. Argent approved all these transactions, which was completed just over 3 months after Argent was retained by the Board to represent the ESOP in the Transaction. *Id.* ¶¶ 38, 48-49.

Less than one month after the ESOP participants were used to purchase the Choate stock for $24.75 per share, the stock was valued at just $8.10 per share (as of December 31, 2016)—just one-third of what the ESOP paid for it. Compl. ¶¶ 52-53. On December 31, 2016, the total assets

---

[5] A warrant is an option issued by a company that gives the holder the right to purchase the company's stock at a fixed price in a specific time period. *See, e.g.*, https://www.investopedia.com/ask/answers/08/stock-option-warrant.asp.

[6] Fully diluted equity is the equity based on the value of the company's total shares, including shares that are currently available and those that could be made available after all possible sources of conversion, such as warrants, stock options and convertible bonds, are exercised. *See, e.g.*, https://www.investopedia.com/terms/f/fullydilutedshares.asp.

of the ESOP were negative $124 million, meaning that the ESOP owed more money that it had. *Id.* ¶ 54.

As the employer, Choate makes contributions to employees' individual retirement accounts held in the ESOP, which are used to repay the ESOP's loans to the Selling Shareholders and to the Company. The Committee Defendants determine how much of those employer contributions are retained as cash and how much are used to pay off the ESOP's debt. *Id.* ¶ 21. As the loans are paid off, shares of Choate stock are allocated to the individual retirement accounts of Plaintiff and other ESOP participants based on the purchase price of $24.75 per share. This is true even if, at the time the shares are allocated to individual accounts, they are worth a fraction of the purchase price. *Id.* ¶ 62. For example, in 2016, employer contributions for ESOP participants were $9,360,503. Exhibit ("Ex.") 1 to Choate MTD at 16 (2016 Form 5500). Yet, because part of that contribution was used to pay interest on the ESOP's debt and the remaining amount was allocated to participants' accounts based on the inflated price of $24.75 per share, just 302,693 shares were allocated to participants' ESOP accounts in 2016. *Id.* at 17. As of December 31, 2016, those 302,693 shares allocated to ESOP participants was worth just $2.45 million. This means that, even though $9.36 million of employer contributions were made in 2016, the value that was allocated to ESOP participants' retirement accounts was just $2.45 million at year end, meaning participants received a value of just 26 cents for every dollar of employer retirement contributions made on their behalf in 2016. *Id.* at 16-17.

Pursuant to the Freedom of Information Act ("FOIA"), Plaintiff sought from the DOL all documents in its possession concerning the Choate ESOP Transaction. Compl. ¶ 57. DOL withheld the requested documents because it currently has an open investigation of the Choate ESOP Transaction. *Id.* In its response to Plaintiff's FOIA request, DOL stated that release of the requested

documents concerning the ESOP Transaction "could reasonably be expected to interfere with" enforcement proceedings. *Id.*

## III.    LEGAL STANDARD

For a Rule 12(b)(1) jurisdictional challenge to a plaintiff's standing to sue, the Court "must assume all well-pled facts to be true and draw all reasonable inferences in favor of the plaintiff." *Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013) (internal quotation marks omitted). Where the "jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). And if a defendant challenges the "veracity of the facts underpinning subject matter jurisdiction," the trial court must "conduct evidentiary proceedings" to "resolve the disputed jurisdictional facts." *Id.*

To survive a Rule 12(b)(6) motion, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint does not need "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but rather must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556. A reviewing court must accept all factual allegations in the complaint as true and must construe the pleadings in the light most favorable to plaintiff. *Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc.*, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citing *McNair v. Lend Lease Trucks, Inc.*,

95 F.3d 325, 327 (4th Cir. 1996)). Further, post-*Twombly*, the Supreme Court has clarified that notice pleading is still the standard, holding that a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *see also Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

In the context of an ERISA case, a plaintiff is not "required to describe **directly** the ways in which [defendants] breached their fiduciary duties." *Braden*, 588 F.3d at 595 (emphasis added). Nor are plaintiffs required "to plead facts tending to contradict...inferences" that could be drawn in defendants' favor. *Id.*; *see also Kruger v. Novant Health, Inc.*, 131 F. Supp. 3d 470, 477-78 (M.D.N.C. 2015) (citing *Braden*).

Furthermore, and contrary to Defendants' suggestion, ERISA plaintiffs are not uniformly subjected to the heightened pleading standards articulated in *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 428-30 (2014). In fact, courts have held that *Dudenhoeffer* does not apply to claims regarding an ESOP's purchase of private employer stock. *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 679 (7th Cir. 2016) (holding that *Dudenhoeffer's* pleading standard does not apply to private ESOP transactions). As *Dudenhoeffer's* reasoning makes clear, the Court there was addressing the unique circumstances confronted by ESOP fiduciaries making decisions regarding the purchase of **publicly-traded** employer stock, when those fiduciaries have inside information that the employer stock is over-valued. *Dudenhoeffer*, 573 U.S. at 428. Recognizing that if ESOP fiduciaries took actions to protect the ESOP that were based on inside information, such action would violate the securities laws, the Supreme Court articulated a different standard for ESOP breach claims **based on inside information**. *Id.* Because this case involves the purchase of privately-held company stock and does not contain allegations that Defendants had inside information concerning publicly traded stock, the *Dudenhoeffer* standard is not applicable here. *Allen*, 835 F.3d at 679

9

(*Dudenhoeffer* was "limited to publicly traded stock and relies on the integrity of the prices produced by liquid markets" and "[p]rivate stock has no 'market price'").

## IV.    ARGUMENT

### A.    Plaintiff Has Article III Standing to Bring this Action

To satisfy the constitutional standing requirements of Article III, Plaintiff must demonstrate that (1) she has suffered an "injury-in-fact" that is both concrete and particularized, and actual or imminent; (2) that her injury is "fairly…trace[able] to the challenged action of the defendant"; and (3) that her injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Ansley v. Warren*, 861 F.3d 512, 517 (4th Cir. 2017). Plaintiff's claims meet all three requirements of Article III standing.

### 1.    **Plaintiff has suffered individualized financial injury.**

The Complaint alleges that Plaintiff has suffered financial injury—her individual ESOP retirement account is worth less than it would have been had Defendants not violated ERISA and caused her account to overpay for Choate stock. Compl. ¶¶ 3, 9. Defendants cannot seriously contend that financial injury, *i.e.* monetary loss, does not qualify as injury-in-fact under Article III jurisprudence.[7] In fact, courts nationwide have uniformly found that ESOP plaintiffs raising similar claims have Article III standing to bring an action.

For example, in *Innis v. Bankers Trust Company of South Dakota*, No. 4:16-cv-00650-RGE-SBJ, 2017 WL 4876240, at *4 (S.D. Iowa Oct. 13, 2017), the Court held that plaintiff Innis had Article III standing to pursue her claim because she "alleges an actual injury to her own Plan account: the purchase of 1 million shares at $37.50 per share—allegedly more than fair market

---

[7] *See Lorenz v. Safeway Inc.*, 241 F. Supp. 3d 1005, 1014 (N.D. Cal. Mar. 13 2017) (holding ERISA participant had Article III standing because he "alleges that the prohibited transaction between the Safeway Defendants and Great-West caused him to suffer real financial injury.")

value . . . [t]his is an injury sufficient to support standing." *Id.* Likewise, in *Swain v. Wilmington Trust, N.A.*, No. 17-71-RGA-MPT, 2018 WL 934598, at *4 (D. Del. Feb. 16, 2018), the court held that Swain had Article III standing to pursue his claims based on allegations that he and all other ESOP participants overpaid for ISCO company stock, which lost 60% of its value shortly after the ESOP purchased it. *Id.* at *4. Indeed, the *Swain* court essentially rejected the same arguments Defendants lodge in this case. *Id.* at *2-4.

Just as in *Innis* and *Swain*, the Complaint here alleges that the fiduciaries of the Choate ESOP caused participants to overpay for privately-held Choate stock. Compl. ¶¶ 33-53. The monetary losses that Plaintiff and all ESOP participants suffered in their individual retirement accounts unquestionably qualify as injury-in-fact sufficient to establish Article III standing. *See Brincefield on behalf of Morton G. Thalhimer, Inc., Emp. Stock Ownership Plan v. Studdard*, No. 3:17-cv-718-JAG, 2018 WL 6323071, at *3-4 (E.D. Va. Dec. 4, 2018) (holding that allegations that the ESOP overpaid for privately traded company stock because the stock value subsequently plummeted were sufficient to demonstrate injury for the purposes of constitutional standing); *Neil v. Zell*, 767 F. Supp. 2d 933, 950-51 (N.D. Ill. 2011) (participants sufficiently demonstrated Article III injury-in-fact because they claimed that their individual accounts in the ESOP would be worth more had defendants "abided by ERISA's requirements").

Defendants do not cite a single case where a court dismissed claims similar to those asserted here. Argent simply states the requirements of Article III, but cites no cases to support its arguments that Plaintiff lacks standing. Argent Brief in Support of MTD ("Br."), ECF No. 31, at 6-8. While the Choate Defendants cite a few cases, which purportedly support their standing arguments, none of them are on point. For example, in *David v. Alphin*, 817 F. Supp. 2d 764, 781 (W.D.N.C. 2011), *aff'd*, 704 F.3d 327 (4th Cir. 2013), the court dismissed the defined benefit plan

claims for lack of Article III standing but did not dismiss the defined contribution plan claims on those same grounds, recognizing the critical differences between defined benefit and defined contribution plans. In fact, *David* discusses *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 255-56 (2008), where the Supreme Court explained the important distinctions between these define benefit versus defined contributions plans: "[m]isconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan. . . . For defined contribution plans, however, fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive." Since this case involves a defined contribution plan, *David* in fact supports a determination that Plaintiff has standing in this case.

*Taylor v. KeyCorp*, 680 F.3d 609, 615 (6th Cir. 2012) and *Brown v. Medtronic, Inc.*, 628 F.3d 451, 455 (8th Cir. 2010) similarly do not advance the ball for Defendants because the plaintiffs in those cases sold their employer stock before the inflation corrected. On those facts, the courts concluded that Taylor and Brown had not suffered a loss as a result of the alleged violation—in fact, they benefitted from it. By contrast, Plaintiff here could not have sold her Choate stock at an inflated value because she has never sold a single share of it.[8] As such, it is impossible to find that Plaintiff benefitted from the inflated price of Choate stock. Thus, applying the *Taylor* and *Brown* holdings, Plaintiff has standing.

Finally, Defendants' argument that the monetary losses suffered in Plaintiff's retirement account do not constitute individualized injury because other ESOP participants suffered the same financial harm is, again, based on a fundamental misunderstanding of the nature of defined

---

[8] Defendants have and can produce documents showing that Plaintiff has not sold any of the Choate stock allocated to her retirement account. She is entitled to obtain and submit these documents to the Court to demonstrate standing, if the Court finds that such facts are in dispute.

contribution plans. *Contra* Choate Brief in Support of MTD ("Br."), ECF No. 33, at 5 ("the harms Plaintiff asserts in her Complaint are purported harms to the Plan or the class as a whole; she alleges no individualized harm."); Argent Br. at 7 (same). As Justice Scalia explained, when a "defined contribution plan sustains losses, those losses are reflected in the balances in the plan accounts of the affected participants, and a ***recovery of those losses would be allocated to one or more individual accounts***." *LaRue*, 552 U.S. at 262 (citing 29 U.S.C. § 1002(34) (defining a "defined contribution plan" as a plan which provides for an ***individual account for each participant***)) (Scalia, J., concurring). Thus, while the ESOP as a whole suffered losses because Defendants caused it to overpay for Choate stock, those losses are also reflected in the individual accounts of Plaintiff and other ESOP participants. It is therefore clear that Plaintiff suffered individualized financial harm, cognizable under Article III.

2. **Plaintiff's financial injury is traceable to Defendants' actions and will be redressed by the relief Plaintiff seeks.**

Although the Choate Defendants do not argue that Plaintiff's financial injury is not fairly traceable to Defendants' actions, they cite *Brown*, 628 F.3d at 455, which was decided on traceability/causation grounds. Choate Br. at 4. *Brown's* holding, when properly evaluated, is inapposite here. In fact, courts considering ESOP claims like those raised here, have distinguished *Brown*'s holding as irrelevant to cases involving ESOP purchases of ***privately held*** company stock, as opposed to *Brown* which involved ***publicly traded*** stock. *Innis*, 2017 WL 4876240, at *5 (holding that Innis's overpayment claim satisfied Article III's traceability requirement because "[u]nlike the ESOP in *Brown*, Telligen is not a public company, making any changes in value easier to trace to Bankers Trust's alleged wrongful conduct.") The *Innis* court explained that "based on the information before the Court, the drop from $37.50 per share at the time of the

13

Transaction [the ESOP's purchase of the private company stock] to $6.25 in January 2014 alleges conduct fairly traceable to Bankers Trust [the ESOP trustee]." *Id.*

Finally, Defendants do not dispute that Plaintiff's claims satisfy the last Article III requirement, redressability, likely because it is clear that the remedies Plaintiff seeks will redress her financial injury. Specifically, because Plaintiff and all other Choate ESOP participants overpaid for Company stock, they have suffered monetary injury, and the return of the overpayment to their accounts will plainly redress that injury. *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 218 (4th Cir. 2008) (rejecting defendant's redressability argument and holding that plaintiff's claim that his "retirement accounts [are] worth less than they would have been absent the breach of duty" supported Article III standing).

3.    **Plaintiff has Article III standing to pursue injunctive relief.**

Argent's argument that the Complaint fails to plead a threat of future injury sufficient to warrant injunctive relief is without merit for several reasons. Argent Br. at 9. First, Argent strangely asserts that Plaintiff did not allege that she is a current participant in the ESOP even though the Complaint contains precisely this allegation. Compl. ¶ 14 ("Sharon Lee is ... a current participant in the Choate ESOP within the meaning of ERISA § 3(7)[.]"). Thus, Plaintiff has an ongoing interest in the management of the ESOP and would benefit from any injunctive relief obtained through this action.

Second, courts have found ESOP plaintiffs to have standing to pursue injunctive and declaratory relief when confronted with similar claims that ESOP participants overpaid for private employer stock. *Innis*, 2017 WL 4876240, at *6 ("Innis has standing, on behalf of the Plan as a whole, to pursue a claim for injunctive or equitable relief for violations of § 1106.").

14

Third and finally, Argent's argument that Plaintiff does not have Article III standing to pursue injunctive relief because "all of the factual allegations in the Complaint—such as they are—relate to past actions and conduct" is incorrect. Argent Br. at 9. Many of the ERISA violations asserted in the Complaint will recur, again, in the future because the loan payments, which are based on an inflated purchase price for the Choate stock, will continue **until year 2041**. Compl. ¶ 47 ("Seller Notes had a 25-year term and required interest only payments for the first 7 years, and equal principal payments of $7,833,333 over the remaining term."). Further, Courts have consistently held that violation of ERISA's statutory obligations, or even honest but imprudent conduct, is sufficient grounds for removing a fiduciary. *See, e.g.*, *Shaver v. Operating Eng'rs Local 428 Pension Tr. Fund*, 332 F.3d 1198, 1203-04 (9th Cir. 2003) (instructing district court to consider removal of fiduciaries should they be found to have breached their fiduciary duties); *Beck v. Levering*, 947 F.2d 639, 641 (2d Cir. 1991) (affirming removal of fiduciaries who engaged in egregious self-dealing); *Martin v. Feilen*, 965 F.2d 660, 672 (8th Cir. 1992) (affirming permanent injunction against defendants who "repeatedly used their fiduciary control over the [employee stock ownership plan's] assets to profit from self-dealing"). As the Second Circuit stated, "[w]e reject the argument that ERISA fiduciaries and their associates must be allowed to loot a second pension plan before an injunction may be issued." *Beck*, 947 F.2d at 641. Consequently, Plaintiff has Article III standing to seek injunctive relief, including removal of breaching fiduciaries, to protect her ESOP account against ongoing and future wrongdoing.

### 4. Defendants' merits arguments are not legitimate jurisdictional challenges and thus are irrelevant to the Article III inquiry.

In an improper bid to litigate the merits at the pleading stage, Defendants argue that this Court lacks jurisdiction to adjudicate Plaintiff's claims because Defendants believe that the ESOP got a "good deal" on the Choate stock. Choate Br. at 6-7; Argent Br. at 8. However, because these

arguments are not legitimate jurisdictional challenges, they are unavailing. *Cooksey*, 721 F.3d at 239 (when evaluating standing, "'the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims.'") (quoting *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003)); *see also Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007) ("The Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume arguendo the merits of his or her legal claim.") (citing *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975)).

Moreover, even if considered, Defendants' mortgage analogy is unpersuasive, and no court has ever credited this argument as a basis to find an ESOP transaction lawful. The reason is self-evident—it presents circular reasoning that ***assumes*** that the stock was actually worth what the ESOP paid. Choate Br. at 7 ("Using the mortgage analogy, ***if the stock was actually worth*** $198 million on the date of purchase, one would expect that this "Investment Loss" number would be $198 million, netting out to a post-transaction value for the acquired shares of zero dollars."). While Argent asserts that the two figures cited in the Complaint (the $198 million the ESOP paid for Choate stock on December 9, 2016 and the publicly reported value of $64.8 million for that same stock on December 31, 2016) "conflate two different concepts," this argument is nonsensical. The Complaint provides an ***apples-to-apples*** comparison of the price the ESOP paid for Choate's stock on December 9, 2016 ($24.75 per share) with the publicly reported value of that very same stock a few weeks later on December 31, 2016 ($8.10 per share). Those two figures are merely

what Defendants *themselves* reported in their governmental filings about the true value of Choate stock on two relevant dates. [9]

Defendants' home mortgage argument effectively requires this Court to agree that the transaction debt Choate took on its balance sheet to allow Defendants to complete the ESOP Transaction *should be disregarded* when valuing the Choate stock on December 31, 2016. But this argument was rejected by the only court of appeals to have considered it. *Eyler*, 88 F.3d at 453 (holding that the valuation report that *failed* to account for the effects of the ESOP transaction debt *did not* establish fair market value of company stock). Thus, it is proper to account for the effects of the transaction debt in valuing Choate's stock price after the transaction. Put differently, even if part of the drop in value of Choate stock was due to the ESOP Transaction debt, that does not undermine the conclusion that the ESOP participants suffered losses when the Choate stock lost 66% of its value in less than a month.

Moreover, the Seventh Circuit in *Allen* rejected "economic" arguments similar to those Defendants raise here as premature on a Rule 12(b)(6) motion. 835 F.3d at 680 ("GreatBanc argues that the post-transaction decline in stock value is precisely what economists predict should happen after an ESOP transaction, and therefore it is not evidence of fiduciary breach. But whether the

---

[9] The Fourth Circuit has repeatedly recognized that "[w]hen reviewing the dismissal of a complaint for lack of subject-matter jurisdiction under Rule 12(b)(1), we must assume all well-pled facts to be true and draw all reasonable inferences in favor of the plaintiff." *People for the Ethical Treatment of Animals, Inc. v. Stein*, 737 F. App'x 122, 127 (4th Cir. 2018) (internal citation omitted). Moreover, even when courts determine that "jurisdictional facts are intertwined with the facts central to the merits of the dispute," they hold that the plaintiff must be afforded an opportunity to conduct and present jurisdictional discovery to establish Article III standing. *Kerns*, 585 F.3d at 193 (district court must "afford the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits."). Here, if this Court views the question of whether Plaintiff overpaid for Choate stock as jurisdictional, she seeks (and must be afforded) the opportunity to conduct discovery into the facts surrounding the valuation of Choate stock at the time she purchased it, in order to respond to Defendants' factual 12(b)(1) challenge.

22% decline in value . . . was the result of normal economic forces or something more sinister is a matter for a later stage of litigation.").[10] For this reason, courts have recognized that whether Plaintiff and other ESOP participants overpaid for private Choate stock is a fact intensive inquiry requiring expert opinions, which may not be resolved at the pleading stage. *See, e.g.*, *Perez v. Bruister*, 823 F.3d 250, 267-70 (5th Cir. 2016); *see also* Section IV.C.1 n.13 *infra*. And while Defendants lodge these arguments under both Rule 12(b)(6) and 12(b)(1), this does not change the conclusion that the fact-bound question of whether the ESOP overpaid for Choate stock, cannot be resolved without discovery. *Kerns*, 585 F.3d at 193 (where "jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery,"). Put simply, if this Court believes that whether the ESOP overpaid for the Choate stock purchased on December 9, 2016 is both a merits and jurisdictional question, then it must order the parties to complete jurisdictional discovery and brief the issue to allow the Court to make this determination based on a full factual record. *Id*.

B.     The Choate Defendants' Rule 8 and Rule 10 Arguments Fail Because ERISA Cases Commonly Plead Related Claims Together

"Dismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'" *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015) (emphasis in original) (quoting *Anderson v. Cent. Fla. Comm. College*, 77 F.3d 364, 366 (11th Cir. 1996)); *accord Walton v. Greensville Corr. Ctr.*, No. 3:14CV628 RCY, 2015 WL 2452451, at *9 (E.D. Va. May 21, 2015);

---

[10] *See also Brundle*, 919 F.3d at 782 ("But [trustee] breached here by overpaying for the Constellis stock. Principles of restitution therefore entitle the ESOP and its participants to compensation for the loss from the overpayment. Any subsequent gains involving the stock, which the ESOP would have obtained regardless of the overpayment, have no bearing on that loss.") (emphasis in original).

*SunTrust Mortg., Inc. v. First Residential Mortg. Servs. Corp.*, No. 3:12CV162, 2012 WL

7062086, at *7 (E.D. Va. Sept. 11, 2012), *report and recommendation adopted*, No. 3:12CVL62,

2013 WL 505828 (E.D. Va. Feb. 8, 2013).

The Complaint here clears that low bar, as Plaintiff's claims are easily understood. Indeed,

the Choate Defendants appear to have had no trouble understanding the basis for each Count and

moving to dismiss each one for failure to state a claim.[11] Nevertheless, the Choate Defendants

argue that the Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 8(a)(2)

and 10(b). This argument is inconsistent with relevant law and thus should be rejected.

> 1. **The Choate Defendants' Rule 10(b) challenge fails because Plaintiff's claims are clearly presented and arise out of the same transaction (Count III).**

Rule 10(b) states that "[i]f doing so would promote clarity, each claim founded on a

separate transaction or occurrence . . . must be stated in a separate count or defense." Fed. R. Civ.

P. 10(b). The claims in the Complaint are clear and arise out of the same transaction. First, none

of the counts in the Complaint include multiple claims. The Choate Defendants seem to argue that

Count III contains multiple claims because Plaintiff alleges that Defendants violated multiple

subsections of § 1106(a) in Count III. Choate Br. at 10-11. But alleging that a defendant violated

multiple subsections of a statute does not require separate counts under Rule 10(b). *See* 5A

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1324 (4th

ed. 2019) ("Rule 10(b) does not make it necessary to use separate counts to state different theories

of recovery or to seek relief under separate statutory provisions.").

Second, even if Count III contained multiple claims, the Choate Defendants have entirely

overlooked the requirement that each claim must be based on a separate transaction or occurrence.

---

[11] Argent does not argue that the Complaint fails to comply with the pleading requirements.

The violations of §§ 1106(a)(1)(A), (B), and (D) alleged in Count III are based on the exact same transaction: the sale of Choate stock to the ESOP at an inflated price, or ESOP Transaction. In other words, because the ESOP Transaction violated three separate subsections of § 1106(a), pleading those violations together in Count III comports with Rule 10(b). *See Schoene v. McElroy Coal Co.*, No. 5:13-CV-95, 2013 WL 12137313, at *2 (N.D.W. Va. Aug. 8, 2013) (denying Rule 10(b) motion because "the allegations in this case appear to have all arisen from the same transaction, the defendants' longwall mining under [plaintiffs'] property").

The same is true for any other counts Defendants contend are defective under Rule 10(b). Pleading these violations together promotes clarity and reduces repetition in Plaintiff's Complaint. *See SunTrust Mortg., Inc.*, 2012 WL 7062086, at *7 (noting that claims founded on separate occurrences should be in different counts "*if doing so would promote clarity*") (internal citation omitted) (emphasis in original). And Defendants prove through their motion to dismiss that they are able to understand and respond to Plaintiff's claims. *See Schoene*, 2013 WL 12137313, at *2 (separate counts not required where "defendants [are] adequately informed of the charges") (citing *Frost v. Dorsch*, No. 92 C 4025, 1992 WL 390743, at *2 (N.D. Ill. Dec. 18, 1992)).

That the Choate Defendants' Rule 10(b) argument is baseless is evident from their lack of relevant authority. First, Defendants' reliance on *Davis v. Perdue*, No. 5:12-CV-00593-FL, 2012 WL 12542101, at *1 (E.D.N.C. Sept. 13, 2012), *report and rec. adopted*, No. 5:12-CV-00593-FL, 2013 WL 1681255 (E.D.N.C. Apr. 17, 2013), *aff'd*, 533 F. App'x 348 (4th Cir. 2013) is inapposite. Choate Br. at 15. In *Davis*, the *pro se* plaintiff filed a 61-page complaint that the court found to be "factually frivolous" and describing "fantastic or delusional scenarios." *Id.* (internal citations omitted). Here, Plaintiff's claims are not "conclusory, rambling and disjointed"—Plaintiff identifies which claims are levied against which Defendants and groups claims only to the extent

they arise from the same transaction or would provide additional clarity for all parties. The fact that Defendants are able to respond to each count of the Complaint makes clear that the concerns articulated in *Davis* are not relevant here. Defendants' other cases are likewise inapplicable. In *Bray v. Fresenius Med. Care Aktiengesellschaft Inc.*, No. 06-CV-50197, 2007 WL 7366260, at *10 (N.D. Ill. Aug. 30, 2007), the complaint—unlike the Complaint here—alleged a single count that included multiple claims based on separate occurrences. And in *Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1163-64 (M.D. Fla. 1996), the court determined that the complaint failed to comply with Rule 10(b) because it did not use numbered paragraphs and it entirely failed to distinguish which claims were against which defendants. Such defects are not present here.

Finally, and most importantly, even if the Court finds that the Complaint fails to comply with Rule 10(b), dismissal would still not be appropriate; rather, Plaintiff should be granted leave to amend the Complaint as all the concerns Defendants raise are easily curable. *See Guthrie v. United States*, 522 F. App'x 653 (11th Cir. 2013) ("The district court abused its discretion by dismissing Guthrie's third amended complaint with prejudice [under F.R.C.P. 10(b)].")￼; *Weiland*, 792 F.3d at 1313.

## 2. The Choate Defendants' Rule 8(a)(2) arguments are meritless (Counts II, IV, VI & VII)

Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "'give[] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002)). This is a "relaxed standard," and the sufficiency of the Complaint is determined "'in each case on the basis of the nature of the action, the relief sought, and the respective positions of the parties in

terms of the availability of information and a number of other pragmatic matters.'" *Id.* (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1217, at 240-41 (3d ed. 2004)); *see also Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764 (4th Cir. 2003) (stating that the requirements of Rule 8 "are not onerous").

This Complaint undoubtedly satisfies the liberal Rule 8 standard. As the Choate Defendants' motion shows, they are on notice of the claims against them because they have no problem identifying and responding to each claim in the Complaint. While the Choate Defendants state in conclusory terms that the Complaint fails to provide them adequate notice in violation of Rule 8(a)(2), their position is inconsistent with relevant authority. Choate Br. at 9-11.

First, the Choate Defendants appear to challenge the use of unnamed defendants—the Committee Defendants, Selling Shareholders, and Board Defendants—whose identities are not currently known by Plaintiff. Choate Br. at 10-11. But the use of "John Doe" defendants does not, in itself, cause a complaint to run afoul of Rule 8(a)(2) and is "permissible when a defendant's identity is not known at the time the complaint is filed and plaintiff could identify the defendant through discovery." *Valentine v. Roanoke Cty. Police Dep't*, No. 7:10-CV-00429, 2011 WL 3273871, at *5 (W.D. Va. July 29, 2011) (citing *Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir.1982)). Here, the identities of the Committee Defendants, the Selling Shareholder Defendants, and the Board Defendants are unknown to Plaintiff at this point but are certainly identifiable through limited discovery.

Next, the Choate Defendants assert that Counts II, IV, VI, and VII fail to indicate which particular Defendants engaged in the alleged ERISA violations. Choate Br. at 10-11. In reality, each count contains identifies the Defendants against whom that count is alleged. *See, e.g.*, Compl. Count II ("Against Committee Defendants"). Each count also specifies the actions that the relevant

defendants took and what they are liable for. *See, e.g.*, Compl. Count II ¶¶ 91-92 ("The Committee Defendants directed Argent as to the amount of payment from the ESOP to repay principal and/or interest to the Selling Shareholders" which "constitutes [violations] of [§ 1106]" making them "liable for appropriate equitable relief."); *see also* Count IV ¶¶ 112, 114, 115; Count VI ¶¶ 130-31; Count VII ¶¶ 137, 139. This is sufficient to satisfy the pleading requirements of Rule 8(a)(2). *See, e.g.*, *Marseglia v. JP Morgan Chase Bank*, 750 F. Supp. 2d 1171 (S.D. Cal. 2010) (denying motion to dismiss and rejecting defendants' argument that the allegations did not specify which of the defendants were liable for each claim). And, while Choate appears to believe that pleading claims against Doe defendants violates Rule 8(a), as discussed *supra*, this is permissible when the Defendants' identities are solely in their possession and cannot be ascertained before discovery. *Valentine*, 2011 WL 3273871, at *5.

Finally, the Choate Defendants argue that Counts II, IV, VI, and VII do not sufficiently explain how each defendant violated ERISA, or in other words, that Plaintiff has not properly pled the elements of a claim. *See* Choate Br. at 10-11 (Count II does not explain "what direction was provided that constituted a prohibited transaction;" Counts IV, VI, and VII fail to indicate "how that individual breached the specific duty"). To the contrary, each of the Counts recites the specific subsection of ERISA that Plaintiff contends each defendant violated, details the elements of each claim, and explains the actions the individual defendants took to violate that subsection. *See* Count II ¶¶ 86-92; Count IV ¶¶ 109-15; Count VI ¶¶ 127-31; Count VII ¶¶ 133-37. Plaintiff's particular claims are discussed more fully *infra* Section IV.C, which addresses Defendants' Rule 12(b)(6) arguments—however, Plaintiff's description of Defendants' actions in violation of each subsection of ERISA is more than sufficient to satisfy Rule 8. *See Bass*, 324 F.3d at 764-65 (a plaintiff must "set forth facts sufficient to allege each element of his claim") (citations omitted).

Plaintiff's detailed Complaint is more than sufficient to meet the low bar of Rule 8(a)(2) and put Defendants on notice of the claims against them; accordingly, the Court should decline to dismiss the Complaint on this basis.

C.     Defendants' Rule 12(b)(6) Arguments Fail

Defendants' Rule 12(b)(6) challenges are premised on their assertion that the ESOP got a "good deal" when it paid $24.75 per share for Choate stock, even though the Choate stock fell to $8.10 per share less than a month after the ESOP purchased it. Choate Br. at 2; Argent Br. at 11. However, courts have repeatedly rejected similar arguments as inappropriate for a Rule 12(b)(6) motion, where the court must accept the allegations in the complaint as true. *Bass*, 324 F.3d at 764 ("pursuant to Rule 12(b)(6), we take the factual allegations in the complaint as true"). Moreover, as explained below, Plaintiff need not plead that the stock was improperly valued: the burden is on the Defendants to show that the stock purchase was exempt from ERISA's prohibited transaction rules because it met the terms of an exemption. *Allen*, 835 F.3d at 676 (relying on well-established law that an "ERISA plaintiff need not plead the absence of exemptions to prohibited transactions") (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (burden of pleading defense rests with the defendant)).

1.     **The Complaint plausibly states prohibited transaction claims under § 1106(a), and Plaintiff is not required to plead the absence of adequate consideration.**

ERISA prohibits stock transactions between an ESOP and parties in interest like the Selling Shareholders. 29 U.S.C. § 1106(a). As the Supreme Court has recognized that § 1106(a) "categorically bar[s]" certain transactions deemed "likely to injure the pension plan." *Harris Trust*, 530 U.S. at 241-42. And, as the Fourth Circuit recently stated in another ESOP transaction case, "[a]bsent a statutory exception," § 1106(a)(1)(A) "would ban ESOPs because their creation necessarily requires the ESOP to purchase stock from its sponsoring employer, which is a party in

interest." *Brundle*, 919 F.3d at 769. While it is true that Congress set forth certain limited exemptions to ERISA's prohibited transaction rules, those exemption "are affirmative for pleading purposes, and so the plaintiff has no duty to negate any or all of them." *Allen*, 835 F.3d at 676 (noting that "[f]ive of our sister circuits agree with the position that [§ 1108] exemptions are affirmative defenses") (citing *Elmore*, 23 F.3d at 864).

Accordingly, the only question relevant to this Rule 12 motion is whether the Complaint pleads the elements of a prohibited transaction. Counts I, II and III adequately state claims for prohibited transactions under 29 U.S.C. § 1106(a) against Argent, the Committee Defendants and the Selling Shareholders. Indeed, Defendants do not dispute that the elements of the prohibited transaction claims are adequately pled. *See* Argent Br. at 10-12. Instead, Argent relies on 29 U.S.C. § 1108(b)(17)(B)(ii) to argue that the Complaint "contains no plausible allegation that the Choate ESOP paid more than adequate consideration." Argent Br. at 11. Argent's position is squarely at odds with the holdings of virtually all courts that have confronted this issue, and held just the opposite—that Plaintiff "need not plead the absence of adequate consideration…[i]t was enough that the transaction was a prohibited one." *Allen*, 835 F.3d at 675; *Swain*, 2017 WL 3475713, at *6, *report and rec. adopted in part, rejected in part*, 2018 WL 934598 (D. Del. Feb. 16, 2018) (denying motion to dismiss § 1106 claims because § 1108 provides affirmative defenses which must be plead by defendant, not "plead[ed] around" by plaintiffs); *Hurtado v. Rainbow Disposal Co.*, No. 8:17-cv-01605-JLS-DFM, 2018 WL 3372752, at *10 (C.D. Cal. July 9, 2018) (denying motion to dismiss § 1106(a)(1)(D) prohibited transaction claim against trustee alleged to have "caused the Plan to enter into the [ESOP] transaction"); *Chesemore v. Alliance Holdings, Inc.*, 770 F. Supp. 2d 950, 966 (W.D. Wis. 2011) (same). For this reason, in many ESOP cases alleging prohibited transactions Defendants simply file an answer asserting an affirmative defense and do

not waste the court's time with a motion to dismiss. *See, e.g.*, *Casey v. Reliance Tr. Co.*,[12] No. 4:18-cv-00424-ALM (E.D. Tx.), ECF Nos. 1, 10 (answer filed with no motion to dismiss in ESOP case alleging overpayment for company stock in violation of §§ 1106(a) and (b)); *Guidry v. Wilmington Tr., N.A.*, No. 1:17-cv-00250-RGA (D. Del.), ECF Nos. 14, 15 (same). Argent's arguments predicated on its view that the ESOP Transaction was exempted under 29 U.S.C. § 1108(b)(17)(B) are incorrect and its bid for dismissal must be denied.[13]

Even if one assumes *arguendo* that Plaintiff was required to plead around Argent's potential § 1108 defenses (which she is not), she has done just that by plausibly alleging that the ESOP overpaid for the Choate stock. The Complaint alleges a significant drop in value of Choate stock shortly after the ESOP purchased it, which the *Allen* court found persuasive in denying a similar motion to dismiss. *Allen*, 835 F.3d at 673 ("[t]he ink was hardly dry on the acquisition papers when the value of Personal-Touch's [company] stock began to tank. Twenty-two days later, the complaint asserts [] the Plan's stock was estimated to be worth some $13 million (almost 22%) less than what the Plan paid for it."). In fact, Defendants do not dispute the Complaint allegations that less than a month after the ESOP purchased Choate stock for $24.75 per share, the very same stock was worth just $8.10 per share, *i.e.*, the ESOP lost *two-thirds* of its investment in less than a month. Compl. ¶¶ 52-53.[14] Additionally, the Complaint details how the warrants provided to the

---

[12] As noted in the Complaint, Reliance Trust Company is the predecessor to Defendant Argent. Compl. ¶ 15.

[13] Indeed, as noted above, this Court likely would need to consider expert opinion in deciding this issue, which would require Argent to establish that the ESOP paid fair market value for the stock, and it may not be resolved even at the summary judgment stage, much less on the pleadings. *See, e.g.*, *Perez*, 823 F.3d at 267-70.

[14] Rather than address the Complaint's allegations, Argent improperly attempts to introduce facts outside the pleadings in support of its Rule 12(b)(6) arguments. Argent Br. at 4, 11 (attaching Form 5500s and arguing that the value of Choate stock has increased since the ESOP Transaction and that "positive equity" exists). Of course, outside documents may generally not be considered on a Rule 12(b)(6) motion. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015).

Selling Shareholders in the ESOP Transaction simultaneously diluted the ESOP's future share of ownership and allowed the Selling Shareholders to retain control of the Company. Compl. ¶ 56. The allegations that the warrants allowed the Selling Shareholders to retain control of the Company are important because, under Fourth Circuit law, when ESOP participants do not gain full control of a company, the price they paid for the stock ***must*** be discounted for the lack of control. *See Brundle*, 919 F.3d at 777, *aff'g Brundle v. Wilmington Tr., N.A.*, 241 F. Supp. 3d 610, 638-39 (E.D. Va. 2017). In fact, the failure to discount the stock purchase price for lack of control caused the *Brundle* court to conclude (among other things) that the ESOP overpaid for company stock, based on a deal structure and valuation report done by the same investment bankers (CSG Partners) and the same valuation company (Stout Risius Ross) as in the instant case. *Brundle*, 919 F.3d at 777-78. In *Brundle*, the court found troubling that CSG Partners and SRR were frequently retained in the "incestuous" ESOP community. *Id.* at 771 (quoting *Brundle*, 241 F. Supp. 3d at 643).

Argent also argues, without supporting authority, that a "fundamental concept of finance applies … that positive equity following a 100% debt-financed transaction reflects a good deal, not a bad one." *Id.* But courts have repeatedly rejected "economic" and "finance" arguments made by an ESOP trustee at the pleading stage. *Allen*, 835 F.3d at 680 (reversing 12(b)(6) dismissal and rejecting trustee's argument "that the post-transaction decline in stock value is precisely what economists predict should happen after an ESOP transaction"). In fact, contrary to Argent's arguments, the Seventh Circuit has held that the valuation of private company stock must consider the effect of ESOP transaction debt on the value of the stock, if the company guarantees the ESOP debt and is obligated to contribute to the ESOP to cover the loan payments. *Eyler*, 88 F.3d at 453 (holding that the third-party valuation that failed to account for the effects of the ESOP transaction debt did not establish fair market value resulting because the required loan payments impose a

"significant cash drain on the company."). Similarly, because Choate guarantees the entire $198 million ESOP transaction debt and is obligated to contribute sufficient amounts to the ESOP to cover loan payments, Compl. ¶¶ 46-47, it is proper for this Court to view the post transaction drop in value of Choate stock as material, even if it was driven solely based on the ESOP debt guaranteed by Choate. *Eyler*, 88 F.3d at 452.

Finally, the Complaint alleges, based on publicly obtainable facts, that the Department of Labor has an open investigation concerning the Choate ESOP Transaction and that Argent's predecessor company (Reliance Trust) reached a settlement with the Department of Labor for claims that it approved a deal where the ESOP overpaid for privately-held company stock. The Complaint's detailed factual allegations, grounded in the public record, hardly amount to an "unwarranted inference" of a prohibited transaction. *Contra* Argent Br. at 11. Accordingly, the Court should deny Defendants' motion to dismiss this claim.

2. **The Committee Defendants are fiduciaries with discretion over the ESOP assets and are thus proper defendants for the § 1106(a) claims.**

The Choate Defendants do not challenge the sufficiency of the Count II prohibited transaction claim under § 1106(a)(1)(D)—rather, their argument is that the Committee Defendants are not proper defendants for this claim because they are not fiduciaries of the ESOP (despite the Committee being named a fiduciary in the Trust Agreement). Choate Br. at 13-15. But Count II pleads plausible claims against both the Committee (as an entity) and the Committee members— Plaintiff properly alleges that they are fiduciaries with discretion over the ESOP assets and are liable for directing Argent to engage in the prohibited transaction described in Count II. Compl. ¶¶ 90-91; Trust Agreement §§ 2.3(b), (c) and (o) (Choate MTD Ex. 2).

The Committee is a fiduciary because it is explicitly named in the Trust Agreement; Defendants concede this. Choate Br. at 13-14; Trust Agreement § 2.8 (Choate MTD Ex. 2); 29

U.S.C. § 1102(a)(2). In *Tatum v. RJR Pension Investment Committee*, 761 F.3d 346, 71 (4th Cir. 2014), the Fourth Circuit held that the DOL regulations interpreting ERISA "clearly state that a committee may serve as the named fiduciary in a plan document . . . [and] courts have routinely found committees to be proper defendant-fiduciaries in ERISA suits." *Id.* "If a plan designates a person or entity a 'named fiduciary,' then such person or entity is presumptively a fiduciary and subject to liability under ERISA." *Hall v. Tyco Int'l, Ltd.*, 223 F.R.D. 219, 234 (M.D.N.C. 2004) (quoting *McRae v. Rogosin Converters, Inc.*, 301 F. Supp. 2d 471, 475 (M.D.N.C. 2004)). Second, the Committee members (John and Jane Does 1-10) are also fiduciaries and proper defendants for Count II because they actually determine what portion of employer contributions to the ESOP will be used to repay the loans and direct Argent accordingly. Compl. ¶¶ 90-91.

The Choate Defendants mischaracterize Count II and the Trust Agreement by arguing that the Committee Defendants have limited discretion over the ESOP assets, and only the Trustee determines the amount of employer contributions used to repay the ESOP loans. Choate Br. at 14-15. Yet, this conveniently ignores Plaintiff's allegation that the Trustee is "***directed by the Committee***" to determine what portion of employer contributions to the ESOP will be retained as cash and what portion will be used to make loan payments. *See* Compl. ¶ 23 (citing Trust Agreement § 2.3(b)). Thus, pursuant to the Trust Agreement, the Committee Defendants "cause[d] the plan to engage in a transaction," 29 U.S.C. § 1106(a)(1), when they directed Argent, fulfilling the requirement that a fiduciary "exercise[] discretionary authority or discretionary control respecting management of [the plan]." *Wilmington Shipping Co. v. New Eng. Life Ins. Co.*, 496 F.3d 326, 343 (4th Cir. 2007) (quoting 29 U.S.C. § 1002(21)(A)). Accordingly, the Committee and Committee members are fiduciaries and proper defendants for the Count II prohibited transaction claims.

### 3. Plaintiff alleges a plausible claim against the Selling Shareholders for a prohibited transaction under § 1106(a).

The Choate Defendants argue that Count III does not plausibly allege that the Selling Shareholders were parties in interest who knowingly participated in the ESOP Transaction for three reasons: (1) Plaintiff has not alleged that the Selling Shareholders are fiduciaries; (2) Plaintiff has not alleged that the Selling Shareholders had actual or constructive knowledge of the unlawful circumstances of the ESOP Transaction; and (3) Plaintiff seeks unavailable relief. Choate Br. at 15-17. But these three arguments fail for the following reasons.

To begin with, the Choate Defendants' arguments do not extend to any Selling Shareholders that are members of the Board or ESOP Committee, because they are indeed ESOP fiduciaries based on the Complaint's allegations. For example, William Millard Choate and Dave Priester are both Selling Shareholders **and** members of the Board, and as such they are fiduciaries to the ESOP because they appoint and remove the Trustee. Compl. ¶¶ 26-28, 30, 31; *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009) ("where members of an employer's board of directors have responsibility for the appointment and removal of ERISA trustees, those directors are themselves subject to ERISA fiduciary duties[]").[15] Similarly, any other Selling Shareholders who served on the Board or Committee are also fiduciaries because they either appointed the Trustee or exercise discretionary authority regarding management of the ESOP. Compl. ¶¶ 18-25, 26-29. Thus, for the subset of Selling Shareholders who are fiduciaries, Plaintiff may bring her claims under 29 U.S.C. § 1132(a)(2) and does not have to limit the remedy she seeks to "appropriate equitable relief." *Compare* 29 U.S.C. § 1132(a)(2) (permitting a civil action by a participant against a fiduciary "for appropriate relief") with 29 U.S.C. § 1132(a)(3) (permitting a

---

[15] It is unclear why the Choate Defendants argue that the Complaint does not allege that William Millard Choate and Dave Priester are fiduciaries, when it plainly does.

civil action by a participant "to obtain other appropriate equitable relief" to redress violations of the statute).

With respect to the remaining non-fiduciary Selling Shareholders, the Choate Defendants' arguments still fail. As they concede, a non-fiduciary party in interest may be liable under § 1106(a) for a prohibited transaction when he/she has "actual or constructive knowledge of the circumstances that rendered the transaction unlawful" and the plaintiff seeks equitable relief. Choate Br. at 16; *see also Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241, 251 (2000) (holding that § 1132(a)(3) authorizes suit to obtain "appropriate equitable relief" for ERISA violations committed by non-fiduciaries). Although the Choate Defendants contend the Complaint fails to allege that the Selling Shareholders had knowledge of circumstances that rendered the transaction unlawful, *i.e.* the overpayment for Choate stock, this argument again confuses the pleading requirements of § 1106 with elements of Defendants' § 1108 affirmative defense, which Plaintiff is not required to plead around. *Harris Trust* states that "a transferee of ill-gotten trust assets may be held liable…when the transferee…knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust." 530 U.S. at 251.

Knowledge of the circumstances does not require that Plaintiff allege that Defendants know the specifics of the transfer, but rather that the allegations demonstrate surrounding circumstances that create a reasonable inference of knowledge by the Defendants. *See Heritage Equity Grp. 401(k) Sav. Plan v. Crosslin Supply Co.*, 638 F. Supp. 2d 869, 877 (M.D. Tenn. 2009) (holding that plaintiffs properly alleged knowledge of the commingling of ERISA plan funds and possible embezzlement that created a reasonable inference of knowledge). Here, the Complaint alleges that the Selling Shareholders were involved in negotiating the terms of the sale, signed the Sale

Agreement, and knowingly participated in the ESOP loan. Compl. ¶¶ 101, 105. These allegations create a "reasonable inference of knowledge" that the non-fiduciary Selling Shareholders knew or should have known of the circumstances that rendered the transfer a breach. *See Wildman v. Am. Century Servs., LLC*, 237 F. Supp. 3d 902, 917-18 (W.D. Mo. 2017) (finding allegations that employees and committee members held positions at interconnected defendant entities sufficient for knowledge); *Heritage Equity Grp.*, 638 F. Supp. 2d at 877 (rejecting defendants' argument on a motion to dismiss that they did not know the specifics of the transfer).

Finally, the Choate Defendants challenge Count III based on their incorrect view that Plaintiff seeks legal (rather than equitable) relief. Choate Br. at 17. But this argument is belied by the Complaint, in which Plaintiff seeks multiple forms of equitable relief. Compl. Prayer for Relief ¶¶ F, G, H, K, P. A claim is legal when the plaintiff seeks "imposition of personal liability on [defendants] for [an] obligation to pay money[.] " *Griggs v. E.I. duPont de Nemours & Co.*, 385 F.3d 440, 445 (4th Cir. 2004) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 221 (2002)). In contrast, a plaintiff "seek[s] restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 444 (quoting *Great-West*, 534 U.S. at 213). Defendants' argument, Choate Br. at 17-19, willfully ignores that the Complaint seeks appropriate relief, including imposition of a constructive trust and/or equitable lien (Prayer for Relief ¶¶ G, K, P); disgorgement (*id.* ¶ F, G, H); rescission (*id.* ¶ P); and an accounting for profits (*id.* ¶ P).

Moreover, despite Defendants' assertions otherwise, Plaintiff *has* alleged that the proceeds of the ESOP Transaction are in the Selling Shareholders' possession. Plaintiff seeks specifically identifiable funds, the proceeds of the ESOP Transaction. Compl. ¶ 102. The Complaint alleges

that "the proceeds that the Selling Shareholders received from the Sale" are attributable to the unlawful transaction, *id.* ¶ 103, and "the ill-gotten gains received as a result of the Sale are traceable to the Selling Shareholders' possession because they have maintained accounting and/or tax records regarding the proceeds received from the Sale." *Id.* ¶ 104. In other words, the Complaint is clear that the ill-gotten gains, *i.e.*, proceeds from the Sale, were transferred to the Selling Shareholders and that they retain those proceeds in their possession.[16]

Specific identification of the precise fund or account where the proceeds reside is not required at the pleadings stage to properly seek the remedy of a constructive trust. *Stanton v. Couturier*, Nos. 2:05-cv-02046-RRB-KJM, 2:07-cv-01208-RRB-JFM, 2007 WL 4570699, at *3 (E.D. Cal. Dec. 26, 2007) (involving ESOP transaction). To require a "person seeking to impose a constructive trust" to identify specific funds or property would require the person "to engage in a significant degree of pre-filing investigation and obtain information peculiarly in the possession of the defendant that is normally part of the discovery process in civil actions." *Id.*; *see also Chesemore*, 770 F. Supp. 2d at 979 (denying motion to dismiss ESOP case; as "[a]t this early stage, plaintiffs cannot be expected to identify a specific account in which the funds are held or string of transactions that show that the proceeds can be traced . . . After discovery, plaintiffs may well be able to identify traceable funds.").[17] At this point Plaintiff has properly alleged that the Selling

---

[16] Defendants also seem to base their argument on the idea that the proceeds of the Sale may have either "dissipated" or been "converted" since the Sale. However, Plaintiff has not alleged that the assets have been dissipated or converted in the Complaint, but rather that the Selling Shareholders possess the assets, and on a Rule 12(b)(6) motion the Court and the parties must take Plaintiff's allegations as true. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002). Regardless, Plaintiff remains troubled by Defendants' insinuation that the ill-gotten gains they received from the unlawful transaction may have been, or will be, dissipated or converted and will address this by separate motion.

[17] Defendants also rely on *Teets v. Great-West Life & Annuity Ins. Co.*, 921 F.3d 1200 (10th Cir. 2019), to argue that disgorgement/accounting for profits are not available remedies because Plaintiff has not identified funds in Defendants' possession. However, *Teets* was decided on

Shareholders have the proceeds from the ESOP Transaction, which is all that is required. The Court should deny Defendants' motion to dismiss as to Count III.

### 4. Plaintiff has alleged a plausible claim for prohibited self-dealing against the Board and Committee Defendants who sold Choate stock to the ESOP.

The Choate Defendants contend that Count IV, which alleges that the Board and Committee Defendants who sold their stock to the ESOP ("Selling Board and Selling Committee Defendants") engaged in a prohibited transaction,[18] fails because those Selling Board and Selling Committee Defendants were not acting as fiduciaries when acting as "sellers" of their stock. Choate Br. at 20-22. But Count IV does not challenge the ***act of selling stock*** to the ESOP; rather it is based on actions the Selling Board and Committee Defendants took as fiduciaries.

For example, the Complaint alleges that the Selling Committee Members engaged in self-dealing, acted adversely to the ESOP, and received consideration for their own personal accounts when they directed Argent to use the ESOP's plan assets to make accelerated loan payments to them *personally*. Compl. ¶ 23; Trust Agreement § 2.3(b). It is black letter law that directing how plan assets are used is a fiduciary act, 29 U.S.C. § 1002(21),[19] and the Selling Committee Defendants took fiduciary acts by directing Argent to use ESOP plan assets to make accelerated

---

summary judgment, after the benefit of discovery, where the Tenth Circuit found that plaintiff had failed to identify "[specific] property *in his response to [defendant's] summary judgment motion.*" *Id.* at 1229 (emphasis added). In so ruling, the court did not alter or otherwise comment on the pleading standards for claims under § 1132(a)(3) and Plaintiff's allegations that the Selling Shareholders retain the proceeds of the Sale are sufficient.

[18] The prohibited transaction provision at issue, § 1106(b), prohibits a fiduciary from "deal[ing] with" plan assets "in his own interest or for his own account," from "act[ing] in any transaction involving the plan on behalf of a party … whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries," and from "receiv[ing] any consideration" from "any party" dealing with the fiduciary's plan "in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(1)-(3).

[19] Section 1002(21)(A) states that "a person is a fiduciary with respect to a plan to the extent [] he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets[.]"

loan payments on the Seller Notes. *See* Choate MTD Ex. 1 (Form 5500 Note 9). These fiduciary acts constitute self-dealing by the Selling Committee members in violation of § 1106(b)(1), acting adversely to the ESOP in violation of § 1106(b)(2), and receiving consideration for their own personal accounts in violation of § 1106(b)(3).

With respect to the Selling Board Defendants, the Complaint alleges that they appointed Argent as Trustee and have the power to remove Argent, which gave them power and influence over their counterparty in the sale. *See* Compl. ¶¶ 27, 38. Through their control of Argent, the Selling Board Defendants were able to orchestrate the purchase of their Company stock for more than fair market value. *Id.* ¶¶ 110, 112; *Howard*, 100 F.3d at 1490 ("A fiduciary determined to self-deal has ample opportunity to sway the final valuation that will set the [ESOP] transaction price" by "selecting […] the expert or by limiting the information conveyed to the expert."). Specifically, they failed to monitor Argent and ensure that Argent engaged in a prudent process when approving the purchase price paid by the ESOP. *See Acosta v. Saakvitne*, 355 F. Supp. 3d 908, 920 (D. Haw. 2019) ("Members of an employer's board of directors are subject to ERISA fiduciary duties to the extent they have responsibility over the ESOP and over the management or disposition of its assets."). The Selling Board Defendants, as ESOP fiduciaries, were inherently conflicted because they stood to gain if Argent did *not* engage in a thorough, prudent process when determining the purchase price for Choate stock, because the higher the share price, the higher their profit. Furthermore, the Selling Board Defendants could have delegated the ability to appoint and remove Argent to a party without this manifest conflict of interest. By hand-picking the ESOP Trustee—their counterparty in the sale, the Selling Board Defendants breached their fiduciary duties to the ESOP (see discussion *infra*). Because their fiduciary failures were intentionally done to enrich themselves as the recipient of the inflated price of Choate stock, the Selling Board

Defendants engaged in prohibited self-dealing in violation of 29 U.S.C. § 1106(b). *Cf. Howard*, 100 F.3d at 1488-89 (explaining that where ESOP fiduciaries are conflicted, they must "engage in an intensive and scrupulous independent investigation … to insure that they act in the best interests of the plan beneficiaries."). Accordingly, the Court should decline to dismiss Count IV for prohibited transaction against the Selling Committee and Board Defendants.

5.    **Count V adequately states a claim that Argent breached its fiduciary duties under ERISA.**

a.    *Plaintiff has properly alleged that the sale of Choate stock to the ESOP was not prudent*

Count V of the Complaint alleges that Argent breached its fiduciary duties to participants by failing to conduct a thorough investigation of the stock valuation and failing to assess the prudence of the warrants issued to the Selling Shareholders. Compl. ¶ 121. Argent argues that it did not breach its fiduciary duties due to a "post-transaction" decline in stock because "Monday morning quarterbacking" is not permitted in ERISA. Argent Br. at 13 (citing *Dudenhoeffer*, 573 U.S. at 425). But this not only misreads Plaintiff's Complaint, it misapplies the relevant law.

First, Count V does not rest on "Monday morning quarterbacking" of the stock price, but rather concerns Argent's failure "to prudently and loyally investigate [Stout Risius and Ross's ("SRR")] appraisal of the stock to ensure that the ESOP paid no more than fair market value" which "caused the ESOP to purchase 8 million shares of the Company for more than fair market value[.]" Compl. ¶ 48. Unlike *Dudenhoeffer*, this case does not involve publicly traded stock and thus Plaintiff's claims ***could not*** amount to challenging the accuracy of the price of stock that is traded on a public exchange. *Allen*, 835 F.3d at 679 (distinguishing *Dudenhoeffer* as "limited to publicly traded stock," which "relies on the integrity of the prices produced by liquid markets" and "[p]rivate stock has no 'market price'").

In support of her fiduciary breach claim, Plaintiff alleges that Argent failed to conduct a thorough review of SRR's valuation of the Choate stock before it approved the ESOP Transaction, failed to investigate the credibility of the assumptions underlying the appraisal, to question the assumptions that did not make sense, and ensure that SRR's valuation properly discounted the value of Choate stock based on the fact that full control of the Company was not being transferred to the ESOP participants. Compl. ¶ 121. The Complaint further alleges that "[a] prudent fiduciary, who had conducted a prudent investigation, would have uncovered facts indicating that the sale of 80% of the Choate stock to the ESOP from the Selling Shareholders for the purchase price of $198 million was too high, especially taking into account the warrants that were provided to the Selling Shareholders as part of the deal." *Id*. ¶ 55. The Complaint also alleges that just over three months passed between when Argent was hired to represent the ESOP and when Argent approved the deal. *Id*. ¶¶ 38, 42, 48. These allegations, taken together, are sufficient to state a plausible claim for breach of fiduciary duty. *See Allen*, 835 F.3d at 678 (allegation that the ESOP trustee "failed to conduct an adequate inquiry into the value of [the employer's] stock" stated a claim for breach of fiduciary duty). Moreover, the Complaint's allegations establish that no prudent fiduciary would continue to buy stock in a Company whose has taken on debt loan that is the entire value of the Company. Compl. ¶¶ 44-47. In fact, it is well-known that the maximum acceptable debt to equity ratio is 1.5 to 2.0, and the average debt to equity ratio for U.S. companies is 1.5.[20] The fact that Argent approved a deal that required the Company to take on a debt load equal to all or almost all of the Company's value further supports Plaintiff's claim of imprudence.

---

[20] *See* https://www.readyratios.com/reference/debt/debt_to_equity_ratio.html (stating the average debt to equity ratio for U.S. Companies is 1.5 and that "[f]or most companies the maximum acceptable debt-to-equity ratio is 1.5-2 and less").

Argent wrongly contends that the "existence of the independent valuation" from SRR demonstrates that Argent acted prudently. Argent Br. at 13. Although securing an independent assessment from a financial advisor or legal counsel is evidence of a thorough investigation, *Martin v. Feilen,* 965 F.2d 660, 670-71 (8th Cir. 1992), it is not a complete defense to a charge of imprudence. *See Donovan v. Mazzola*, 716 F.2d 1226, 1234 (9th Cir. 1984). As Judge Friendly has explained, independent expert advice is not a "whitewash." *Donovan v. Bierwirth,* 680 F.2d 263, 272 (2d Cir.1982); *see also Howard*, 100 F.3d at 1489 ("securing an independent assessment from a financial advisor . . . is not a complete defense to a charge of imprudence"); *Chao*, 285 F.3d at 430 (same).

Moreover, the company that provided the stock valuation, SRR, has been expressly criticized by the Fourth Circuit for providing inflated stock valuation in an ESOP case exactly like this one. Compl. ¶ 39; *Brundle*, 919 F.3d at 774-75. In *Brundle*, the Fourth Circuit panel affirmed judgment in favor of the ESOP participants challenging the stock price paid by the ESOP based on an SRR valuation. The Fourth Circuit expressly noted that SRR was frequently retained in the "incestuous" ESOP community and found that SRR's valuation omitted lower values of the stock. *Id*. at 771, 774. In short, the criticism by the Fourth Circuit of the repeat players[21] who advised the Defendants in connection with the Choate ESOP Transaction further supports an inference that Argent failed to act prudently and loyally in approving the Choate transaction.

---

[21]Along with the independent stock valuator SRR, this ESOP Transaction also involved legal advisor Greenberg Taurig and advisor CSG Partners, both of whom were also involved with the deficient ESOP transaction in *Brundle*. Compl. ¶¶ 35, 40; *Brundle*, 241 F. Supp. 3d at 616. Furthermore, Defendant Argent has previously settled a case regarding the Tobacco Rag Processors ESOP because Reliance Trust Company, Argent's predecessor, caused the ESOP to overpay for company stock. Compl. ¶ 15. Although SRR, Greenberg Taurig and CSG Partners are not currently named Defendants, Plaintiff does not concede that they are not liable and may well name them as Defendants if she discovers that they are liable during the course of this litigation.

Finally, as discussed above, Argent's argument that the ESOP had positive equity at the end of the transaction has not been credited by any court. The reason is obvious—this argument improperly relies on unsupported and inapplicable simplistic economic theories, which are entirely outside the pleadings. *See Allen*, 835 F.3d at 680 (disregarding, on a motion to dismiss, "economic" theories that were suited for expert testimony). The Court should decline to entertain Defendants' merits arguments, purportedly based on basic finance, yet unsupported by any authority. The Complaint's allegations, taken together, state a plausible claim for fiduciary breach against Argent.

> b.   *Plaintiff's allegations regarding the warrants support her claim for breach of fiduciary duty*

Argent also argues that Plaintiff's allegations regarding the warrants do not support a plausible claim for breach of fiduciary duty. Yet their argument rests on speculation that the use of warrants could afford the ESOP potential benefits. Argent Br. at 14-15. This argument is unavailing for several reasons.

First, as previously discussed, Argent relies on information outside of the four corners of the Complaint to make this argument, which is improper on a motion to dismiss. *See supra* Section VI.C.5.a. Specifically, Argent attempts to insert expert testimony from counsel—without pointing to any legal authority concerning the warrants that would support dismissing the claim. Argent again asks this Court to dive into the merits of the case and make factual findings that are at odds with the allegations in the Complaint, without having the benefit of admissible expert analysis and other evidence. Argent Br. at 14 (arguing that the warrants reduced the amount of debt necessary to complete the transaction and allowed the ESOP to obtain a below-market interest rate on selling shareholder notes to finance the transaction). Argent interposes this extrinsic theory, without supporting evidence, before the parties have had the opportunity to take any discovery whatsoever.

*See Allen*, 835 F.3d at 680 (holding that economic theories posited by counsel on a motion to dismiss regarding plaintiff's claim for breach of fiduciary duty was not appropriate at that stage).

More importantly, use of warrants such as those described in the Complaint have previously been found indicative of fiduciary breach by an ESOP trustee in this Circuit in a similar ESOP transaction. *Brundle*, 919 F.3d 763. Like in *Brundle*, Plaintiff alleges that the use of warrants allowed the Selling Shareholders to retain elements of control over the Choate ESOP and Company. Compl. ¶¶ 55-56. Plaintiff claims that Argent breached its fiduciary duty by failing to question the prudence and loyalty of allowing the use of warrants issued to the Selling Shareholders which permitted them to retain elements of control of the Company and which could dilute the value of the 8 million shares purchased by the ESOP from 80% ownership to 60% ownership. *Id.* ¶ 121.

In *Brundle*, 241 F. Supp. 3d at 639, the district court noted that "[t]he ESOP's lack of control is particularly troubling given the information that other parties to this transaction had about how unusual this setup was. Throughout its promotional materials, CSG made it clear that the Sellers would retain 'control' of the corporation after the ESOP was created, enabling them to capture the value of warrants and retain control over the rate at which Constellis paid off its debt to the Sellers." The court concluded that "[the trustee's] failure to ask [the independent appraiser] SRR even one question about the appropriateness of the premium is inexplicable." *Id.* The Fourth Circuit affirmed the district court, stating that "[g]iven the record evidence that the ESOP's unique ownership structure was intentionally designed to maintain the Sellers' control over [the company] even after selling their shares, the district court's conclusion [that the trustee breached its fiduciary duty] hardly constitutes clear error." *Brundle*, 919 F.3d at 777.

Plaintiff's allegations are the same here—that the use of warrants to finance the ESOP Transaction allowed the Selling Shareholders to retain elements of control over the Company, and Argent's failure to question or investigate that aspect of the transaction was a breach of its fiduciary duty. Accordingly, Plaintiff has stated a plausible claim for breach of fiduciary duty.

        c.    *Plaintiff's allegations regarding a conflict of interest support her claim for breach of fiduciary duty*

Finally, Argent argues that Plaintiff's allegations regarding a conflict of interest do not support her claim for breach of fiduciary duty because the selection of an ESOP trustee by the Board of Directors is routine and payment for its work does not always render a trustee conflicted. Argent Br. at 16-17. While a trustee hired by a board of directors and paid for its work certainly may avoid a conflict of interest by acting with an "eye single" towards the interests of plan participants, here Plaintiff alleges that Argent did not do so. *See Donovan*, 680 F.2d at 271 (the critical question is whether there was a conflict of interest, and whether it was avoided because the trustees' decisions were "made with an eye single to the interests of the participants and beneficiaries"); *Perez*, 823 F.3d at 261-62; Compl. ¶¶ 61, 121-24, 125. Indeed, the Complaint alleges that the Selling Shareholders and Argent were "operating under significant conflicts of interest at the expense of the ESOP participants" because Argent, who represented the ESOP participants, was retained by the Selling Shareholders, who in turn benefitted from the high sale price. Compl. ¶ 7. Argent had the incentive to approve the high sale price to appease the Selling Shareholders, who have the power to hire and fire Argent as trustee.[22] Accordingly, Plaintiff has

---

[22] Defendants' citation to *Grindstaff v. Green*, 946 F. Supp. 540 (E.D. Tenn. 1996), to establish that ESOP trustees are frequently selected by the board of directors, is inapposite. The issue in *Grindstaff* was whether it was a breach of fiduciary duty for the directors to vote their ESOP shares to maintain their positions on the ESOP Committee and as directors. *Id.* at 547. Here, the allegations are quite different—the claim for breach of fiduciary duty is against the trustee, not the

plausibly alleged that Argent did not act with an eye single towards the interests of the ESOP participants and thus breached its fiduciary duties.

6. **Count VI adequately states a claim that Board Defendants breached their duty to monitor Argent.**

To plead a failure to monitor claim, a plaintiff must allege that the entity charged with the breach was responsible for appointing and removing fiduciaries responsible for the fiduciary conduct in question and also had knowledge of or participated in fiduciary breaches by the appointees. *Feinberg v. T. Rowe Price Grp., Inc.*, No. CV MJG-17-0427, 2018 WL 3970470, at *7 (D. Md. Aug. 20, 2018) (citing *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781 SRN/JSM, 2012 WL 5873825, at *18 (D. Minn. Nov. 20, 2012)). However, if a plaintiff can sufficiently state a claim for breach of fiduciary duty, the failure to monitor claim should proceed to discovery. *Feinberg*, 2018 WL 3970470, at *7 ("[C]ourts have been unwilling to delineate and probe the scope of defendants' monitoring duties on motions to dismiss, and have permitted such claims to proceed forward to discovery.") (alteration in original) (internal citation omitted).

Here, the Board Defendants are responsible for appointing and removing the ESOP trustee, making them fiduciaries in their own right. Compl. ¶ 27; *see In re Constellation Energy Grp., Inc.*, 738 F. Supp. 2d 602, 614 (D. Md. 2010). As discussed in Section IV.C.5, Plaintiff sufficiently states a claim for breach of fiduciary duty, meaning that the failure to monitor claim should also proceed. In addition, the Complaint's allegations give rise to a plausible inference that the Board Defendants knew or should have known the ESOP Transaction price was inflated but failed to ensure that Argent did anything to protect the ESOP's participants and beneficiaries. *See* Compl. ¶¶ 122-23 (alleging that an appropriate investigation would have revealed that the valuation used

---

Board or Committee, and Plaintiff alleges that Argent was conflicted because it had an interest in appeasing the Board who had the ability to replace Argent. Compl. ¶ 7.

for the sale did not reflect the fair market value of the Choate stock purchased by the ESOP); ¶ 123 (alleging that an investigation would have revealed it was not in the best interests of ESOP participants to allow Selling Shareholders to exchange their shares for warrants that diluted the ESOP's share of ownership to just 60% of the company); ¶¶ 38, 42 (alleging that Argent was hired as Trustee just over three months before the ESOP Transaction was executed).

Defendants rely on *In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 795 (W.D.N.C. 2003) and *In re Calpine Corp. ERISA Litigation*, No. C-03-1685, 2005 WL 1431506, at *6 (N.D. Cal. Mar. 31, 2005), both of which are distinguishable. In *Duke Energy*, the plaintiffs did not adequately plead any underlying fiduciary duty. 281 F. Supp. 2d at 795. In contrast, here the Complaint plausibly alleges Argent breached its fiduciary duties and engaged in prohibited transactions while acting as Trustee. Compl. Count I, V; *supra* IV.C.1 and 5. And in *Calpine Corporation*, the plaintiff had not alleged *any* facts to support his claim that the director defendants failed to periodically review the fiduciaries' performance. *In re Calpine Corp.*, 2005 WL 1431506, at *6. But here, Plaintiff's claim that the Board Defendants failed to monitor Argent is supported by factual allegations: Mr. Choate was the head of the Company and a major shareholder, who stood to derive huge personal benefit from the ESOP Transaction. *See* Compl. ¶¶ 43-44. Mr. Choate, along with Mr. Priester and other Board members, were responsible for selecting Argent and had every reason to unquestioningly support Argent approval of the ESOP Transaction that resulted in the payment of millions of dollars to the Selling Shareholders. *Id.* ¶ 38. Importantly, the Complaint alleges that many of the Board Defendants, who were ESOP fiduciaries, were conflicted because they were also Selling Shareholders and thus stood to benefit from the ESOP overpaying them for stock. *Id.* ¶ 7.

Defendants suggest that Plaintiff must directly allege that the Board Defendants used a deficient process for monitoring Argent, citing *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016). But the complaint in that case did not allege facts that, taken together, suggested deficiencies in the monitoring process. *Id.* at *18-19. As courts have repeatedly recognized, "No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden*, 588 F.3d at 598; *accord Reetz v. Lowe's Cos.*, No. 5:18-CV-075-RJC-DCK, 2019 WL 2489758, at *4 (W.D.N.C. Feb. 14, 2019). For this reason, it is enough that the Court can reasonably infer from the circumstantial factual allegations that the fiduciary's decision-making process was flawed. *Braden*, 588 F.3d at 596.

7. **To the extent that the indemnification clause purports to relieve Defendant Argent for breach of fiduciary duty, the clause is invalid.**

It is uncontested that under 29 U.S.C. § 1110(a), provisions that "purport[] to relieve a fiduciary from responsibility or liability" are void. Defendant Argent argues that the Trust Agreement complies with the law by providing that the indemnification "shall not apply to any claim, damage, expense, liability, or loss that is attributable to [Argent's] breach of fiduciary duty under ERISA, gross negligence, or willful misconduct." Argent Br. at 18 (quoting Ex. A to the Trust Agreement). Plaintiff agrees that to the extent this limitation is followed, the indemnification clause is valid under ERISA, but maintains that any attempt to indemnify for Argent for a breach of fiduciary duty—whether or not contained in the Trust Agreement—would be void. *See, e.g.*, *Johnson*, 572 F.3d at 1080 (indemnification agreement voided where it "purport[ed] to relieve Defendants from their fiduciary responsibilities") (internal quotation marks omitted).

D. Argent's Rule 12(f) Motion to Strike is Frivolous

Argent's Rule 12(f) motion to strike is meritless because Plaintiff's allegations in paragraphs 15 and 57 of the Complaint are material to the controversy at hand. Rule 12(f) motions "are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A A. CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1380, 647 (2d ed. 1990)). A Rule 12(f) motion should "be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Graff v. Prime Retail, Inc.*, 172 F. Supp. 2d 721, 731 (D. Md. 2001) (quoting 5A A. CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1382 (2d ed. 1990)); *see also Swift Beef Co. v. Alex Lee, Inc.*, No. 5:17-CV-176, 2018 WL 792070, at *1 (W.D.N.C. Feb. 8, 2018) ("[a] motion to strike should not be granted unless the content at issue clearly can have no possible bearing on the subject matter of the litigation" (internal quotation marks omitted)).

First, the allegation that Argent's fiduciary business, which were previously part of Reliance Trust, were involved in a settlement with DOL regarding related claims that Reliance Trust caused the Tobacco Rag ESOP to overpay for company stock (Comp. ¶ 15) is related to the present controversy because it correctly notes previous failures by Reliance Trust's fiduciary operations (now part of Argent) when functioning as an ESOP trustee. Unlike *Xerox Corp v. Imatek, Inc.*, which Argent relies on, Plaintiff's allegation is not irrelevant to or distant from the subject matter of the litigation and thus should not be struck. *See* 220 F.R.D. 241, 243 (D. Md. 2003) (defendant's violations of general accounting principles were found to be irrelevant to claim for breach of contract). Here, because the Complaint alleges that Argent violated duties under

45

ERISA §§ 1106 and 1104(a) in the exact same way as in the Tobacco Rag ESOP case that settled with the DOL, these allegations are material. Compl. ¶¶ 15, 121.

Second, Plaintiff's allegation that she uncovered facts showing that the DOL has an open investigation of the very same ESOP Transaction that is at the heart of this case is unquestionably relevant here. Compl. ¶ 57. And Argent's reliance on *Fender v. Biltmore Forest Country Club, Inc.*, is misleading. In *Fender*, the court only struck allegations relating to EEOC charges filed by other individuals because it concluded that the evidence was "not required for Plaintiff's relief." *See* No. 1:18 CV 43, 2018 WL 1995532, at *1 (W.D.N.C. Apr. 27, 2018). At this early stage in this case, it is certainly possible that the DOL may obtain relief on behalf of the Choate ESOP for the very same claims Plaintiff asserts, which provides another reason the open investigation is material to the case at bar. Argent fails to meet the high bar necessary to receive the "drastic remedy" of striking Plaintiff's allegations under Rule 12(f); this motion should be denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' motions to dismiss, ECF Nos. 30 and 32, be denied.

Dated: July 18, 2019                      Respectfully submitted,

_/s/ Martha Geer_____
Martha Geer
N.C. Bar No. 13971
**COHEN MILSTEIN SELLERS & TOLL PLLC**
150 Fayetteville Street, Suite 980
Raleigh, NC 27601
Telephone: (919) 890-0560
Facsimile: (919) 890-0567
mgeer@cohenmilstein.com

Michelle C. Yau
Karen L. Handorf

46

Jamie L. Bowers
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3934
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
myau@cohenmilstein.com
khandorf@cohenmilstein.com
jbowers@cohenmilstein.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2019, I electronically filed Plaintiff's Consolidated Response in Opposition to Defendants' Motions to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record.

/s/ Martha Geer
Martha Geer