IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:19-CV-156-BO

| | | |
|---|---|---|
| SHARON LEE on behalf of herself individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | O R D E R |
| ARGENT TRUST COMPANY, CHOATE CONSTRUCTION COMPANY ESOP COMMITTEE, CHOATE CONSTRUCTION COMPANY BOARD OF DIRECTORS, WILLIAM MILLARD CHOATE, DAVE PRIESTER, COMMITTEE DEFENDANTS (John and Jane Does 1-10), BOARD DEFENDANTS (John and Jane Does 11-20), and SELLING SHAREHOLDERS (John and Jane Does 21-35), | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the Court on defendants' motions to dismiss plaintiff's complaint. [DE 30, 32]. Plaintiff has responded to the motions to dismiss and the motions are now ripe for disposition. For the reasons that follow, defendants' motions to dismiss [DE 30, 32] are GRANTED and plaintiff's complaint is DISMISSED.

## BACKGROUND

In late 2016, Choate Construction Company ("Choate") created the Choate Construction Company Employee Stock Ownership Plan ("Choate ESOP"). [DE 1, ¶¶ 1–3]. The Choate ESOP is an ERISA-backed plan that allows participating Choate employees to invest their retirement accounts in Choate stock. *Id.* ¶ 2. Choate hired defendant Argent Trust Company ("Argent") to serve as trustee of the Choate ESOP. *Id.* ¶¶ 6–7. Because Choate is a privately held company, and

its shares therefore do not trade on public markets, Argent was responsible for retaining an independent appraiser to determine the value of Choate stock. *Id.* ¶ 6; *see also* DE 31, p. 2. Argent, as trustee, was responsible for overseeing the valuation process and ensuring that the Choate ESOP did not pay more than fair-market value for Choate stock. Argent retained independent appraisal firm Stout Risius Ross to conduct the initial appraisal and annual valuations thereafter. [DE 1, ¶ 39; *see also* DE 31-1].

In December 2016, the Choate ESOP purchased 8 million shares of Choate stock for $198 million. [DE 1, ¶ 4]. The 8 million shares represented 80% of Choate. *Id.* At approximately the same time, Choate redeemed 2 million shares held by the selling shareholders (that is, Choate's former owners) for non-voting stock and warrants. *Id.* ¶ 5. Of course, Choate's employees did not pay the company $198 million for the shares. Instead, Choate borrowed $57 million from a bank and then turned around and loaned that $57 million to the Choate ESOP for part of the purchase. *Id.* ¶¶ 44–45. To finance the remainder of the purchase, the Choate ESOP issued notes to the selling shareholders for the remaining $141 million at a 4% annual rate. *Id.* ¶¶ 44–48. Argent, as trustee of the Choate ESOP, oversaw and approved the transactions. *Id.* ¶ 49.

Plaintiff is a former Choate employee who worked for the company from April 2007 to April 2017. [DE 1, ¶ 14]. When her Choate employment ended, plaintiff was "fully vested in the [Choate] ESOP." *Id.* She alleges, on behalf of herself and similarly situated current and former Choate employees, that the "creation of the Choate ESOP . . . was not conducted in the best interests of the employees." *Id.* ¶ 3. In particular, plaintiff relies on a $64.8 million valuation of the Choate ESOP's stock on December 31, 2016—less than one month after the creation of the Choate ESOP—as evidence in support of her contention that the $198 million that the Choate ESOP paid for Choate stock was excessive. *Id.* ¶¶ 52–55. Plaintiff brings claims against Argent,

2

the Choate ESOP committee (collectively and individually), Choate's board of directors (collectively and individually), Choate's former president (and current chairman and chief executive officer), Choate's current president and chief operating officer, and the individual selling shareholders. *Id.* ¶¶ 15–32.

In particular, plaintiff asserts seven causes of action. Plaintiff alleges that Argent engaged in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1) (Count I), breached its fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A) and (B) (Count V), and violated 29 U.S.C. §§ 1110(a) and 1102(a) (Count VII). *Id.* ¶¶ 74–84; 116–25; 132–39. Plaintiff further alleges that the Choate ESOP committee defendants and selling shareholders violated § 1106(a) (Counts II and III), that the board defendants and committee defendants who also sold shares to the Choate ESOP violated § 1106(b) (Count IV), that the board defendants failed to monitor Argent under § 1104(a) (Count VI), and that the board defendants violated §§ 1110(a) and 1102(a) (Count VII). *Id.* ¶¶ 85–107; 108–15; 126–31; 132–39.

Defendants have moved to dismiss all of plaintiff's causes of action under both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. [DE 30, 32]. Defendants argue that plaintiff lacks standing under Article III to bring this action because she has not alleged any concrete and particularized injury. Defendants also argue that, even if plaintiff does have standing to pursue her claims, she has failed to plausibly allege any ERISA claim under the statutory provisions that she cites.

Plaintiff did not timely respond to defendants' motions to dismiss; instead, plaintiff filed a response 42 days after defendants filed their motions, providing no explanation for her tardiness. The Court has nonetheless considered plaintiff's arguments in response to defendants' motions.

3

## DISCUSSION

Defendants have moved to dismiss plaintiff's complaint for lack of subject-matter jurisdiction under Rule 12(b)(1). The existence of subject-matter jurisdiction is a threshold question that a court must address before considering a case's merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998). "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted). When subject-matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647–50 (4th Cir. 1999). When a facial challenge to subject-matter jurisdiction is raised, the facts alleged by the plaintiff in the complaint are taken as true, "and the motion must be denied if the complaint alleges sufficient facts to invoke subject-matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The Court can consider evidence outside the pleadings without converting the motion into one for summary judgment. *See, e.g., Evans*, 166 F.3d at 647.

Defendants have also moved to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged," as merely reciting the elements of a cause of action with the support of conclusory statements does not suffice. *Iqbal*, 556 U.S. at 678. The Court need not accept the plaintiff's legal conclusions drawn

from the facts, nor need it accept unwarranted inferences, unreasonable conclusions, or arguments. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Plaintiff's amended complaint must be dismissed because this Court lacks subject-matter jurisdiction over plaintiff's claims. Under Article III of the U.S. Constitution, federal courts may consider only cases or controversies, and "the doctrine of standing has always been an essential component" of the case or controversy requirement. *Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). All federal plaintiffs, including plaintiffs bringing ERISA claims on behalf of themselves and others, are required to establish that they have standing to sue in federal court. *See In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008) (plaintiffs must have both statutory and constitutional standing). Otherwise, the court lacks subject-matter jurisdiction. To have standing to sue, a plaintiff must demonstrate that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560–61 and *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). An "injury in fact" is "an invasion of a legally protected interest which is . . . concrete and particularized." *Lujan*, 504 U.S. at 560. To be "particularized," the injury "must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1).

Plaintiff has not demonstrated that she has suffered a concrete and particularized injury. Plaintiff's allegations are premised on the purchase of 8 million Choate shares by the Choate ESOP at a valuation that plaintiff claims, in light of the shares' subsequent valuation at $64.8 million and the warrants possessed by the selling shareholders, was excessive. Plaintiff does not allege that she suffered any additional or unique harm separate from the harm that she alleges all members of the

5

Choate ESOP suffered. Plaintiff, however, fundamentally misunderstands the nature of the December 2016 transaction that created the Choate ESOP and Choate's subsequent valuation. A careful examination of the transaction demonstrates the misunderstanding.

In December 2016, Choate was prepared to transfer an 80% ownership stake to the Choate ESOP. Argent was hired as the Choate ESOP's trustee and Argent retained an independent appraiser to determine the fair-market value of that 80% stake. On the basis of that appraisal, Choate and the Choate ESOP (through Argent) agreed on a purchase price of $198 million. But the members of the Choate ESOP—Choate's employees—quite reasonably did not have $198 million in cash. Instead, the Choate ESOP effectively took on $198 million in debt to finance the purchase. First, Choate borrowed $57 million from a bank, and then loaned the $57 million to the Choate ESOP. Second, the Choate ESOP issued $141 million in notes to the selling shareholders. Then, a few weeks later, the Choate ESOP's 8 million shares were valued at $64.8 million. Plaintiff has divided the $198 million purchase price by 8 million shares and arrived at an initial share value of $24.75. [DE 1, ¶ 52]. Plaintiff reasons that, on the basis of the $64.8 million valuation a few weeks later, the per-share value dropped to $8.10 in such a short period of time that the first purchase could not have been at fair-market value.

But it is better to conceive of this transaction, as defendants have argued, as being comparable to the purchase of a mortgage-financed house. Suppose that a buyer finds a house that is listed at $198,000. The buyer has no money for a down payment, however, so she obtains a $198,000 mortgage loan in order to buy the house. The buyer has taken on a $198,000 debt (the mortgage) and, in return, obtained a $198,000 asset (the home). As a result, she has experienced no change in equity; her asset and her corresponding obligation result in $0 in new equity. But now suppose that the $198,000 house is actually worth $262,800, and our buyer was able to

6

purchase the house at a discount. She still has her $198,000 mortgage, but now she also has $64,800 in equity; if she were to turn around and sell the house at its $262,800 value, after paying off her mortgage, she would be left with a tidy profit of $64,800.

Like the hypothetical buyer, the Choate ESOP obtained its 8 million shares of Choate at a discount. The purchase price was $198 million and the Choate ESOP took on $198 million in debt to obtain the stock. The expected value of the Choate ESOP's shares—at least in the short term—would be $0. Instead, the $64.8 million valuation at the end of December 2016 reflects the fact that the Choate ESOP, like the hypothetical buyer, realized an immediate equitable benefit. That benefit has only grown since, as the Choate ESOP's value was pegged at $107.2 million by the end of 2017. [DE 31-3, p. 25]. In other words, the Choate ESOP actually bought the 8 million Choate shares in December 2016 at a discount (or the shares actually *appreciated* in value, approximately 33%, in less than a month).

As the Choate ESOP actually purchased the 8 million shares in 2016 at a discount, and an immediate equitable benefit inured to the Choate ESOP and its members, plaintiff has not plausibly alleged that she suffered any concrete and particularized injury. Put simply, Choate's December 2016 transaction did not injure her; it benefited her. Plaintiff's mere allegation, contradicted by her own complaint, that the Choate ESOP overpaid for Choate shares is insufficient to support Article III standing in this case. Given that plaintiff's claims are all premised on the alleged unfairness of that transaction, and that plaintiff has not otherwise pleaded that she suffered any injury, plaintiff has not demonstrated that she possessed Article III standing to pursue her claims in this Court. As such, plaintiff's complaint is dismissed.

## CONCLUSION

For the above reasons, defendants' motions to dismiss [DE 30, 32] are GRANTED and plaintiff's complaint is DISMISSED. The Clerk is DIRECTED to close the case.

SO ORDERED, this __6__ day of August, 2019.

*Terrence W. Boyle*
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE