UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| SHARON LEE on behalf of herself individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ARGENT TRUST COMPANY, CHOATE CONSTRUCTION COMPANY ESOP COMMITTEE, CHOATE CONSTRUCTION COMPANY BOARD OF DIRECTORS, WILLIAM MILLARD CHOATE, DAVE PRIESTER, MEMBERS OF THE CHOATE CONSTRUCTION COMPANY ESOP COMMITTEE (John and Jane Does 1-10), MEMBERS OF THE CHOATE CONSTRUCTION COMPANY BOARD OF DIRECTORS (John and Jane Does 11-20), and SELLING SHAREHOLDERS (John and Jane Does 21-35)<br><br>Defendants. | Case No.: 5:19-cv-00156<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION** |

Plaintiff respectfully moves the Court to alter its August 7, 2019 judgment, ECF No. 38, dismissing Plaintiff's Complaint, ECF No. 1 ("Compl."), pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing. Plaintiff submits that the opinion, ECF No 37, contains manifest errors of fact and law warranting reconsideration, specifically: (1) the Court made merits determinations to decide it did not have jurisdiction; (2) the Court's analysis of whether Plaintiff suffered financial loss was factually and legally erroneous; (3) the Court adopted a flawed analogy; and (4) the Court's analysis relies on the incorrect assumption that, if common stock appreciates in value after it was purchased, that necessarily means the price paid for that

stock on a prior date was not inflated. For these reasons, Plaintiff requests that the judgment, ECF No. 38, be vacated and that her action be reopened.

I.  **SUMMARY OF THE OPINION**

In the opinion, ECF No. 37, the Court discussed the requirements for subject-matter jurisdiction, citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998), and *Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009). Opinion ("Op.") at 4. The Court noted that it must " 'accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff[,]' " quoting *Myland Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Op. at 4. Then, citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) and *Lujan v. Defs. Of Wildlife*, 504 U.S. 555 (1992), the Court held that Plaintiff did not have standing to pursue this action because she had not suffered a concrete and particularized injury. Op. at 5.

The Court acknowledged that the Complaint alleged the 2016 purchase of Choate Construction Company ("Choate" or "Company") by the Employee Stock Ownership Plan ("ESOP") for $198 million, during which the ESOP acquired $198 million in debt to fund the purchase (hereinafter, the "ESOP Transaction"), caused Plaintiff and the ESOP to overpay for the Company stock. Op. at 2-3. The Court further acknowledged that Plaintiff alleged that the stock was overpriced because of warrants issued to the selling shareholders in connection with the ESOP Transaction, and that the value of the stock dropped significantly from $24.75 per share (at the time of purchase) to $8.10 per share two weeks later. Op. at 2-3.

But the Court concluded that it was "better to conceive of this transaction . . . as being comparable to the purchase of a mortgage-financed house." Op. at 6. The Court then posited an example of a homebuyer purchasing a house for $198,000 with a $198,000 mortgage, resulting in $0 in equity in the house. *Id*. The Court stated that if the house was actually worth $262,800 instead of $198,000, then after the transaction the buyer would be left with $64,800 in equity.

Op. at 6-7. The Court presumed that this is what happened with the ESOP Transaction—that if the purchase was for fair market value, the value of the ESOP shares would be $0. Op. at 7. Because the valuation after the purchase was $64.8 million, not zero, the Court surmised that the value of the company was actually $262,800, and the ESOP bought the Company at a discount (or that the Company's shares appreciated over the two weeks). *Id.* According to this reasoning, the Court held that Plaintiff had not suffered any injury because the 2016 transaction benefitted her, and thus she lacked standing to pursue this action. *Id.*

## II.   LEGAL STANDARD

After entry of a judgment, a party may move the court to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) within 28 days after entry of the judgment. Fed. R. Civ. P. 59(e). Here, the judgment was entered on August 7, 2019. ECF No. 38. Federal Rule of Civil Procedure 60(b) provides that relief from a final judgment or order is warranted in the event of "mistake, inadvertence, surprise, or excusable neglect[.]" Fed. R. Civ. P. 60(b)(1). "The purpose of a motion for reconsideration is to correct 'manifest errors of law or fact….' " *DIRECTV, INC. v. Hart*, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004) (quoting *Harsco Corp. v. Ziotnicki*, 779 F.2d 906, 909 (3rd Cir. 1985)); *see also SMD Software, Inc. v. Emove, Inc.*, No. 5:08-cv-403-FL, 2014 WL 1807809, at *1 (E.D.N.C. May 7, 2014).

## III.   ARGUMENT

### A.   The Court Incorrectly Dismissed on Jurisdictional Grounds When Its Analysis Addressed the Merits of Plaintiff's ERISA Claims.

The Court erred in applying the standard set out by the Supreme Court in *Steel Co.* for determining whether a court has subject-matter jurisdiction to adjudicate a case by concluding that the Plaintiff had not suffered an injury based on its merits determination that the ESOP had not overpaid for the Company's stock.

A court's subject-matter jurisdiction is unaffected by whether the cause of action is valid, *i.e.*, whether Plaintiff can win on the merits. *Steel Co.*, 523 U.S. at 89. In fact, such a construction of the subject-matter jurisdiction requirements would "turn every statutory question … into a question of jurisdiction." *Id*. at 92. Rather, "[s]ubject-matter jurisdiction exists if the right to recover will be sustained under one reading of the … laws and defeated under another, unless the claim clearly appears to be immaterial, wholly insubstantial and frivolous, or otherwise so devoid of merit as not to involve a federal controversy[.]" *Id.* at 83 (internal citations omitted). And as the Supreme Court has stated, "when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." *Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007) (citing *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975)). The Fourth Circuit has also held that when evaluating standing, " 'the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims.' " *Cooksey v. Futrell*, 721 F.3d 226, 239 (4th Cir. 2013) (quoting *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003)).

But the Court's analysis went against *Steel Co.* because the Court improperly determined merits issues in holding that Plaintiff had not suffered an injury instead of assuming that Plaintiff's claim that the stock was overpriced could succeed. In fact, the Court actually assumed that the Company was undervalued, not overvalued, and used that presumed value to address whether she had standing. *See* Op. at 7 ("the Choate ESOP actually bought the 8 million Choate shares in December 2016 at a discount"). This goes to the merits of the case because Plaintiff contends the opposite: that the valuation was improper and inflated. Compl. ¶¶ 6, 52-53, 55-56. Under *Steel Co.*, for the purposes of standing, the Court was required to assume that Plaintiff

would be able to prove that the valuation was inflated. 523 U.S. at 89; *Warth*, 422 U.S. at 501-02.

While *Steel Co.* acknowledges that some claims might be so insubstantial or frivolous to warrant dismissal, Plaintiff's claims are neither. In the Complaint, Plaintiff alleges that the fiduciaries engaged in a transaction prohibited by ERISA and that the transaction is not exempt because, among other things, the stock was overpriced. Compl. ¶¶ 6, 52-53, 55-56. Her claims, almost identical to the claims in *Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 782 (4th Cir. 2019), where the Fourth Circuit affirmed a judgment in favor of an ESOP participant claiming that he overpaid for company stock based on very similar facts. As such, Plaintiffs' claims are not " 'immaterial and made solely for the purpose of obtaining jurisdiction,' " *Steel Co.*, 523 U.S. at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)). Instead, it is the type of claim Congress envisioned when it gave participants an express right to sue to challenge a prohibited transaction under 29 U.S.C. §§ 1106 and 1132, and thus the claim is not "insubstantial [or] frivolous." *Steel Co.*, 523 U.S. at 83.

The Court erred in applying the legal standard set out in *Steel Co.* for assessing standing when it made factual determinations on the merits and thus should vacate the judgment dismissing Plaintiff's Complaint. ECF No. 38.

B. <u>The Court's Analysis of Monetary Harm is Factually and Legally Erroneous</u>

Even if it were appropriate for the Court to determine the merits of the case in deciding whether it had jurisdiction, the Court made factual and legal errors when determining whether Plaintiff suffered monetary loss. The Court (1) failed to credit Plaintiff's allegations as to why the $198 million valuation was improper; (2) failed to put the burden on Defendants of showing that the ESOP paid no more than fair market value for the Company; (3) assumed that if the stock appreciated after the ESOP purchased it, then Plaintiff ultimately benefitted from purchase

5

and thus suffered no injury; and (4) incorrectly credited Defendants' inherently fact-bound arguments about the valuation of the Company without discovery and expert testimony. These legal and factual errors warrant reconsideration of the Court's judgment.

First, the Court failed to credit Plaintiff's allegations that the Company was improperly valued. On a motion to dismiss for lack of standing, the Court must assume that Plaintiff's factual allegations which indicated that the ESOP overpaid when it purchased the Company stock for $24.75 per share. *See Steel Co.*, 523 U.S. at 83; *Cooksey*, 721 F.3d at 234. But in its opinion, the Court assumed that the purchase price, $24.75 per share or $198 million in total, was proper. Op. at 7. Plaintiff, however, alleged that the $198 million valuation was incorrect because, among other things, it did not account for the negative effects of the warrants, which diluted the ESOP's interest in the Company to 60% and allowed the Selling Shareholders to retain elements of control over the Company. Compl. ¶¶ 6, 56. Nowhere does the Court consider Plaintiff's allegation that the warrants would have negatively affected the valuation. Plaintiff also alleged that less than a month after the sale of the Company to the ESOP, the stock dropped to one-third of the price from $24.75 per share to $8.10 per share. Compl. ¶¶ 52, 53. Instead of crediting Plaintiff's allegation that this drop in stock value reflected an improper valuation, the Court assumed that the $198 million price was correct or even discounted in order to accept the "homebuyer analogy" proposed by Defendants. Op. at 7. The Court also ignored other allegations in the Complaint suggesting that the valuation of the Company was incorrect including that the independent appraiser, Stout Risius Ross, had been previously found to issue a deficient valuation by the Fourth Circuit, and that the Department of Labor maintains an open investigation of the sale of the Company to the ESOP. Compl. ¶ 57; Plaintiff's Opposition to Motions to Dismiss, ECF No. 36 ("MTD Opp.") at 27. Ignoring Plaintiff's allegations

6

concerning the improperly valued Company and instead crediting Defendants' suggestion that the ESOP underpaid for the Company is a mistake of fact and law that merits reconsideration of the opinion and amendment of the judgment.

Second, the Court incorrectly placed the burden on Plaintiff of establishing that the transaction met the conditions of 29 U.S.C. § 1108(e), including that purchase of Choate stock by the ESOP was for no more than "adequate consideration." Op. 5-7. Plaintiff claims that the 2016 sale of the Company to the ESOP was a prohibited transaction under § 1106 because it involved a purchase by the ESOP of stock from parties in interest. Compl. ¶¶ 74-84; 85-92; 93-107; 108-115; 29 U.S.C. § 1106(a)(1)(A) and (D). It is well-established that the transaction is prohibited under § 1106(a)(1)(A) and (D), unless the party claiming an exemption to the prohibited transaction rules (here Defendants) meet their burden of showing that the ESOP paid no more than adequate consideration for the stock. 29 U.S.C. § 1108(e). *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 676 (7th Cir. 2016) ("[§ 1108] exemptions are affirmative defenses"); *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 864 (4th Cir. 1994) (noting that an exemption to the prohibited transaction provision under § 1108(e) was an affirmative defense). As an affirmative defense, Defendants "bear[] the burden of proving the transaction was for adequate consideration in compliance with [§ 1108(e)]." *Elmore*, 23 F.3d at 864; *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 619 (2d Cir. 2006); *Eyler v. Comm'r of Internal Revenue*, 88 F.3d 445, 455 (7th Cir.1996). " 'This burden is a heavy one.' " *Brundle*, 919 F.3d at 770 (quoting *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996)). It requires the Defendants to show that the stock was worth what the ESOP paid for it and that they determined the price in good faith. *Id.* Here, the Court failed to place the burden on Defendants to demonstrate that the sale of the Company was for adequate consideration and that the price was determined in good faith, and instead required

Plaintiff to establish that the Company was sold for more than fair market value, thus constituting another manifest error of law. *Allen*, 835 F.3d at 673 (reversing district court's dismissal of ERISA claims based on allegations that the stock purchased by the ESOP significantly dropped in value shortly after the transaction).

Third, the Court incorrectly credited Defendants' argument that the Plaintiff suffered no financial injury because the price of the stock later appreciated. This is not only inconsistent with the Complaint, which alleges that the price dropped, but it is inconsistent with *Brundle*, where the Fourth Circuit held that even if the ESOP stock appreciates after the transaction, it does not eliminate the original injury or loss to the ESOP participants caused by the overpayment. *Brundle*, 919 F.3d at 782 (after an overinflated ESOP transaction, "[a]ny subsequent gains involving the stock, which the ESOP would have obtained regardless of the overpayment, have no bearing on that loss"). The Court not only incorrectly assumed that Plaintiff benefitted overall from the transaction, but it ignored Plaintiff's original injury caused by the overpayment and, accordingly, erred.[1]

Finally, the Court's conclusions about factual issues were premature. Even where the Secretary of Labor (who has investigative authority, including subpoena power) is a plaintiff, courts have held that complex issues of stock valuation, which often include expert testimony,

---

[1] The Court also failed to consider that Plaintiff could have standing to pursue her claims even without monetary loss. The Supreme Court is slated to hear a case regarding whether a Plaintiff can have Article III standing to bring a case where she has suffered a breach of fiduciary duty with no monetary loss, i.e. does the ERISA violation alone satisfy the injury requirement. *Thole v. U.S. Bank, N.A.*, 139 S. Ct. 2771 (2019). Moreover, the Fourth Circuit has held that a plaintiff may seek an equitable remedy under ERISA without a showing of loss. *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 364-65 (4th Cir. 2015) (plaintiffs had statutory standing to bring claim where accounting for profits was the equitable remedy sought). Accordingly, the Court further erred by failing to consider that Plaintiff had standing regardless of whether she suffered monetary injury.

are not suitable for resolution at the motion to dismiss stage. *See Acosta v. Reliance Tr. Co.*, 2019 WL 121185 (D. Minn. Jan 7, 2019) (citing cases). Here, the Plaintiff did not have access to the valuation used in the transaction and is entitled to discovery and to seek out admissible expert analysis. *See Allen*, 835 F.3d at 680 (holding that argument that "the post-transaction decline in stock value is precisely what economists predict should happen after an ESOP transaction" was not suitable for resolution on a motion to dismiss).

The Court's analysis of whether Plaintiff suffered financial harm included multiple errors of law and fact, and thus the Court should vacate its order of dismissal.

C. The Court's Analogy to a Home Mortgage is Without Support

The Court adopted Defendants' argument that, if an individual bought a home for $198,000 and acquired a mortgage of $198,000 to complete the purchase, the corresponding equity value in the house would be $0. Defendants speculated that the ESOP Transaction was similar to a purchase of a home with a mortgage, and because the equity was valued at $64.8 million after the purchase of the Company, the proper value of the Company must have been $262.8 million, meaning that the ESOP purchased the Company at a discount. The Court adopted this analogy and assumed that because the ESOP bought the Company at a discount, Plaintiff was not harmed.

But this analogy is flawed because the purchase of a house, which is a static piece of real estate, is not at all like the purchase of the common equity of a private company through a highly leveraged ESOP transaction. The risks and complications involved are entirely different. A house is not an ongoing enterprise. That a mortgage on a house may not negatively affect the value of the house is irrelevant here because a homebuyer does not purchase ***the equity*** in the home, it purchases the home itself. Here, unlike the homebuyer, the ESOP purchased the equity in the Company (*i.e.*, common stock), and the value of that common stock is affected by

Company's debt load because equity interests are *subordinate* to the debt interests in the Company's assets. Under ERISA, the effect of the debt must be considered in determining the company's value. *See Eyler*, 88 F.3d at 453 (holding that the valuation report that failed to account for the effects of the ESOP transaction debt did not establish fair market value of company stock). Here, where the valuation of the Company was improperly inflated to $198 million and the Company was saddled with imprudently high levels of debt, Plaintiff and all ESOP participants overpaid for the stock and suffered injury-in-fact. For this reason, the analogy of the purchase of a home to the creation of the ESOP is severely flawed. As Plaintiff pointed out in her opposition to the motions to dismiss, no other court has ever credited this comparison of a highly leveraged ESOP transaction to a purchase of a house. MTD Opp. (ECF No. 36) at 16.

Finally, the homebuyer analogy presents circular reasoning that assumes that the stock was actually worth what the ESOP paid. Op. at 6-7. Under this theory, every ESOP transaction that was 100% leveraged would not harm participants, independent of whether the underlying valuation of the company itself was inflated and erroneous. In reality, whether the approach and the assumptions used in Company's valuation are reasonable and whether they were properly investigated by the Trustee is a critical part of the inquiry to determine whether the conditions of 29 U.S.C. § 1108(e) are met. *Brundle*, 919 F.3d at 773-74 (trustee's reliance on valuation with errors demonstrated noncompliance with § 1108(e)). And ironically enough, another error in the analogy is that it requires the assumption that the proper value of the Company at the time of purchase is $262.8 million. Op. at 7. This would mean that Stout Risius Ross's valuation of $198 million was inaccurate and should have triggered the fiduciaries' duties to investigate the ESOP Transaction. For the reasons set forth above, the Court should vacate its order.

D. <u>The Court Erred by Treating Later Appreciation of the Stock as Lack of Financial Injury Sufficient for Standing</u>

Lastly, the Court appears to base its dismissal of the Complaint on its theory that Plaintiff benefitted overall from the transaction, stating that "Choate's December 2016 transaction did not injure [Plaintiff]; it benefited her." Op. at 7. But this theory is based on the incorrect reasoning that, if the Choate stock appreciated after the sale Plaintiff could not have overpaid for the stock, has been rejected by courts, including the Fourth Circuit. *Brundle*, 919 F.3d at 782-83 (rejecting Defendant's argument that ESOP participant suffered no damages because the ESOP was able to sell company stock to subsequent buyer less than two months after the transaction for a higher price that the ESOP paid).

As the Fourth Circuit pointed out in *Brundle*, an employer's contribution to an ESOP constitutes "a valuable form of deferred compensation, rather than a gift to employees." 919 F.3d at 769 n.1; *see also Chao v. Hall Holding Co.*, 285 F.3d 415, 443-44 (6th Cir. 2002) ("Benefits such as an ESOP 'are not a gratuity, but a form of deferred wages.' " (citations omitted) (quoting *Reich v. Valley Nat'l Bank of Ariz.*, 837 F. Supp. 1259, 1286-87 (S.D.N.Y. 1993))). Because an ESOP contribution qualifies as employee compensation, "an employer can deduct the total value of its ESOP contribution from its income tax liability as an ordinary business expense." *Brundle*, 919 F.3d at 769. Thus, "while an employer is under no obligation to establish an ESOP, once it does so ERISA's standards apply. An employer cannot condition Plan contributions on a violation of ERISA[.]" *Reich*, 837 F. Supp. at 1287-88.

As a result, the Court erred by considering whether Plaintiff benefitted as a whole when determining whether Plaintiff had standing to pursue her claim for a prohibited transaction under ERISA.

11
Case 5:19-cv-00156-BO   Document 40   Filed 09/04/19   Page 11 of 13

## IV. CONCLUSION

Due to the factual and legal errors in the Court's opinion, ECF No. 37, Plaintiff respectfully requests that the Court vacate its Order and Judgment, ECF No. 38, and consider anew Defendants' motions to dismiss.

Dated: September 4, 2019

Respectfully submitted,

 /s/ Martha Geer
Martha Geer
N.C. Bar No. 13971
**COHEN MILSTEIN SELLERS & TOLL PLLC**
150 Fayetteville Street, Suite 980
Raleigh, NC 27601
Telephone: (919) 890-0560
Facsimile: (919) 890-0567
mgeer@cohenmilstein.com

Michelle C. Yau
Karen L. Handorf
Jamie L. Bowers
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3934
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
myau@cohenmilstein.com
khandorf@cohenmilstein.com
jbowers@cohenmilstein.com

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record.

/s/ Martha Geer
Martha Geer
